Trenton H. Norris (CA Bar No. 164781)
trent.norris@hoganlovells.com
Alexander Tablan (CA Bar No. 346309)
alexander.tablan@hoganlovells.com
Andrew Muse-Fisher (CA Bar No. 364086)
andrew.muse-fisher@hoganlovells.com
HOGAN LOVELLS US LLP
Four Embarcadero Center, 35th Floor
San Francisco, CA 94111-4024
Telephone:   415.374.2300
Facsimile:   415.374.2499

Attorneys for Plaintiffs listed in caption

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

CALIFORNIA LEAGUE OF FOOD PRODUCERS, AMERICAN FOREST & PAPER ASSOCIATION, CALIFORNIA APPLE COMMISSION, CALIFORNIA BLUEBERRY COMMISSION, CALIFORNIA GROCERS ASSOCIATION, CALIFORNIA RESTAURANT ASSOCIATION, CALIFORNIA STRAWBERRY COMMISSION, CALIFORNIA TABLE GRAPE COMMISSION, CALIFORNIA WALNUT COMMISSION, CALIFORNIANS FOR AFFORDABLE PACKAGING, DAIRY INSTITUTE OF CALIFORNIA, FLEXIBLE PACKAGING ASSOCIATION, GROWER SHIPPER ASSOCIATION OF CENTRAL CALIFORNIA, OLIVE OIL COMMISSION OF CALIFORNIA, PET FOOD INSTITUTE, PRINT CREATIVE ALLIANCE, SNAC INTERNATIONAL, and WESTERN GROWERS ASSOCIATION,

Plaintiffs,

v.

ROB BONTA, IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL OF THE STATE OF CALIFORNIA,

Defendant.

Case No.  **'26 CV 1675 WQH BLM**

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

- 1 -
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs California League of Food Producers, American Forest & Paper Association, California Apple Commission, California Blueberry Commission, California Grocers Association, California Restaurant Association, California Strawberry Commission, California Table Grape Commission, California Walnut Commission, Californians for Affordable Packaging, Dairy Institute of California, Flexible Packaging Association, Grower Shipper Association of Central California, Olive Oil Commission of California, Pet Food Institute, Print Creative Alliance, SNAC International, and Western Growers Association (collectively, "Plaintiffs") seek prospective declaratory and injunctive relief against Defendant Rob Bonta, in his official capacity as Attorney General of the State of California, under the First and Fourteenth Amendments to the United States Constitution, 28 U.S.C. section 2201, and 42 U.S.C. section 1983, and allege as follows:

## **PRELIMINARY STATEMENT**

1. Recycling requires consumer participation. It does not happen automatically or without the familiar cues that we all rely on when deciding how to dispose of a product or its packaging when we have finished using it.

2. A product is recycled only if a consumer knows to place it in the recycling stream. If a package or product bears no recycling instruction or symbol, consumers will not place it into the typically blue recycling bin; instead they will throw it in the trash. Once discarded as trash, the product or package will very likely be deposited in a landfill, rather than recycled.

3. To encourage recycling of packaging that has been used, manufacturers of products and packaging have for decades, in California and throughout the United States and around the world, labeled goods with words and symbols that inform consumers that the packaging can be recycled. These words include terms such as "recyclable" and instructions such as "please recycle." They may include more involved instructions for removing caps or labels or for returning the packaging to a store that accepts it ("store drop off") or shipping it to a central location for specialized recycling. Symbols

- 2 -
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

indicating recyclability include the familiar "chasing arrows" in a circle or triangle indicating that the discarded packaging is capable of being recycled, such as this symbol:



4.     This lawsuit challenges California Senate Bill 343, Stats. 2021, Ch. 507 ("SB 343" or "the law"), a law that prohibits businesses from using these words and symbols and otherwise truthfully informing consumers that their products and packaging are recyclable, directing consumers to recycle the products or packaging—or even "indicating" that they can be recycled—unless those products satisfy rigid, statewide criteria that are both vague and burdensome to apply in practice. Cal. Pub. Res. Code § 42355.51(b)(1), (d). This law violates the free speech clause of the First Amendment to the U.S. Constitution.

5.     Plaintiffs are trade associations and other entities who themselves and whose members and customers support recycling and have expended significant resources to invent, design, manufacture, and use materials and packaging formats that can be recycled, to communicate to consumers how to recycle their products and packaging, to encourage recycling, and to use the outputs of recycling operations. They have and continue to advocate for appropriate recycling laws and regulations and have helped create industry standards and business conditions that facilitate recycling. Many of their members and their customers have also implemented programs and set goals for increasing the recycling rates of their products and packaging.

6.     As of October 4, 2026,[1] SB 343 prohibits a business from displaying on its product or packaging a chasing arrows symbol "or any other symbol or statement indicating the product or packaging is recyclable, or otherwise directing the consumer

---

[1] The law becomes operative "18 months after the date [CalRecycle] publishes the first material characterization study." Cal. Pub. Res. Code § 42355.51(b)(2)(A). The first material characterization study was published on April 4, 2025. SB 343 therefore becomes operative on October 4, 2026.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

to recycle the product or packaging," unless the item is "considered recyclable in the state."

7.     Among the multiple criteria that must be met to be "considered recyclable in the state," the material must be (i) collected for recycling by recycling programs for jurisdictions that collectively encompass at least 60 percent of California's population; and (ii) sorted into defined recycling streams by at least 60 percent of recycling programs statewide. This is often referred to as the "60/60 threshold."

8.     If either metric is not met, or if any of SB 343's other criteria are not satisfied, the law effectively imposes a categorical ban on a business's speech related to the product's recyclability. No qualified statements are permitted. No contextual disclosures are allowed. Even accurate statements such as "Recyclable where facilities exist" or "Please check locally for recycling options" are prohibited.

9.     The purported objectives of this law are to "end consumer confusion about which material is suitable for the blue bin, reduce contamination, lower waste volume, and improve recycling rates." Senate Comm. on Env't Quality, *SB 343 Analysis*, Reg. Sess., at 6 (Cal. 2021-2022), available https://senv.senate.ca.gov/sites/senv.senate.ca.gov/files/sb343_pca_v3.pdf. But the practical effect of SB 343 will be the opposite. Consumers will be confused as to why a package they were instructed to recycle in the past no longer bears that instruction. Waste volume will go up because, by forbidding businesses from informing consumers that a product or packaging can be recycled, the law ensures that it will be discarded in the trash and sent to a landfill. Indeed, the practical effect is that a packaging format that does not meet SB 343's strict requirements today will have no chance of meeting them in the future because SB 343 prohibits the product manufacturer from telling consumers where to place recyclables for collection, the first step in the recycling process. This will obviously not "lower waste volume, and improve recycling rates," as the law intends.

10.     In a marketplace with less information, consumers will inevitably end up disposing of recyclable materials in the waste bin where they are destined for landfills.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

This outcome directly undermines the State's goal of improving recycling rates. By prohibiting lawful speech that is truthful and not misleading, SB 343 impedes recycling efforts, disincentivizes innovation, imposes steep financial burdens on California's business community, and unconstitutionally restricts the speech of businesses that seek to provide consumers with accurate information so that they may play their role in recycling used items and packaging.

11.    Years of study by the State show that many materials which do not meet the stringent requirements of SB 343 are nonetheless collected and sorted for recycling throughout California.

12.    Instead of restricting speech, the State could exercise any number of alternatives that would improve the marketplace of information. California could raise public awareness around recyclability through state-funded educational campaigns and local programs. California could also allow businesses to make qualified claims of recyclability. By ignoring less restrictive means, the law imposes an unconstitutional restriction on commercial speech.

13.    Further, the law is unconstitutionally vague under the Due Process Clause of the Fourteenth Amendment. SB 343 contains ambiguous criteria that deprive businesses of notice as to which materials are considered recyclable or not. Without notice, businesses have no way of knowing whether they face the imminent and costly threat of enforcement under the law.

14.    Beyond being unconstitutional, SB 343 harms both businesses and the public. The law forces businesses to make a choice: incur the expense of changing product packaging and forgo supplying consumers with accurate information about how to properly recycle products, or face the very real threat of noncompliance. Meanwhile, Californians will have less accurate recycling information, which in turn will increase consumer confusion and hamper statewide recycling efforts.

15.    For these reasons, the Court should declare that the speech restrictions set forth in Public Resources Code sections 18015(d) and 42355.51 are unconstitutional

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

under the First and Fourteenth Amendments and enjoin Defendant and his officers, employees, or agents, and all those in privity with and/or acting in concert with those entities or individuals from enforcing or threatening to enforce in the future SB 343's prohibition on communicating the recyclability of a product or packaging contained in these provisions.

## PARTIES

16.     Plaintiffs represent and include as members businesses that meet Californians' demand for a broad range of consumer goods. Plaintiffs and their members share a common interest in increasing recycling rates. To that end, Plaintiffs and their members seek to include truthful, accurate recyclability claims on their products to help consumers play their role in the recycling system. But under SB 343, Plaintiffs and their members are prevented from doing so.

17.     Plaintiffs and their members have already incurred significant costs to comply with SB 343 because the lead time to revise labels and packaging is many months and sometimes over a year due to planning considerations, supply chain constraints, manufacturing sequencing, and inventory management. This is particularly true where recyclability claims are embedded in the package and not just printed on the label, such as chasing arrows symbols around resin identification codes, which a majority of states require to be embedded in plastic containers in order to indicate to recycling facilities which type of plastic the containers are made of so that they can be properly sorted. The looming deadline of October 4, 2026, has already required manufacturers of packaging and products to revise their packaging and labeling to be compliant with SB 343. Many are incurring costs now and will continue to incur costs as the deadline approaches.

18.     Furthermore, those members of Plaintiffs who want to continue to make truthful, not misleading, qualified recyclability claims for their products or packaging will be prohibited from doing so after October 4, 2026. These include products and packaging that are recyclable only through take-back programs or store drop-off

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

programs, or products and packaging that are widely collected and sorted in some localities in California but do not meet the 60/60 threshold, for which the FTC Green Guides would permit a qualified recyclability claim such as "Recyclable where facilities exist" or "Check to see if recycling facilities exist in your area."

19. Plaintiffs and their members also face significant costs for determining whether their products or packaging may bear recyclability claims because the criteria are complex and in many cases indeterminate. Indeed, in order to use the simple English term "recyclable," a business must determine whether "[t]he material type and form is sorted into defined streams" for processing by large recycling facilities, "with those defined streams sent to and reclaimed at a reclaiming facility consistent with the requirements of the Basel Convention." CalRecycle has not even assessed this Basel Convention criterion, much less provided guidance on how businesses are supposed to do so. Indeed, the United States is not a party to the Basel Convention, and CalRecycle has noted that assessing this criterion requires information that CalRecycle lacks authority to require.

20. Members of plaintiffs also face the risk of enforcement actions if their analyses and determinations are even alleged to be wrong. Because SB 343 can be enforced not only by the Attorney General but also by local district attorneys, city attorneys, and anyone who claims to have lost money or property as a result of a business's non-compliance with SB 343, October 4, 2026 may be the starting date for overwhelming amounts of litigation against California businesses who will have to defend their labeling decisions.

21. Plaintiff **The California League of Food Producers** (CLFP) is a nonprofit, statewide trade association representing the food processing industry since 1905. CLFP's membership includes over 400 companies that can, dry, and freeze fresh agricultural products in California, including companies who package, sell, distribute, and import products into California. These shelf stable products provide an important role in food security in California and across the nation. The first priority of CLFP

member companies is to provide a safe, reliable, and affordable food supply.

22. Plaintiff **The American Forest & Paper Association** (AF&PA) serves to advance public policies that foster economic growth, job creation, and global competitiveness for a vital sector that makes the essential paper and packaging products Americans use every day. The U.S. forest products industry employs more than 925,000 people, largely in rural America, and is among the top 10 manufacturing sector employers in 44 states. This industry accounts for approximately 4.7% of the total U.S. manufacturing GDP, manufacturing more than $435 billion in products annually. AF&PA member companies are significant producers and users of renewable biomass energy and are committed to making sustainable products for a sustainable future through the industry's decades-long initiative: Better Practices, Better Planet 2030.

23. Plaintiff **The California Apple Commission** (CAC) is a state commission legislatively established in 1994 by California statute to advertise, promote, and conduct research for the California apple industry. The California apple industry is the second largest exporter of apples in the U.S. and generates over a hundred million dollars in value every year. The CAC has succeeded and continues to succeed in conducting research in vital pre- and post-harvest practice, provides a unified industry voice on apple matters, assists in protecting California apple producers from harmful pests and diseases, and provides key apple industry market information to the industry.

24. Plaintiff **The California Blueberry Commission** (CBC) is an entity of state government, legislatively enacted in 2010, finding that the blueberry industry in California is necessary to assure the public of a continuous supply of blueberries and the maintenance of needed levels of income for those engaged in the blueberry industry of California. The CBC is authorized to carry out programs of pest management, advertising, promotion, food safety, maturity standards, education, marketing and research relating to blueberries, and more. In 2024, California blueberry growers shipped over 55 million pounds of fresh blueberries, 80 million pounds including frozen with a value of $363 million.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

25. Plaintiff **The California Grocers Association** (CGA) is a non-profit, statewide trade association representing the food industry since 1898. CGA represents approximately 500 retail members operating over 6,000 food stores in California and Nevada, and approximately 300 grocery supplier companies. Retail membership includes chain and independent supermarkets, convenience stores, and mass merchandisers. CGA actively promotes and protects the legislative and regulatory interests of the retail food industry before Congress, the California State Legislature, local governments, and state and local regulatory agencies. CGA engages in civil cases of importance to its members, such as this action. CGA members package, sell, distribute, and import products into California under their own brand names and the brand names of other companies.

26. Plaintiff **The California Restaurant Association** (CRA) is the uniting voice of the restaurant and foodservice industry, representing over 18,000 members that range from family-owned neighborhood restaurants to regional chains in California. CRA is a non-profit organization whose mission is to promote and protect the interests of restaurants through legislative advocacy and grassroots campaigns, and by working to ensure that the legal and regulatory environment in which its members operate is fair, transparent, and grounded in practical business reality.

27. Plaintiff **The California Strawberry Commission** (CSC) is a state commission that represents the entirety of the strawberry industry in California, which is comprised of more than 800 farms and 51 shippers and processors. In 2025, California farmers harvested more than 2.5 billion pounds of strawberries, which accounted for 90 percent of the United States' total fresh and frozen strawberry production. The value of the California strawberry crop is approximately $2.9 billion, and strawberries rank fifth in crop value among all crops produced in California. The CSC represents the interests of the California strawberry industry in the areas of production research and information, public policy, product research and information, and public relations.

28. Plaintiff **The California Table Grape Commission** (CTGC) is a state

- 9 -
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

commission that was established in 1967 by legislative act, with the purpose of expanding demand for California table grapes worldwide and strengthening the state's economy and improving the welfare and health of its citizens. In 2024, California farmers harvested more than 93.2 million boxes of grapes with a crop value of $2.59 billion.

29.     Plaintiff **The California Walnut Commission** (CWC) is a state commission that was established in 1987 by legislative act to enhance California's walnut industry through export market development, health and nutrition research, and advocacy work. The CWC represents 3,700 growers, most of which are primarily family farms and over 70 handlers in the state of California. In 2025, the harvested volume of walnuts was 1.6 billion pounds, produced on 380,000 acres with a value of over $1 billion.

30.     Plaintiff **Californians for Affordable Packaging** (CAP) is a California-based 501(c)(4) social welfare membership organization. CAP works to advance practical, affordable, safe, and sustainable packaging policy outcomes in California on behalf of a diverse membership of packaging producers, manufacturers, distributors, and related industry stakeholders. CAP's mission is to ensure that California's packaging and recycling policy framework reflects workable compliance pathways, sound science, and realistic economic and operational constraints, while avoiding unintended consequences that impose disproportionate costs on producers, consumers, and California communities.

31.     Plaintiff **The Dairy Institute of California** (DIC) is a California non-profit trade association representing milk processors and dairy product manufacturers on legislative and regulatory matters at the state and federal levels since 1939. DIC's goal is to support its members' ability to operate sustainably, innovate, and achieve efficiency in their own companies as they provide the highest quality dairy products to domestic and international markets. DIC's membership includes farmer cooperatives, private and family-owned corporations, regional brands, small artisan cheese makers with

- 10 -
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

manufacturing plants in California, and companies who convert, package, sell, distribute, and import dairy products into California.

32. Plaintiff **The Flexible Packaging Association** (FPA) is the voice of and represents users and manufacturers of flexible packaging and their suppliers in the United States. The association's mission is connecting, advancing, and leading the flexible packaging industry. Flexible packaging is the fastest-growing and second largest segment of the U.S. packaging industry, representing $51.5 billion in annual sales and approximately 98,000 workers in the U.S. Our industry has approximately 6,500 employees at flexible packaging manufacturing facilities in California, representing a total economic impact of more than $10 billion.

33. Plaintiff **The Grower Shipper Association of Central California** (GSA) is a regional trade association with a mission to advance families, food, and farming in one of California's most important agricultural regions. Founded in 1930, GSA represents over 300 members, which consist primarily of farmers, shippers, and processors of fruits and vegetables produced in Monterey, Santa Cruz, San Benito, and Santa Clara Counties. As part of its mission, GSA is dedicated to providing solutions-based programs and efforts covering areas such as farm worker health and safety, pest and disease management and prevention, sustainable agriculture, and food safety and security.

34. Plaintiff **The Olive Oil Commission of California** (OOCC) is a state entity that was established and is funded by California olive oil farmers, with oversight from the California Department of Food and Agriculture. The OOCC conducts research to assist farmers in successfully growing a healthy, sustainable crop and has developed and enforced standards for the purity and quality of California olive oil. Under its program, labels on California olive oil must provide a clear statement of quality grade. During the 2025-26 season the California olive oil industry produced 4.2 million gallons of olive oil for a value of $572,292,000.

35. Plaintiff **The Pet Food Institute** (PFI) is the trade association for U.S. cat

- 11 -

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

and dog food and treat manufacturers. PFI's members account for the vast majority of pet food and treats made in the United States, providing complete and balanced nutrition for the dogs and cats in 94 million U.S. households, with more than $65 billion in domestic annual dog and cat food and treats sales and annual exports of more than $2.4 billion. PFI's members collectively contribute to rural communities' vibrancy by employing over 35,000 people in 33 states, purchasing over $13.2 billion in agricultural inputs from U.S. farmers and ranchers. As the voice of U.S. pet food makers for over 65 years, PFI advocates for a transparent, science-based regulatory environment for its members and provides information about pet food and treat safety, nutrition, and health to pet owners.

36. Plaintiff **Print Creative Alliance** (PCA) is the trade association for printing, graphic arts, and allied industries operating in the 13 Western states. PCA has approximately 450 member companies in California who design, print, and fulfill packaging for a wide range of customers, from governmental entities to manufacturers to service and charitable organizations. Signs, packages, and labels are a critical part of daily life, which relies on printed information for essential instructions, visual cues, important information, and other directions that guide consumer behavior. For many years, PCA and its members have worked with customers in designing and producing sustainable packaging, which relies on labels and symbols like the chasing arrows symbol to inform consumers that a package is recyclable.

37. Plaintiff **SNAC International** is the global trade association for the snack food industry representing snack manufacturers and suppliers. It represents over 400 companies worldwide, including manufacturers of all types of chips, pretzels, popcorn, crackers, cheese snacks, meat snacks, nuts, fruit snacks, snack bars, granola, cookies, and various other snacks. Founded in 1937, SNAC International has been the forefront advocate for the snack industry in the legislative and regulatory process, engaging policymakers and agencies and all levels of government to advance rules that are science-based, fair, and workable.

- 12 -

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

38. Plaintiff **Western Growers Association** (WGA) is a trade association founded in 1926 that represents local and regional family farmers growing fresh produce in California, Arizona, Colorado, and New Mexico. WGA's members and their workers produce more than half of the nation's fresh fruits, vegetables, and tree nuts, including roughly half of the country's fresh organic produce.

39. Defendant Rob Bonta is the Attorney General of the State of California and the highest-ranking officer in the California Department of Justice. Attorney General Bonta is sued in his official capacity. He performs his official duties in Sacramento and throughout the State of California. As Attorney General, he is specifically empowered to defend challenges to the constitutionality of all state statutes, including SB 343.

## JURISDICTION AND VENUE

40. This Court has jurisdiction over this action under 28 U.S.C. § 1331, which confers original jurisdiction on federal district courts over actions arising under the Constitution or laws of the United States.

41. Each Plaintiff has standing to bring this lawsuit because at least one of its members would have standing to sue in their own right, the interests it seeks to protect are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires an individual member to participate in this suit. *Assoc. Gen. Contractors of Am. v. Cal. Dep't of Transp.*, 713 F.3d 1187, 1194 (9th Cir. 2013). The injuries of Plaintiffs and their members described below are directly traceable to SB 343's enactment and looming October 2026 deadline, and they would be redressed by the declaratory and injunctive relief Plaintiffs seek on behalf of their members and those they represent.

42. The **California League of Food Producers** (CLFP) brings this action on behalf of its members, who include companies that can, dry, and freeze fresh agricultural products in California, including businesses who package, sell, distribute, and import products into the state. Many of these products currently bear recyclability claims and will be discouraged or prohibited from doing so by SB 343. The requirements of SB 343

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

place a heavy burden on the food processing industry that will adversely impact food affordability. The costs for CLFP's members to comply with SB 343 include mass label updates, dual inventory costs, equipment changes, significant investments to reengineer food packaging to meet recycling criteria, higher disposal fees, and legal and compliance risks.

43. The **American Forest & Paper Association** (AF&PA) brings this action on behalf of its members, who include U.S. pulp, paper packaging, and wood products manufacturers that produce packaging for California customers. Many members routinely manufacture packaging bearing recyclability claims for products placed into the California market and will be discouraged or prohibited from doing so by SB 343. Members work with customers to design and produce sustainable packaging, which relies on recyclability indicators to guide customers on proper disposal. The statute's broad application exposes members to strict liability for providing truthful recycling instructions to consumers. Members face the untenable choice of either refusing to produce packaging bearing recyclability claims or risking strict liability under a law that imposes standards no paper manufacturer can independently verify. Moreover, many members' operations depend on robust recovery of recycled post-consumer fiber as feedstock. SB 343's rigid criteria will suppress recycling instructions on widely recyclable paper-based packaging, reducing recycling rates and lowering product quality. Members are also facing business disruptions as customers look to members for compliance and indemnification.

44. The **California Apple Commission**, the **California Blueberry Commission**, the **California Strawberry Commission**, the **California Table Grape Commission**, the **California Walnut Commission**, the **Grower Shipper Association of Central California**, and the **Olive Oil Commission of California** (collectively, "Agricultural Plaintiffs") bring this action on behalf of their members, who include packers, processors, and handlers of their respective agricultural commodities, whose labeling practices will be materially restricted by SB 343's strict yet vague criteria and

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

broad liability scheme. Packaging is the primary point-of-sale vehicle through which agricultural commodities are marketed and promoted to consumers, and these Agricultural Plaintiffs' missions to conduct marketing and consumer education programs are therefore directly affected by the scope of permissible recyclability representations on that packaging. If SB 343 takes effect, their members face immediate compliance exposure and will be significantly curtailed or discouraged from making truthful recyclability representations that they and their Commissions/Association would otherwise deploy. A ruling striking the statute down would restore labeling flexibility and allow handlers to continue using packaging that satisfies their marketing objectives, consumer expectations, and federal and state food safety obligations.

45. The **California Grocers Association** (CGA) brings this action on behalf of its members, who include grocery supplier companies and retailers, including chain and independent supermarkets, convenience stores, and mass merchandisers throughout California. Many of its members' products currently bear or will bear recyclability claims that are prohibited or will be discouraged by SB 343. Because the law's criteria for permissible recyclability claims are simultaneously so strict and so vague that CGA's members cannot determine with reasonable certainty whether their existing claims comply, members face an imminent and credible threat of enforcement, including potentially millions of dollars in civil penalties, if they continue to display those claims. This threat has already caused members to incur costs to audit their existing labeling, seek legal counsel, and in some cases suppress truthful statements—intended to increase consumer participation in recycling—just to avoid the risk of litigation exposure.

46. The **California Restaurant Association** (CRA) brings this action on behalf of its members, who include independent family-owned restaurants, small business restaurateurs, and franchised restaurant operators that sell food, beverages, and other consumer goods in California that use packaging and foodservice ware covered under SB 343. Many of these members currently serve or intend to serve customers single-use cups, plates, takeout containers, utensils, and other foodservice ware that

- 15 -
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

truthfully bear recyclability claims that may become unlawful under SB 343. Because the law's criteria for permissible recyclability claims are simultaneously so strict and so vague that CRA's members cannot determine with reasonable certainty whether their existing products and packaging comply, members face an imminent and credible threat of enforcement, including potentially millions of dollars in civil penalties, if they continue to use these items with recyclability claims. This threat imposes concrete and immediate operational injury that goes well beyond legal exposure. CRA's restaurant members do not independently manufacture or select their foodservice ware on a product-by-product basis; they source through established vendor relationships and distribution agreements, often under multi-year contracts that specify approved suppliers and materials. Complying with SB 343 would require members to identify alternative vendors supplying packaging and foodservice ware that meets the law's vague and demanding criteria, renegotiate or exit existing supply agreements, and integrate new foodservice ware and packaging formats into operational workflows that depend on consistency and standardization. Members have already incurred costs auditing their inventory.

47. **Californians for Affordable Packaging** (CAP) brings this action on behalf of its members, who include packaging producers, manufacturers, and distributors, and other members who are directly and materially harmed by SB 343 due to their efforts to make truthful and accurate recyclability representations on packaging placed into the California market. These representations are made in conformance with longstanding federal standards and are material to consumers' purchasing and disposal decisions. SB 343 prohibits the use of recyclability claims on any packaging format unless they independently satisfy dual 60 percent thresholds for collection and sortation and can be traced through reclaimers complying with the Basel Convention— requirements that are functionally impossible to verify and effectively unachievable for the vast majority of packaging formats lawfully sold in California today. CAP members face the imminent choice of either stripping accurate recyclability claims from their

- 16 -

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

packaging—suppressing truthful commercial speech and undermining consumer recycling behavior—or retaining those claims and exposing themselves to enforcement liability under SB 343.

48. The **Dairy Institute of California** (DIC) brings this action on behalf of its members, who include milk processors and dairy product manufacturers who make, package, sell, distribute and import dairy products into California. Many of these products currently bear recyclability claims and will be prohibited or discouraged from doing so by SB 343. The burdens DIC's members face in complying with SB 343 include mass label updates, dual inventory costs, equipment changes, significant investments to reengineer dairy packaging to meet recycling criteria, higher disposal fees, and legal and compliance risks. These lengthy and expensive processes will create operational disruptions across time-sensitive dairy supply chains. The uncertainty of the statute's criteria for recyclability risks the stranding of inventory and spoiling of perishable dairy products. The law's burdens on the dairy industry will adversely impact access and affordability of dairy products, including milk that is served in lunch school programs.

49. The **Flexible Packaging Association** (FPA) brings this action on behalf of its members, who include manufacturers of a wide variety of flexible packaging products, including bags, pouches, labels, liners, wraps, and rollstock, which play an essential role in preserving the shelf stability, safety, and quality of all kinds of consumer goods and foods, including fresh meat and produce. However, circularity options for flexible packaging presently remain limited. There is no universal solution for collecting, sorting, and processing flexible packaging, as viability depends on local infrastructure, collection methods, material mix, and market demand. The limitations under SB 343 for recyclability labeling will severely impact the current and future success of an already delicate infrastructure system for recycling flexible packaging in California, including through alternative collections systems such as store drop-off programs. FPA's members face an imminent threat of enforcement actions based on truthful recyclability claims they are currently and/or planning to make, and many

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

members will consequently self-censor these claims in the future.

50. The **Pet Food Institute** (PFI) brings this action on behalf of its members, who include cat and dog food and treat manufacturers that sell pet food and treats in California. Many of these products currently bear recyclability claims and will be prohibited from doing so by SB 343. The statute imposes complex and shifting criteria for recyclability claims that members cannot apply with reasonable certainty. Members are being forced to spend significant time and resources to conduct comprehensive assessments to determine recyclability and revise labeling and marketing claims as necessary. The pet food supply chain is inherently national, making it logistically impossible to create and manage California-only inventory. As a result, the statute will effectively compel some members to either strip all recyclability claims from their packaging nationwide or withdraw their products from California markets. Many members are already removing recyclability claims from packaging that is widely recyclable, likely reducing recycling rates, causing consumer backlash, and damaging brand reputation.

51. **Print Creative Alliance** (PCA) brings this action on behalf of its members, who include printers, label producers, and packaging manufacturers that design, print, and fulfill packaging orders for California businesses. Many members routinely print recyclability claims on packaging for products placed into the California market and will be prohibited or discouraged from doing so by SB 343. Members work with customers to design and produce sustainable packaging, which relies on recyclability indicators to guide customers on proper disposal. PCA's members also make recyclability claims on the packaging they supply to their customers, who in turn supply the packaging to consumers, and will be discouraged or prohibited from doing so by SB 343. The statute's broad application exposes members to strict liability for providing truthful recycling instructions to consumers. Members face the untenable choice of either refusing to print accurate recyclability claims or risking strict liability under a law that imposes standards no printer can independently verify. Members are also facing business disruptions as

- 18 -
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

customers look to members for compliance and indemnification.

52.     **SNAC International** brings this action on behalf of its members, who include snack manufacturers and suppliers that make, package and sell a wide variety of snack foods in California. Many of these products currently bear recyclability claims and will be prohibited or discouraged from doing so by SB 343. The requirements of SB 343 place a heavy burden on the snack food industry that will adversely impact food affordability. The costs for SNAC's members to comply with SB 343 include mass label updates, dual inventory costs, equipment changes, significant investments to reengineer food packaging to meet recycling criteria, higher disposal fees, and legal and compliance risks.

53.     **Western Growers Association** (WGA) brings this action on behalf of its members, who grow, pack, and sell fresh produce in California. Many fresh produce packaging materials use recycling symbols and will be prohibited from doing so by SB 343. In recent years, many WGA members have invested substantial resources to transition their packaging in order to participate in take-back recycling programs and encourage consumer recycling. WGA members face the imminent choice of either removing accurate recycling instructions from packaging or retaining those claims and exposing themselves to enforcement liability under SB 343. The law therefore undermines prior packaging investments, restricts members' ability to provide accurate recycling information to consumers, and imposes new compliance and labeling burdens that disrupt the market for fresh produce packaging.

54.     Venue is proper under 28 U.S.C. § 1391(b)(1) and (b)(2), because the Attorney General is located within this district and a substantial part of the events giving rise to Plaintiffs' claims occurred in this district.

## FACTUAL BACKGROUND

### A.     Overview of California SB 343

55.     Signed into law on October 5, 2021, SB 343 amended sections of the Public Resources Code and Business and Professions Code to restrict a commercial speaker's

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

ability to label or market a product as "recyclable." Previously, a business could lawfully claim a product was recyclable unless such a claim was "untruthful, deceptive, or misleading . . . , whether explicit or implied." *See* Cal. Bus. & Prof. Code § 17580.5(a) (Stats. 1990, Ch. 1413, Sec. 2). Furthermore, it was a defense to any enforcement of this provision that the claims "conform to the standards or are consistent with the examples contained in the "Guides for the Use of Environmental Marketing Claims" published by the Federal Trade Commission. *Id.* § 17580.5(b). Those "FTC Green Guides" expressly permit businesses to make qualified recyclable claims where recycling facilities are available to less than 60 percent of consumers or communities where the item is sold. 16 C.F.R. § 260.12. But in 2021, SB 343 eliminated the defense of compliance with the Green Guides for any recyclable claim, including use of the chasing arrows symbol. Cal. Bus. & Prof. Code § 17580.5(b)(2).

56. SB 343 replaced the flexible approach of the Green Guides with California's unique, rigid, and complex definition of the term "recyclable." That term cannot be qualified with language that makes it truthful and not misleading to reasonable consumers, such as "Facilities may not be available in your area" or "Return to store where purchased" or "Recyclable through our take-back program. Visit [website for details]." Instead, California restricts the term "recyclable" (and the chasing arrows symbol) to a small subset of products and packages that meet precise criteria. If a product or package does not meet these criteria, there can be no indication that it is recyclable. This term, and indeed any symbols and instructions conveying even the concept of recyclability, is illegal to use on all other products or packages. The only exceptions are a "not recyclable" symbol of the chasing arrows with a slash through it, items required by federal law to be labeled with a chasing arrows symbol, directions for composting ("organics recycling"), and resin identification codes without a chasing arrows symbol. Cal. Pub. Res. Code § 42355.51(c).

57. The core of the law—found at Public Resources Code section 42355.51— states that "a product or packaging is recyclable" only if it meets all of the following

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

criteria:

> (i)    It "is of a material type and form that routinely becomes feedstock used in the production of new products or packaging,"

> (ii)    "The material type and form is collected for recycling by recycling programs for jurisdictions that collectively encompass at least 60 percent of the population of the state,"

> (iii)    "The material type and form is sorted into defined streams for recycling processes by large volume transfer or processing facilities . . . that process materials and collectively serve at least 60 percent of recycling programs statewide, with the defined streams sent to and reclaimed at a reclaiming facility consistent with the requirements of the Basel Convention," and,

> (iv)    The product or packaging meets several additional design and composition requirements.

Cal. Pub. Res. Code §§ 42355.51(b)(1), (d)(2), (d)(3).

58.    A product that does not meet all of these criteria but that "displays a chasing arrows symbol, a chasing arrows symbol surrounding a resin identification code, or any other symbol or statement indicating the product or packaging is recyclable, or otherwise directing the consumer to recycle the product or packaging" is a "deceptive or misleading claim" under Public Resources Code section 42355.51 and Business & Professions Code section 17580.5.

59.    To help businesses identify which materials meet these requirements, including the "60/60 threshold," the law requires the Department of Resources Recycling and Recovery ("CalRecycle") to conduct and publish a "characterization study of material types and forms that are collected, sorted, sold, or transferred by solid waste facilities." Cal. Pub. Res. Code § 42355.51(d)(1)(B)(i).

60.    The law does not empower CalRecycle to make final or formal determinations as to which materials are or are not "recyclable," but only to provide information to assist businesses in making these determinations on their own. As a result,

- 21 -
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

in order to convey to consumers that their product or package is recyclable, businesses must undertake extensive analysis of the materials used in it, combing through complex data published by CalRecycle and attempting to find and analyze information that is not widely available. Furthermore, because the CalRecycle characterization study only applies to products and packaging sorted by solid waste facilities, it necessarily excludes those recycled via alternative collection systems and provides no guidance as to this portion of the recycling stream.

61. The first Material Characterization Study was published on April 4, 2025. CalRecycle, SB 343 Material Characterization Study Final Findings 2023/2024 (2025) (the "2025 MCS"). It was amended on August 8, 2025, *see* CalRecycle, August 8, 2025 Update Letter, available https://www2.calrecycle.ca.gov/Docs/Web/131064 (the "August MCS Update Letter"), and then again on December 22, 2025. *See* CalRecycle, December 22, 2025 Update Letter, available https://www2.calrecycle.ca.gov/Docs/Web/137764 (the "December MCS Update Letter").

62. A product or packaging is considered "recyclable in the state" if, and only if, based on the latest Material Characterization Study, the product or packaging meets the 60/60 threshold, as well as the other listed criteria. CalRecycle is obligated to update its Material Characterization Study every five years. Cal. Pub. Res. Code § 42355.51(d)(1)(B)(ii). Notwithstanding this five-year cycle, SB 343 allows CalRecycle to update its findings more frequently as new information becomes available. *See id.* § 42355.51(d)(1)(B)(iii).

63. The 2025 MCS gathered data from 34 of California's 58 counties, which encompass 93 percent of California's population. The data disclose whether materials are collected for recycling and whether the material is sorted for recycling by large volume transfer or processing ("LVTP") facilities. (It therefore does not include data on materials that do not need to be sorted and/or do not pass through LVTP facilities, such as packaging collected through store drop off or mail back programs.)

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

64. The 2025 MCS does not include any "information on the destination or ultimate disposition of materials sorted and sold by LVTP facilities," whether they are sent to a reclaimer that complies with the Basel Convention, or information about the composition and design of specific products. In other words, it is missing "the information necessary to determine the recyclability status for any particular product or packaging," *see* 2025 MCS at 3, the determination of which is itself necessary for regulated businesses to express any recyclability claim without fear of public or private enforcement.

65. Based on the latest Material Characterization Study, businesses are expected to determine whether their product or packaging meets the 60/60 threshold and ultimately decide which products they can label as recyclable based on the other criteria. The 2025 MCS also demonstrates that many materials that do not meet the 60/60 threshold can be and are recycled across the state.

66. SB 343 further states that "[a] product or packaging shall not be considered recyclable in the state unless . . . designed to ensure recyclability" and provided it "does not include any components, inks, adhesives, or labels that prevent the recyclability of the product or packaging." Cal. Pub. Res. Code § 42355.51(d)(3). SB 343 does not require the Material Characterization Study or any other guidance from CalRecycle to identify what types of components, inks, adhesives, or labels prevent recyclability. In contrast, the Green Guides allow businesses to label a product as recyclable even if it includes "minor" or "incidental" components that are not recyclable. 16 C.F.R. § 260.3. And even if an "incidental component significantly limits the ability to recycle the product," the business can include an accurate, qualified claim about the limited recyclability of the product under the Green Guides. *See id.*

67. SB 343 also requires CalRecycle to promulgate regulations to gather data from waste processors on how materials are collected and processed, and what material types are actively recovered. Cal. Pub. Res. Code § 42355.51(d)(A). These regulations were approved on January 23, 2024. *See* Cal. Code. Regs. tit. 14, §§ 18815.1-18815.9,

- 23 -

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

18815.11-18815.12, 18794.2. CalRecycle began gathering data relevant to the law in the second quarter of 2024. *See* CalRecycle, Recycling and Disposal Reporting: Reports List, https://www2.calrecycle.ca.gov/RecyclingDisposalReporting/Reports [hereinafter Recycling and Disposal Reports].

68.     However, the Recycling and Disposal Reports do not contain all the information required for businesses to determine whether their products are recyclable under the law. For example, the Recycling and Disposal Reports do not indicate whether the materials are "sent to and reclaimed at a reclaiming facility consistent with the requirements of the Basel Convention."

69.     Indeed, Defendant even acknowledged that "CalRecycle does not have any statutory authority to assess whether particular products meet the collection- and process-related thresholds" in SB 343. *See* Real Party in Interest California Department of Resources Recycling and Recovery's Statement in Response to Defendants' Demurrers at 3, *Last Beach Cleanup v. Stater Bros. Mkts.*, No. 22STCV18252 (L.A. Super. Ct. Oct. 5, 2023).

70.     SB 343 also prohibits placing a resin identification code (RIC) within a chasing arrows symbol on a product unless that product meets the requirements set out in the law. Cal. Pub. Res. Code § 18015(d). This prohibition directly conflicts with the laws of approximately 29 other states that ***require*** the RIC to be placed within a chasing arrows symbol on certain types of plastics, regardless of other criteria regarding the product's recyclability. *See, e.g.*, Fla. Stat. § 403.708; 415 Ill. Comp. Stat. 15/10; Tex. Health & Safety Code § 369.002. Such symbols look like these:



As a result, a product that does not meet the recyclability requirements set out in section 42355.51 cannot include the chasing arrows symbol if sold in California, but *must* have the chasing arrows symbol if sold in one of these other states.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

71. Because almost all goods, and particularly consumer products, sold in the United States travel in interstate commerce, and because major retailers usually insist that goods supplied to them be legal for sale throughout the United States, it is difficult, if not impossible, for manufacturers to label products specifically for one state versus another. As a practical matter, they face a choice of which laws to comply with. SB 343 therefore places a heavy burden on businesses who wish to make truthful recyclability claims outside of California. Furthermore, because enforcement of SB 343 is anticipated to be far more aggressive than enforcement of the conflicting laws in other states, as a practical matter, chasing arrows symbols will be removed from many products. SB 343 therefore is likely to reduce recycling rates not only in California but throughout the United States. For the members of Plaintiffs that set goals for the recycling rates for their products and packaging on a nationwide basis, SB 343 impedes those goals.

72. The law places separate restrictions on non-curbside recycling programs. Cal. Pub. Res. Code § 42355.51(d)(5). Products and packaging that are not collected via a curbside program but that are collected in other programs are not considered recyclable unless they are collected at a rate of at least 60 percent and have sufficient commercial value to be marketed, transported, and sorted for recycling. After January 1, 2030, the rate increases to 75 percent. Such products may include high value items like electronics or printer cartridges or items such as coffee pods or other special containers that require specialized collection systems for recycling. Under SB 343, if the collection rate for such products in California is not yet at 60 percent as of October 4, 2026, businesses are not permitted to tell consumers about the availability of recycling services or instruct them on how to return the items for recycling. SB 343 will therefore halt such programs, and the products and packaging they cover will end up in landfills, contrary to the stated intent of SB 343.

73. SB 343 becomes operative on October 4, 2026, and applies to all products and packaging manufactured after that date. As of the date of this Complaint, businesses have less than seven months to compare their products against the Material

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Characterization Study, perform outside research, determine whether they need to make changes to their marketing claims, redesign their labels, products, and packaging, and produce and distribute the redesigned product or packaging. Furthermore, because goods routinely travel in interstate commerce, and the California market cannot reasonably or practically be segregated from the rest of the United States, Plaintiffs' members are having to make these changes on a nationwide basis in order to ensure compliance with California SB 343.

    **B.    The Law Exposes Businesses to Onerous Criminal and Civil Penalties.**

74.    California's False Advertising Law ("FAL") creates criminal penalties for false recyclability claims: failure to comply with the law is a "misdemeanor punishable by imprisonment in the county jail not to exceed six months, or by a fine not to exceed two thousand five hundred dollars ($2,500), or by both." Cal. Bus. & Prof. Code § 17581.

75.    Businesses also face "civil liability in the amount of five hundred dollars ($500) for the first violation of this chapter, one thousand dollars ($1,000) for the second violation, and two thousand dollars ($2,000) for the third and any subsequent violation." Cal. Pub. Res. Code § 42358. These penalties are in addition to those authorized by California's Unfair Competition Law ("UCL"), which authorizes a civil penalty of up to $2,500 for *each violation*. Cal. Bus. & Prof. Code § 17206.

76.    The law does not stop at criminal and civil penalties. Businesses face the risk of injunctions issued against them along with attorney's fees and costs that necessarily accompany an enforcement action. Specifically, under the FAL, "any person who has suffered injury in fact and has lost money or property as a result of violation of this chapter" may seek injunctive relief and restitution. Cal. Bus. & Prof. Code § 17535. The UCL similarly authorizes injunctive relief and restitution. Cal. Bus. & Prof. Code § 17203.

77.    Private parties are also empowered to enforce the law under the FAL as

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

class actions. Cal. Bus. & Prof. Code § 17535. They can also enforce the law under the UCL, which authorizes suits based on violations of any other laws. Cal. Bus. & Prof. Code § 17200. Private plaintiffs in such actions routinely seek their attorney's fees for actions that they claim result "in the enforcement of an important right affecting the public interest …." Cal. Civ. Proc. Code § 1021.5.

78.    Because the law creates several theories of liability for false claims of recyclability that can be brought by both public and private enforcers and lead to steep criminal and civil penalties, the law places an immense burden on businesses who wish to label their products and packaging as recyclable, whether using words or symbols or both, but cannot determine whether they meet the strict and intricate criteria of SB 343.

79.    Indeed, when SB 343 was being considered by the Legislature, the author candidly declared that "violations of this bill . . . serve as predicate offenses" for other laws like the UCL and FAL, enabling "[c]onsumers and public entities [to] thus enforce the provisions of this bill where persons [] deploy the chasing arrows symbol or otherwise convey a product is recyclable when it fails to meet the criteria of statewide recyclability pursuant to Section 42355.51." Senate Judiciary Comm., *SB 343 Analysis*, Reg. Sess., at 9 (Cal. 2021-2022), https://sjud.senate.ca.gov/sites/sjud.senate.ca.gov/files/sb_343_allen_senate_judiciary_committee_analysis.pdf.

80.    Notably, in a separate action, Defendant argued before the court that "the express purpose of section 42355.51 is to bolster . . . preexisting laws against deceptive marketing by adding a *per se rule* for applying them." *See* Real Party in Interest California Department of Resources Recycling and Recovery's Statement in Response to Defendants' Demurrers at 3, *Last Beach Cleanup v. Stater Bros. Mkts.*, No. 22STCV18252 (L.A. Super. Ct. Oct. 5, 2023) (emphasis added).

**C.    Enforcement of SB 343 by Public and Private Actors is Imminent.**

81.    Although the law is not in effect, prior product recyclability challenges by public officials and private plaintiffs indicate an imminent threat of enforcement.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

82. Since 2022, lawyers representing private plaintiffs have brought no fewer than 30 actions alleging that a business has deceptively labeled a product or packaging as recyclable. The Attorney General has also brought at least three such actions. *Id.* These suits, without regard to their merit or lack thereof, drain businesses of resources as they are forced to litigate or to settle.

83. For example, private individuals and their attorneys have already aggressively used the UCL and FAL to challenge businesses' recyclability claims. *See, e.g.*, Compl. at 10, *Losey v. Califia Farms, LLC*, No. 25STCV17229 (L.A. Super. Ct. June 13, 2025) (bringing false advertising and unfair business practice claims for labeling products as recyclable); Compl. at 12, *Heavey v. WinCup, Inc.*, No. 25CU014781C (S.D. Super. Ct. Mar. 21, 2025) (same).

84. Private individuals and their attorneys also rely on the Consumers Legal Remedies Act ("CLRA"), California Civil Code section 1750 *et seq.*, to challenge recyclability claims with the ability to recover attorney's fees and legal damages. *See, e.g.*, First Am. Compl. at 13-15, *Castillo v. Safeway, Inc.*, No. ECU004383 (Imperial Super. Ct. Dec. 11, 2025) (bringing claims under the FAL, UCL, and CLRA for allegedly listing non-recyclable products as recyclable); First Am. Compl. at 11-14, *Blagoyevic v. Grocery Outlet Inc.*, No. 25CU050184C (S.D. Super. Ct. Nov. 20, 2025) (same); Second Am. Compl. at 10-12, *Lee v. Sutter Home Winery, Inc.*, No. 25CU019972C (S.D. Super. Ct. Aug. 18, 2025) (same); First Am. Compl. at 11-13, *Fraser v. Peet's Coffee Inc.*, No. 25CU019511C (S.D. Super. Ct. July 10, 2025) (same); First Am. Compl. at 10-13, *Banta v. Delicato Vineyards, LLC*, No. STK-CV-UBT-2025-0005347 (San Joaquin Super. Ct. June 3, 2025) (same); Second Am. Compl. at 11-14, *Garcia v. Safeway, Inc.*, No. 37-2024-00016265-CU-BT-CTL (S.D. Super. Ct. Mar. 5, 2025) (same); First Am. Compl. at 17-19, *McCullough v. Taco Bell Corp.*, No. CVRI2500069 (Riverside Super. Ct. Feb. 3, 2025) (same). In these cases, attorney's fees are available under the CLRA. Cal. Civ. Code § 1780(e).

85. Indeed, even though SB 343 is not yet in effect, private individuals and

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

their attorneys have *already* started to expressly use SB 343 to bring claims against businesses for allegedly misleading recyclability claims. Appellant's Opening Brief at 16, *Planet Green Cartridges, Inc. v. Amazon.com, Inc.*, No. 23-4434 (9th Cir. Mar. 8, 2024) (conceding that "[p]laintiff's UCL claims aris[e] from violations of Cal. Pub. Res. Code § 42355.51"); First Am. Compl., ¶ 238, *Bhotiwihok v. Fairlife, LLC*, No. 2:25-cv-01650-ODW (AGRx) (C.D. Cal. May 29, 2025) ("Defendants' recyclability claims are deceptive under . . . PRC § 42355.51"); Compl. at 18, *Woolard v. Glad Products Co.*, No. 3:24-cv-00504-JO-BLM (S.D. Cal. Mar. 15, 2024) (citing Public Resources Code section 42355.51's definition of recyclable in consumer fraud suit); Third Am. Compl. at 23, *Last Beach Cleanup v. Stater Bros. Mkts.*, No. 22STCV18252 (L.A. Super. Ct. Mar. 15, 2024) (same); Second Am. Compl. at 22, *Last Beach Cleanup v. Gelson's Mkts.*, No. 22STCV18216 (L.A. Super. Ct. June 28, 2023) (same); First Am. Compl., ¶ 86, *Peterson v. The Glad Products Co.*, No. 3:23-cv-00491-TSH (N.D. Cal. Apr. 19, 2023) ("Defendants' use of the 'Recycling' representation [and] 'chasing arrows' symbol on the Products' labels . . . violates California Public Resources Code Section 42355.51").

86.    Without even citing SB 343 directly, private litigants have still used the law's 60/60 threshold to bring deceptive labeling claims. As one notable example, a plaintiff sued one producer for falsely advertising its aseptic oat milk cartons as recyclable packaging. Compl., ¶¶ 14-17, *Losey v. Califia Farms, LLC*, No. 25STCV17229 (L.A. Super. Ct. June 13, 2025). Citing CalRecycle's April 2025 MCS report to claim that aseptic cartons "do not meet the legal standard required to be able to [be] legally [called] . . . 'recyclable,'" *id.*, ¶ 22, this plaintiff alleged that the producer's use of the "chasing arrows" symbol and "Please Recycle" instruction violated the FAL and UCL. *Id.*, ¶¶ 40-56. *See also* First Am. Compl., ¶ 21, *Banta v. Delicato Vineyards, LLC*, No. STK-CV-UBT-2025-0005347 (San Joaquin Super. Ct. June 3, 2025) (same).[2]

---

[2] Had one extra month passed before this defendant was sued, these cartons would have met the 60/60 criteria for a "recyclable" claim thanks to CalRecycle's determination that facilities sorting these cartons served 68 percent of counties

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

87. Similarly, even though it is not yet in effect, Defendant (the Attorney General) has already applied SB 343 in litigation to challenge businesses' current recyclability claims. *See* Compl., ¶ 56, *State v. Novolex Holdings, LLC*, No. CGC-25-630237 (S.F. Super. Ct. Oct. 17, 2025) (citing to Public Resources Code section 42355.51 and the Material Characterization Study in arguing that defendants falsely claimed their plastic carryout bags are recyclable); Compl., ¶ 51, *State v. Revolution Consumer Sols. (CA), LLC*, No. CGC-25-630238 (S.F. Super. Ct. Oct. 17, 2025) (same); Compl., ¶ 277, *State v. Exxon Mobil Corp.*, No. CGC-24-618323 (S.F. Super. Ct. Sept. 23, 2024) (alleging that defendant falsely claimed the recyclability of plastics and citing to Public Resources Code section 42355.51 for the definition of "recyclable").

88. This litany of enforcement actions – before SB 343 even comes into effect – portends further and more aggressive litigation that will overwhelm Plaintiffs' members and is already chilling their exercise of their free speech rights under the First Amendment.

**D. SB 343 Unduly Burdens Businesses.**

89. Aside from the real threat of criminal and civil litigation for failure to comply with the law, businesses face undue burdens under SB 343.

90. A burden placed on every business by SB 343 is to investigate whether their products meet the law's strict definition of "recyclable." This involves a meticulous study of the materials in each product and its packaging, and a comparison against the Material Characterization Study. This is a practically impossible task. For example, neither the Characterization Study nor any other information provided by the State provides sufficient information for a business to determine whether a material complies with the part of the law related to the Basel Convention. In many cases, the material categories are ambiguously defined, with several potentially applicable categories for a given material, and no ability to seek further guidance from CalRecycle as to which

---

statewide, based on August MCS Update Letter. That partial defense would have proved short-lived, however, because just four months later, CalRecycle amended this estimate of counties served to be 53 percent. *See* December MCS Update Letter.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

category applies.

91.    Businesses who decide to or are required to change their messaging about product recyclability must incur the costs of redesigning their product, reproducing the product, and redistributing it to consumers. This will require an immense amount of time and resources for even the smallest changes.

92.    Furthermore, businesses must incur these costs iteratively as CalRecycle continues to update recyclability criteria. For example, CalRecycle changed the criteria for aseptic and gable-top cartons three times in 2025. First, CalRecycle established in the April 4, 2025 Material Characterization Study Final Findings that these cartons did *not* meet the 60 percent sortation rate required by Public Resources Code section 42355.51(d)(2)(B). Then, in August 2025, CalRecycle found that these cartons *did* meet the 60 percent sortation requirement based on new data about the availability of technology to sort cartons and end markets that recycle cartons. August MCS Update Letter at 2. In December 2025, CalRecycle issued yet another update stating that *one* recycling facility would no longer accept aseptic and gable-top cartons for recycling, bringing the sortation rate below 60 percent again. December MCS Update Letter at 2. After all these changes, aseptic and gable-top cartons are currently *not* considered recyclable under SB 343. Businesses must nevertheless react to each of these changes, which are arbitrary and beyond their control.

93.    CalRecycle has indicated that it "does not anticipate publishing a new version of the complete report until the required update in 2027." December MCS Update Letter at 2; *see also* Cal. Pub. Res. Code § 42355.51(d)(1)(B)(ii) (mandating updates to the Material Characterization Study every five years beginning in 2027). However, this means businesses can expect an update just months after the law goes into effect on October 4, 2026. Moreover, CalRecycle retains the authority to "publish additional information that was not available at the time of the most recent periodic material characterization study" as that information becomes available. Cal. Pub. Res. Code § 42355.51(d)(1)(B)(iii). Thus, businesses can expect new recyclability standards

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

at a minimum of every five years, with the possibility of additional sporadic updates that may occur at any time. Considering the time and resources business must expend to bring new products and packaging to market, SB 343 places recurring burdens on businesses who may have to redesign their products or else risk noncompliance.

94.     Furthermore, although SB 343 initially had a lead time of years before its effective date, it has no provisions for advance notice of changing requirements occasioned by changing data. Notably, the Material Characterization Study is not the final word on whether a particular package even meets the 60/60 threshold; instead, a business may not make a recyclability claim unless it can substantiate, with its own factual investigation, that it meets the 60/60 threshold at the time the product is sold, offered for sale, distributed, or imported into the state. But those facts may change in an instant, as the recent experience with aseptic and gable-top cartons shows, due to factors completely out of the control and likely out of the knowledge of an individual business using this form of packaging. If one LVTP changes its policies, or goes out of business, or if a large community's curbside collection program changes its policies, a product or packaging that previously met the criteria for a recyclable claim will instantly be illegal to sell in California. That characteristic of the law, combined with other laws that make it enforceable by attorneys for individual consumers as well as by the Attorney General, 58 district attorneys, and several city attorneys, with potentially devastating civil and criminal penalties, makes SB 343 a severe restriction on the free speech rights of businesses.

95.     In addition, those businesses that sell products both in California and in the many states that require RICs to be placed within a chasing arrows symbol face heightened burdens. As discussed above, several states *require* placing the chasing arrows symbol around the RIC, whereas SB 343 forbids doing so for materials that do not meet all of the requirements of the law. This means that a business whose product or packaging does not meet the requirements of SB 343 is potentially prohibited from simultaneously distributing the product or packaging in California and these other states.

96. Businesses that want to communicate that their product is recyclable through alternative collection programs also face high burdens and restrictions on their speech. A product that is collected through a non-curbside program must be recovered at a rate of at least 60 percent before January 1, 2030, and at least 75 percent after January 1, 2030, in order to be labeled as recyclable. Cal. Pub. Res. Code § 42355.51(d)(5). This is an incredibly high rate, particularly considering consumers must take an affirmative step to recycle these items beyond simply placing them in their curbside container. The products must also have "sufficient commercial value to be marketed for recycling and be transported at the end of its useful life to a transfer, processing, or recycling facility to be sorted and aggregated into defined streams by material type and form." Cal. Pub. Res. Code § 42355.51(d)(5)(A), (B). Neither the law nor the regulations defines the term "sufficient commercial value." Furthermore, the MCS conducted by CalRecycle does not even consider alternative collection programs in which the products or packaging are not sorted, i.e., programs in which the materials are collected without a need to be sorted and are transported directly to the reprocessor. They thus cannot satisfy the 60/60 criteria assessed in the MCS. In short, these requirements place an enormous burden on businesses whose products are recycled in alternative collection systems to measure the rate of recycling and determine the commercial value of each product in the recycling stream.

## LEGAL BACKGROUND

### A. SB 343 Is a Content-Based Regulation of Speech.

97. "Content-based laws—those that target speech based on its communicative content—are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015). "Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed." *Id.*

98. Content-based restrictions on commercial speech are subject to a

- 33 -
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

heightened standard of review akin to strict scrutiny, the same demanding standard that applies to non-commercial speech. *See, e.g.*, *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 591 U.S. 610, 618 (2020); *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 565 (2011); *Int'l Outdoor, Inc. v. City of Troy, Mich.*, 974 F.3d 690, 707-08 (6th Cir. 2020).

99. SB 343 is a content-based regulation of speech. It targets a particular message about the recyclability attributes of a product or packaging – whether expressed in words or in symbols, in declaratory statements or in directions – and it suppresses that message unless it conforms to the State's definition. The law therefore regulates speech based on the "topic discussed" and "message expressed."

100. As a content-based restriction on commercial speech, SB 343 is subject to strict scrutiny, where "it is the rare case . . . that a law survives." *See Burson v. Freeman*, 504 U.S. 191, 211 (1992) (plurality opinion).

101. The consumer confusion that SB 343 spawns means the law is anything but "narrowly tailored." Consumers use on-package instructions and familiar recycling symbols as a cue for whether an item belongs in the recycling bin. When those cues are forcibly removed, consumers reasonably infer that the item is not recyclable and should be discarded as waste. But that inference will often be incorrect. Under SB 343, materials that are recyclable and accepted in a consumer's locale must still be left unlabeled because they fail statewide thresholds unrelated to that consumer's local recycling options.

102. In this way, the law not only removes accurate information from the market, it affirmatively induces a false consumer impression that a product or package without a recyclability label means it is not recyclable.

103. The law also creates the possibility that identical packaging will be labeled "recyclable" in many states but unlabeled in California. Consumers traveling, relocating, or encountering nationally marketed products will observe inconsistent messaging, fostering doubt about what can and cannot be recycled. Such inconsistency increases confusion rather than alleviating it.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

104. Another cause for confusion under SB 343 is that the eligibility for being labeled "recyclable" under the statute is a moving target. Statewide collection and sorting practices, for example, can shift over time without any change to the physical product or packaging itself. As statewide recycling infrastructure responds to municipal and county-level changes in curbside collection, sorting, and recycling programs, a product's ability to bear recyclability labeling may shift solely because aggregate metrics rise above or fall below statutory thresholds.

105. Although SB 343 obligates CalRecycle to update the Material Characterization Study every five years, the law authorizes publication of a new report as frequently as CalRecycle finds "additional information that was not available at the time of the most recent . . . study." Cal. Pub. Res. Code § 42355.51(d)(1)(B)(iii). Indeed, since publishing the first Material Characterization Study on April 4, 2025, CalRecycle has updated its findings two more times in less than nine months.

106. A product that consumers have long associated with a chasing arrows symbol could be stripped of that cue upon CalRecycle's publication of a new Material Characterization Study or updated findings. Consumers who encounter different labeling over time for the same product—despite no change in the material or form—are left uncertain about what "recyclable" means and whether prior disposal instructions remain accurate. As a result, consumer confidence in recyclability messaging is undermined, and with it their willingness to invest the time necessary to participate in the circular economy.

107. When a product's ability to bear recyclability labeling depends not on its material composition but on shifting statewide metrics beyond any individual company's control (or even knowledge), speech becomes contingent and fragile. In this environment, businesses must anticipate not only how those metrics will change, but how they will be interpreted and enforced as well. This creates a situation that is fraught with uncertainty, especially when businesses face the risk of lawsuits and possibly criminal enforcement over allegedly improper recyclability labeling. Some businesses

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

will defensively withdraw all recyclability claims, while others will proceed cautiously by labeling just a select number of eligible recyclable products. The outcome is fragmented and inconsistent recyclability messaging across identical materials, which fuels consumer confusion and hinders California's public policy behind recycling initiatives.

108. Thus, while California may have an interest in providing consumers with accurate information and alleviating confusion "related to how to properly handle the end of life of a product or packaging," Cal. Pub. Res. Code § 42355, the law is certainly not narrowly tailored to that interest.

109. SB 343 also fails strict scrutiny because it is not "the least restrictive means" of achieving California's interest. *See McCullen v. Coakley*, 573 U.S. 464, 478 (2014). To address consumer confusion and improve recycling rates, California could have chosen from any number of less restrictive means than a categorical prohibition on recyclability claims.

110. For instance, the State could have allowed qualified statements about a product's recyclability in certain jurisdictions or additional language advising consumers to consult local recycling guidelines or to recycle the item through a take-back program, much as the FTC Green Guides instruct. The State could even have required clarifying disclosures rather than banning recyclability statements altogether.

111. The State could have also elected to focus on enforcement of existing laws prohibiting false or misleading advertising on a case-by-case basis, targeting demonstrably deceptive claims without suppressing truthful speech.

112. Undertaking public education campaigns to improve consumer understanding of California's recycling systems is yet another alternative available to the State that does not suppress speech. Such campaigns would help consumers learn whether a product is recyclable without imposing such a broad restriction on speech.

113. For these reasons, SB 343 fails strict scrutiny.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

**B.    SB 343 Is an Unlawful Restriction of Commercial Speech.**

114.    If SB 343 were analyzed under the framework applicable to restrictions on commercial speech, rather than as a content-based restriction on speech, such that the standard of review is intermediate scrutiny, the law still violates the First Amendment.

115.    Commercial speech is entitled to First Amendment protection. *Virginia State Bd. Of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748 (1976). This protection stems from the understanding that the "free flow of commercial information is indispensable . . . to the formation of intelligent opinions as to how [the free enterprise] system ought to be regulated." *Id.* at 765. Thus, "even speech that does no more than propose a commercial transaction is protected by the First Amendment." *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 421 (1993) (citation omitted).

116.    In assessing the constitutionality of commercial speech restrictions, courts apply a four-part analysis, which the Supreme Court first articulated in *Central Hudson Gas & Electric Corp. v. Public Service Commission*, 447 U.S. 557, 566 (1980). Under this test, a restraint on commercial speech that is neither misleading nor related to unlawful activity is subject to an intermediate level of scrutiny, and the restriction is permitted only when it "directly advances" a "substantial" governmental interest and is "not more extensive than is necessary to serve that interest." *Id.*

117.    SB 343 is an unconstitutional restriction on commercial speech under *Central Hudson*.

118.    The law's restriction on speech does not concern unlawful activity. The speech at issue does not propose unlawful activity, nor does any law prohibit recycling of products or packaging covered under SB 343.

119.    The law does not regulate misleading speech either, contrary to the built-in premise that any recyclability statement is automatically deemed "deceptive or misleading" unless the product or packaging meets the State's complex, rigid, and unverifiable criteria.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

120. In defining the commercial speech doctrine, the U.S. Supreme Court distinguishes between "inherently misleading" speech and "potentially misleading" speech. *Am. Academy of Pain Mgmt. v. Joseph*, 353 F.3d 1099, 110-07 (9th Cir. 2004) (citing *In re R.M.J.*, 455 U.S. 191, 202-03 (1982)). When the speech is "inherently likely to deceive or where the record indicates that a particular form or method of advertising has in fact been deceptive," it enjoys no First Amendment protection. *Id.* at 1007 (quoting *R.M.J.*, 455 U.S. at 202-03). But if the speech is only potentially misleading— that is, "if the information also may be presented in a way that is not deceptive"—the speech regulation must satisfy the three remaining *Central Hudson* factors. *Id.* (quoting *R.M.J.*, 455 U.S. at 203).

121. Recyclability claims for products that do not meet the 60/60 threshold or other criteria imposed by the State are not inherently misleading. In jurisdictions where consumers have access to recycling facilities, statements subject to SB 343 accurately inform the consumer that the product is recyclable. Meanwhile, in locales with less recycling infrastructure, use of the same terms could be misleading. As a result, use of the regulated terms is only potentially misleading.

122. Take the current state of "Non-CRV Gable-top Cartons," for example. These are the classic cartons with pointy, peaked tops, often used to contain milk or juice, which are not subject to the State's "California Redemption Value" deposit program. Seventy-four percent of California's population has access to curbside recycling programs that collect Non-CRV Gable-top Cartons. 2025 MCS at 20. Gable-top Cartons are sorted by LVTP facilities in 53 percent of counties. December MCS Update Letter at 2. Based on CalRecycle's studies, therefore, these cartons are collected and sorted for recycling in a majority of the state according to the parameters of SB 343. Claiming that they are recyclable in any of these municipalities would "accurately inform the consumer" that the product is recyclable. Such a claim is therefore only potentially misleading because it may be made in an area where Gable-top Cartons are not sorted at that time, though they may be sorted in those areas in the near future.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

123.   At worst, SB 343 regulates speech that is only *potentially* misleading. All of the identifiable materials surveyed by CalRecycle in the Material Characterization Study are collected in curbside recycling programs. 2025 MCS at 19-24. The majority of these materials are sorted for recycling by LVTP facilities. *Id.* at 25-29. However, the law prohibits *any form* of recyclability claim for any material that does not meet each requirement of the law. This prohibition precludes any sort of disclaimer that would indicate that the product is recyclable depending on the jurisdiction. For example, the law arguably may prevent businesses from using How2Recycle labels. *See* How2Recycle, A Smarter Labeling System https://how2recycle.info/. These labels help the consumer understand that a product may not be recyclable in their jurisdiction while providing them with information like the product material and a website to learn more about their jurisdiction's recycling rules. These labels are perfectly accurate statements of a material's recyclability, even for materials that do not meet the 60/60 threshold or other criteria required by SB 343.

124.   Accordingly, because the term "recyclable" and related terms are at worst "merely potentially misleading," intermediate scrutiny is appropriate.[3] *See Am. Academy of Pain Mgmt.*, 353 F.3d at 1108. "[W]here, as with the blanket ban involved here, truthful and nonmisleading expression will be snared along with . . . deceptive commercial speech, the State must satisfy the remainder of the *Central Hudson* test." *Edenfield v. Fane*, 507 U.S. 761, 768-69 (1993).

125.   Although California identified a substantial government interest when passing SB 343, the law fails the remaining two prongs of *Central Hudson*. "California's burden under this test is heavy, . . . and the Attorney General cannot satisfy it by mere speculation or conjecture." *Italian Colors Rest. v. Becerra*, 878 F.3d 1165, 1176 (9th Cir. 2018) (citation modified). Defendant "must demonstrate that the harms [he] recites

---

[3] Plaintiffs contend that SB 343 is a content-based restriction on commercial speech and thus subject to heightened scrutiny. If the Court decides that SB 343 is content-neutral, then Plaintiffs contend in the alternative that the Court should apply intermediate scrutiny, which SB 343 would fail.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

are real and that [the speech] restriction will in fact alleviate them to a material degree." *Id.* at 1177 (quoting *Edenfield*, 507 U.S. at 770-71).

126.   Under the first *Central Hudson* factor, as shown by the examples above, SB 343 does not directly advance California's interest in providing consumers with "accurate and useful information related to how to properly handle the end of life of a product or packaging." *See* Cal. Pub. Res. Code § 42355.5. At best, the law provides "only ineffective or remote support" for the State's objective. *Central Hudson*, 447 U.S. at 564. It will often result in consumers having less accurate and useful information. Thus, it does not "directly advance the state interest involved." *Id.*

127.   Nor does the law directly or materially improve landfill diversion. Because recycling requires informed consumer participation, SB 343's erasure of familiar recycling guidance from large swaths of packaging cannot logically increase the rate at which material is diverted from landfills. To the contrary, the law only increases the risk that recyclable materials will be discarded as waste, where they will be "landfilled, incinerated, or dumped into the environment." Senate Comm. on Env't Quality, *SB 343 Analysis*, Reg. Sess., at 6 (Cal. 2021-2022), available https://senv.senate.ca.gov/sites/senv.senate.ca.gov/files/sb343_pca_v3.pdf.

128.   Similarly, non-curbside recycling programs will face diminishing recycling rates. Materials collected through non-curbside programs—such as take-back and store drop-off programs—are not considered recyclable unless 60 percent of the relevant product is collected by the program. Cal. Pub. Res. Code § 42355.51(d)(5)(A). This threshold jumps to 75 percent after January 1, 2030. *Id.* § 42355.51(d)(5)(B). Non-curbside programs fill notable gaps in curbside recycling programs, even when these programs do not collect and sort covered materials above the legally mandated threshold. But because of SB 343, many non-curbside programs will no longer be able to communicate to consumers that covered products are recyclable. This precludes a statement like "Store Drop-off" accompanied by a chasing arrows symbol. This in turn will suppress consumer participation in non-curbside programs and reduce recycling

- 40 -

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

rates, contrary to the goals of the law. In more practical terms, it will become virtually impossible for these items to reach the 60 percent threshold, let alone the 75 percent threshold, if businesses must initially remove all "recyclable" claims and recycling instructions.

129. And under the second *Central Hudson* factor, the law is "more extensive than is necessary to serve [California's] interest." *Italian Colors*, 878 F.3d at 1176. Proof of this is in the availability of "numerous and obvious less-burdensome alternatives" to the law's categorical ban on speech, *id.* at 1178, including allowing qualified statements, requiring certain disclosures, and carrying out a government-funded public awareness campaign. The availability of these options "renders [the] speech restriction overinclusive," and thus more extensive than necessary. *Valle Del Sol Inc. v. Whiting*, 709 F.3d 808, 825 (9th Cir. 2013). After all, "restricting speech should be the government's tool of last resort." *Id.* at 826. If the State can achieve its interests "in a manner that does not restrict speech, or that restricts less speech, [it] must do so." *Thompson v. W. States Med. Ctr.*, 535 U.S. 357, 371 (2002) (citation omitted).

130. For these reasons, SB 343 fails intermediate scrutiny.

**C.    SB 343 Is Void for Vagueness.**

131. The Due Process Clause of the Fourteenth Amendment "requires the invalidation of laws that are impermissibly vague." *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012). A law is vague if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *U.S. v. Williams*, 553 U.S. 285, 304 (2008) (citation omitted).

132. When speech is concerned, "rigorous adherence" to vagueness principles "is necessary to ensure that ambiguity does not chill protected speech." *Fox Television*, 567 U.S. at 253-54.

133. The definition of "recyclable" as set out in the law is unconstitutionally vague.

- 41 -

134.   A material is only recyclable if it meets the 60/60 threshold and "is of a material type and form that routinely becomes feedstock used in the production of new products or packaging." Cal. Pub. Res. Code § 42355.51(b). To identify what materials are routinely used in new products and packaging, the law requires CalRecycle to promulgate regulations to gather data about materials that are collected and recovered. *Id.* § 42355.51(d)(1)(A). The data is publicly available in the Recycling and Disposal Reports. The law also requires CalRecycle to undertake the Material Characterization Study to achieve this goal. *Id.* § 42355.51(d)(1)(B). However, the required regulations only gather data on how much feedstock is sent to end-users, but provide no information on whether the feedstock is used to produce new products or packaging. *See, e.g.*, Cal. Code. Regs. tit. 14, § 18815.7. They also do not gather data on alternative collection systems. Similarly, the Characterization Study does not provide data on what happens to materials after they are sorted at LVTP facilities. *See* 2025 MCS at 2 ("[This report] does not provide information on the destination or ultimate disposition of materials sorted and sold by LVTP facilities."). Without this information, businesses have no way of knowing what materials "routinely become[] feedstock used in the production of new products or packaging." They are given an incomplete set of data and left to guess at what is missing in hopes of complying with the law.

135.   SB 343's prohibition on recyclability claims unless the material meets the Basel Convention criterion in section 42355.51(d)(2)(B)(i) of the Public Resources Code is also unconstitutionally vague. This criterion requires the product or packaging be "sent to and reclaimed at a reclaiming facility consistent with the requirements of the Basel Convention." Cal. Pub. Res. Code § 42355.51(d)(2)(B) ("Basel Criterion").

136.   However, neither the law's text nor subsequent implementing regulations explain what it means to be "consistent with" the Basel Convention, the requirements of which are embedded in a highly complex and evolving body of international law—one that does not even apply to the United States, which has not ratified the Basel

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Convention.[4]

137. CalRecycle's latest Material Characterization Study "does not provide information on the destination or ultimate disposition of materials sorted and sold by LVTP facilities," as needed for the Basel Criterion. *See* 2025 MCS at 2. Indeed, the study expressly states that, because it "does not provide information regarding [the Basel Criterion], it does not contain all the information necessary to determine the recyclability status for any particular product or packaging." *Id.* at 3. "To make such a determination," the State tells regulated businesses, "entities will require additional information." *Id.* Precisely what additional information is needed and how businesses can obtain it is left a mystery.

138. CalRecycle again acknowledged the lack of information about the Basel Convention and end markets in an FAQ released in 2025. CalRecycle, SB 343: Frequently Asked Questions, at 4 (August 2025) ("SB 343 FAQ"), available https://calrecycle.ca.gov/wcs/recyclinglabels/. The FAQ promises that CalRecycle "will publish additional information when sufficient data relevant to characterizing the ultimate destination of different material types and forms becomes available." CalRecycle admits that it does not have this information. If CalRecycle, with the resources of the State of California, does not know, businesses cannot be expected to learn this information, let alone comply with the requirements under SB 343 regarding the Basel Convention and end markets.

139. SB 343 dictates assessments of recyclability based on a product or packaging's "material type and form," yet not all materials fall neatly within a specific material type and form. CalRecycle created a list of material types and forms that categorizes materials by class, code, name, definition, and examples of products or

---

[4] According to the U.S. State Department: "The United States signed the Basel Convention in 1990. The U.S. Senate provided its advice and consent to ratification in 1992. The United States, however, has not ratified the Convention because it does not have sufficient domestic statutory authority to implement all of its provisions." U.S. Dep't of State, Basel Convention on Hazardous Wastes, https://www.state.gov/key-topics-office-of-environmental-quality-and-transboundary-issues/basel-convention-on-hazardous-wastes.

- 43 -

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

packaging that ostensibly fit that type and form. CalRecycle, SB 343 Material Characterization Study Final Findings – 2023/2024 Appendix 1 – Methodological Details & Data Tables, 42 (2025) (the "2025 MCS Appendix"), available https://www2.calrecycle.ca.gov/Docs/Publications/Details/1751. However, not all materials cleanly fit within these categories. A material may fit the description of one material type and form, but better align with the example provided for a separate material type and form. Other material type and form categories include undefined terms or are defined according to how the product is used. For example, the 2025 MCS Appendix explains that the category Aluminum Foil Molded Containers includes "molded trays that are relatively free of food and other contamination." *Id.* at 51. But SB 343 does not define the phrase "relatively free of food and other contamination." *Id.* This explanation also hinges the categorization of the material on how the product is handled by the consumer, which is outside of the control of any business. A business, having no way of determining the correct material type and form, must instead guess or, more likely, avoid the risk of claiming the product or packaging is recyclable.

140. Additionally, many materials are defined by size, but the law offers inconsistent standards by which to measure materials. CalRecycle "recommends that manufacturers consider industry standards when determining the appropriate material type and form, including the Association of Plastic Recyclers [APR] Design Guide's 'Evaluation of the Size Sorting Potential for Articles with at Least 2 Dimensions Less than 2 Inches.'" SB 343 FAQ at 4. However, certain material categories are defined by size apart from the APR guidelines. If a product is too small for sorting according to the definitions in the 2025 MCS Appendix, but is sortable according to the APR guidelines, it is unclear whether the product may be considered sortable. For example, "Remainder/Composite Plastic" is a defined material type and form that "[i]ncludes plastic fragments smaller than two inches if easily identifiable as plastic." 2025 MCS Appendix at 84. If a plastic product is smaller than two inches but is sortable according to the guidelines, it is unclear whether the product may be considered in a category other

- 44 -

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

than Remainder/Composite Plastic. Remainder/Composite Plastic does not meet the 60/60 threshold, and so is not considered recyclable under SB 343. 2025 MCS at 23, 28. This categorization can thus be determinative of whether a product is recyclable. Once again, businesses are forced to choose between communicating recyclability to consumers, or otherwise guessing and risking litigation. Fundamentally, businesses are left to guess at how to comply with this provision of SB 343.

141. Finally, businesses that use non-plastic products and packaging have no way to know what components would prevent recyclability of a product. SB 343 requires that "[f]or plastic products and non-plastic products and packaging, the product or packaging is designed to ensure recyclability and does not include any components, inks, adhesives, or labels that prevent the recyclability of the product or packaging." Cal. Pub. Res. Code § 42355.51(d)(3)(B). The law separately clarifies that plastic packaging should be designed "according to the APR Design® Guide published by the Association of Plastic Recyclers." *Id.* § 42355.51(d)(3)(A). However, the law omits any practicable standard businesses can follow in designing recyclable plastic products and non-plastic products and packaging. This information is also not accessible to businesses; whether a component renders a product non-recyclable is determined at individual facilities that collect, sort, and transfer materials. Once again, businesses are forced to choose between communicating recyclability to consumers, or otherwise guessing and risking litigation.

142. Without this information, businesses have no notice of what materials are recyclable under the law. Without this information, businesses are left to guess whether their recyclable packaging that bears a chasing arrows symbol will invite lawsuits. This is the hallmark of an unconstitutionally vague law. *Fox Television*, 567 U.S. at 253-54.

143. Given the civil and criminal punishments businesses face for guessing wrong, many of them will have no option but to scrub their products of any hint of recyclability messaging and stay silent, even if the products are in fact recyclable. This is exactly the chilling effect that the vagueness doctrine seeks to avoid. It also shows, in stark relief, how SB 343 does not further its own stated goals.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

144.   Commercial speakers "cannot be made to wait" in limbo "before being able to speak with a measure of security." *Riley v. Nat'l Fed. of the Blind of N.C., Inc.,* 487 U.S. 781, 793-94 (1988). With each enforcement action against a business that ventured to truthfully inform its customers that their product can be recycled, they "must bear the costs of litigation and the risk of a mistaken adverse finding . . . even if the [business] . . . believe[s] that the [product] was in fact [recyclable]." *See id.* Not only does "[t]his scheme [] necessarily chill speech in direct contravention of the First Amendment's dictates," it is also unconstitutional under the Due Process Clause of the Fourteenth Amendment. *Id.*

## CLAIMS FOR RELIEF

### COUNT I
### Violation of the First Amendment — 28 U.S.C. § 2201

145.   The foregoing Paragraphs are incorporated by reference as if set forth in full herein.

146.   The Free Speech Clause of the First Amendment to the United States Constitution provides that "Congress shall make no law . . . abridging the freedom of speech." U.S. Const. amend. I. The Fourteenth Amendment to the United States Constitution made this proscription applicable to the States and their political subdivisions. *See id.* amend. XIV, § 1.

147.   SB 343's restrictions on speech violate the Free Speech Clause of the First Amendment to the United States Constitution.

148.   Plaintiffs and their members include businesses that have already been harmed by SB 343's looming, unconstitutional restrictions on speech and will be further injured when they come into effect on October 4, 2026, if forced to comply with these restrictions or to defend themselves in actions to enforce SB 343's restrictions on speech.

149.   An actual controversy exists between Plaintiffs and Defendant over the constitutionality of SB 343's restrictions on speech.

150.   Plaintiffs, their members, and all persons they represent therefore are

- 46 -

entitled to a declaration of their rights, to wit, that SB 343's restrictions on speech are unconstitutional and unenforceable.

## COUNT II
### Violation of the First Amendment — 42 U.S.C. § 1983

151. The foregoing Paragraphs are incorporated by reference as if set forth in full herein.

152. Section 1983 of Title 42, U.S. Code, provides in relevant part that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceed for redress . . . ."

153. Plaintiffs and their members are persons within the meaning of 42 U.S.C. § 1983 and have a right to free speech under the First Amendment to the United States Constitution, as applicable to the States and their political subdivisions through the Fourteenth Amendment to the United States Constitution.

154. Defendant and his officers, employees, or agents, and all those in privity with and/or acting in concert with those entities or individuals are authorized to enforce Public Resources Code sections 18015(d) and 42355.51 either directly or under Business & Professions Code section 17200, *et seq.*, and do so under color of state law.

155. Plaintiffs and their members include businesses that have already been harmed by SB 343's looming, unconstitutional restrictions on speech and will be further injured when they come into effect on October 4, 2026, if forced to comply with these restrictions or to defend themselves in actions to enforce SB 343's restrictions on speech.

156. Defendant and his officers, employees, or agents, and all those in privity with and/or acting in concert with those entities or individuals are therefore liable to Plaintiffs, their members, and all persons they represent. An order enjoining enforcement

of SB 343 would redress the harms described above to Plaintiffs, their members, and all persons they represent.

## COUNT III
### Void for Vagueness Under the Fourteenth Amendment — 28 U.S.C. § 2201

157. The foregoing Paragraphs are incorporated by reference as if set forth in full herein.

158. The Due Process Clause of the Fourteenth Amendment of the United States Constitution provides that no State shall "deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV, § 1.

159. SB 343's restrictions on speech violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

160. Plaintiffs, their members, and all persons they represent include businesses that have already been harmed by SB 343's looming, unconstitutional restrictions on speech and will be further injured when they come into effect on October 4, 2026, if forced to comply with these restrictions or to defend themselves in actions to enforce SB 343's restrictions on speech.

161. An actual controversy exists between Plaintiffs, their members, and all persons they represent, on the one hand, and Defendant, on the other hand, over the constitutionality of SB 343's restrictions on speech.

162. Plaintiffs, their members, and all those they represent therefore are entitled to a declaration of their rights, to wit, that SB 343's restrictions on speech are unconstitutional and unenforceable.

## COUNT IV
### Void for Vagueness Under the Fourteenth Amendment — 42 U.S.C. § 1983

163. The foregoing Paragraphs are incorporated by reference as if set forth in full herein.

164. 42 U.S.C. § 1983 provides in relevant part that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or

the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ."

165.    Plaintiffs, their members, and all those they represent are persons within the meaning of 42 U.S.C. § 1983 and have a right to due process under the Fourteenth Amendment to the United States Constitution.

166.    Defendant and his officers, employees, or agents, and all those in privity with and/or acting in concert with those entities or individuals are authorized to enforce Public Resources Code sections 18015(d) and 42355.51 either directly or under Business & Professions Code section 17200, *et seq.*, and do so under color of state law.

167.    Plaintiffs, their members, and all persons they represent include businesses that have already been harmed by SB 343's looming, unconstitutional restrictions on speech and will be further injured when they come into effect on October 4, 2026, if forced to comply with these restrictions or to defend themselves in actions to enforce SB 343's restrictions on speech.

168.    Defendant and his officers, employees, or agents, and all those in privity with and/or acting in concert with those entities or individuals are therefore liable to Plaintiffs, their members, and all persons they represent. An order enjoining enforcement of SB 343 would redress the harms to Plaintiffs and their members described above.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment against Defendant as follows:

1.    A declaration, pursuant to 28 U.S.C. § 2201 and/or 42 U.S.C. § 1983, in favor of Plaintiffs, their members, and all persons they represent, that the speech restrictions set forth in Public Resources Code sections 18015(d) and 42355.51 violate the First and Fourteenth Amendments of the United States Constitution, both facially

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

and as applied;

2.    Prospective preliminary and permanent injunctions, pursuant to 42 U.S.C. § 1983 and other applicable law, in favor of Plaintiffs, their members, and all persons they represent, prohibiting Defendant or any of his officers, employees, or agents, and all those in privity with and/or acting in concert with those entities or individuals, from enforcing or threatening to enforce the prohibition on communicating the recyclability of a product or packaging under California Public Resources Code sections 18015(d) and 42355.51;

3.    An award of all costs, attorney's fees, and expenses that Plaintiffs reasonably incur, *see, e.g.*, 42 U.S.C. § 1988; and

4.    An award of such other and further relief as this Court deems just and proper.

Dated: March 17, 2026

Respectfully submitted,

By: */s/ Trenton H. Norris*
Trenton H. Norris (CA Bar No. 164781)
Alexander Tablan (CA Bar No. 346309)
Andrew Muse-Fisher (CA Bar No. 364086)
HOGAN LOVELLS US LLP
Four Embarcadero Center, 35th Floor
San Francisco, CA 94111
Tel: (415) 374-2300
trent.norris@hoganlovells.com

*Attorneys for Plaintiffs*
California League of Food Producers
American Forest & Paper Association
California Apple Commission
California Blueberry Commission
California Grocers Association
California Restaurant Association
California Strawberry Commission
California Table Grape Commission
California Walnut Commission
Californians for Affordable Packaging
Dairy Institute of California

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Flexible Packaging Association
Grower Shipper Association of Central California
Olive Oil Commission of California
Pet Food Institute
Print Creative Alliance
SNAC International
Western Growers Association

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF