Trenton H. Norris (CA Bar No. 164781)
trent.norris@hoganlovells.com
Alexander Tablan (CA Bar No. 346309)
alexander.tablan@hoganlovells.com
Andrew Muse-Fisher (CA Bar No. 364086)
andrew.muse-fisher@hoganlovells.com
HOGAN LOVELLS US LLP
Four Embarcadero Center, 35th Floor
San Francisco, CA 94111-4024
Telephone:  415.374.2300
Facsimile:   415.374.2499

Attorneys for Plaintiffs listed in caption

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

CALIFORNIA LEAGUE OF FOOD PRODUCERS, AMERICAN FOREST & PAPER ASSOCIATION, CALIFORNIA APPLE COMMISSION, CALIFORNIA BLUEBERRY COMMISSION, CALIFORNIA GROCERS ASSOCIATION, CALIFORNIA RESTAURANT ASSOCIATION, CALIFORNIA RETAILERS ASSOCIATION, CALIFORNIA STRAWBERRY COMMISSION, CALIFORNIA TABLE GRAPE COMMISSION, CALIFORNIA WALNUT COMMISSION, CALIFORNIANS FOR AFFORDABLE PACKAGING, CONSUMER BRANDS ASSOCIATION, DAIRY INSTITUTE OF CALIFORNIA, FLEXIBLE PACKAGING ASSOCIATION, GROWER SHIPPER ASSOCIATION OF CENTRAL CALIFORNIA, OLIVE OIL COMMISSION OF CALIFORNIA, PERSONAL CARE PRODUCTS COUNCIL, PET FOOD INSTITUTE, PRINT CREATIVE ALLIANCE, SNAC INTERNATIONAL, and WESTERN GROWERS ASSOCIATION,

Plaintiffs,

v.

ROB BONTA, IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL OF THE STATE OF CALIFORNIA,

Defendant.

Case No. 26-cv-01675-WQH-BLM

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

Judge: Hon. William Q. Hayes
Action Filed: March 17, 2026
Trial Date: Not Set
Hearing: June 1, 2026

---

# TABLE OF CONTENTS

                                                                                       **Page**

I.      INTRODUCTION...........................................................................................1

II.     BACKGROUND..............................................................................................2

        A.      The Recyclability Criteria Under SB 343 ............................................2

        B.      Criminal and Civil Penalties Under SB 343's Strict Liability
                Regime ..................................................................................................2

        C.      Current and Imminent Enforcement of SB 343 ...................................4

        D.      California's Previous Attempt to Ban Recyclability Claims ...............4

III.    STANDING ...................................................................................................7

IV.     ARGUMENT ................................................................................................8

        A.      Plaintiffs Are Likely to Succeed on the Merits Because SB
                343 Is Unconstitutionally Vague...........................................................8

                1.      *Businesses Cannot Know Whether a Material
                        "Routinely Becomes Feedstock Used in the Production
                        of New Products or Packaging."* ..............................................10

                2.      *The Basel Convention Criterion Gives Businesses No
                        Way to Know Whether their Speech is Lawful.* .......................11

                3.      *The APR Design Guide Criterion Leaves Speakers
                        Guessing.* .................................................................................12

                4.      *Whether Design Ensures or Prevents Recyclability is
                        Unknown.* .................................................................................14

        B.      Plaintiffs Are Likely to Succeed on the Merits Because the
                State Cannot Establish that SB 343 Passes Intermediate
                Scrutiny. ..............................................................................................16

                1.      *Plaintiffs' Speech Is Not Inherently Misleading.* ....................17

                2.      *SB 343 Does Not Directly Advance California's
                        Asserted Interests.* ....................................................................18

                        a.      What Chasing Arrow Symbols and the Like
                                Communicate..................................................................18

                        b.      SB 343 Suppresses All Recyclability Labeling,
                                Accurate or Not. ............................................................19

                        c.      SB 343 Spawns Confusion and Undermines
                                Recycling Rates. ............................................................20

- i -

3.    SB 343 is More Extensive Than Necessary............................22

C.    Plaintiffs' Members Will Be Irreparably Harmed Without a Preliminary Injunction, and the Remaining Equitable Factors Weigh in Plaintiffs' Favor..............................................................25

V.    CONCLUSION ...................................................................................25

MPA IN SUPPORT OF PLAINTIFFS' MOT. FOR PRELIM. INJ.    26cv01675

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*44 Liquormart, Inc. v. Rhode Island*,
 517 U.S. 484 (1996)................................................................................6, 22, 24

*All. for the Wild Rockies v. Cottrell*,
 632 F.3d 1127 (9th Cir. 2011) .......................................................................8, 10

*Am. Acad. of Pain Mgmt. v. Joseph*,
 353 F.3d 1099 (9th Cir. 2004) ............................................................................17

*Am. Bankers Ass'n v. Lockyer*,
 239 F. Supp. 2d 1000 (E.D. Cal. 2002) ..............................................................16

*Ass'n of Nat'l Advertisers, Inc. v. Lungren*,
 44 F.3d 726 (9th Cir. 1994), *aff'g* 809 F.Supp.747 (N.D. Cal. 1992).........*passim*

*Assoc. Gen. Contractors of Am. v. Cal. Dep't of Transp.*,
 713 F.3d 1187 (9th Cir. 2013) ..............................................................................7

*Bd. of Nat. Res. of Wash. v. Brown*,
 992 F.2d 937 (9th Cir. 1993) ..............................................................................16

*Cal. Teachers Ass'n v. State Bd. of Educ.*,
 271 F.3d 1141 (9th Cir. 2001) ...........................................................9, 10, 14, 15

*Cal-Almond, Inc. v. U.S. Dep't of Ag.*,
 14 F.3d 429 (9th Cir. 1993) ................................................................................18

*Carter v. Carter Coal Co.*,
 298 U.S. 238 (1936)............................................................................................13

*Cent. Hudson Gas & Elec. v. Pub. Serv. Comm'n of N.Y.*,
 447 U.S. 556 (1980)......................................................................................*passim*

*Cuviello v. City of Vallejo*,
 944 F.3d 816 (9th Cir. 2019) ..............................................................................25

*Doe v. Harris*,
 772 F.3d 563 (9th Cir. 2014) ................................................................................8

- iii -

*F.C.C. v. Fox Television Stations, Inc.*,
567 U.S. 239 (2012)..................................................................9, 12, 15

*Free Speech Coalition v. Reno*,
198 F.3d 1083 (9th Cir. 1999) ...............................................10, 11, 15

*Fresenius Med. Care Orange Cnty. v. Bonta*,
2026 WL 934331 (9th Cir. Apr. 7, 2026)..........................................15

*Greater New Orleans Broad. Ass'n, Inc. v. United States*,
527 U.S. 173 (1999)...........................................................................6, 18

*Hubbard v. City of San Diego*,
139 F.4th 843 (9th Cir. 2025)...................................................8, 16, 25

*Ibanez v. Fla. Dep't Bus. & Prof. Reg.*,
512 U.S. 136 (1994)..............................................................................16

*Int'l Dairy Foods Ass'n v. Boggs*,
622 F.3d 628 (6th Cir. 2010) ..............................................................24

*Italian Colors Restaurant v. Becerra*,
878 F.3d 1165 (9th Cir. 2018) .......................................................*passim*

*Johnson v. United States*,
576 U.S. 591 (2015)..............................................................................11

*Junior Sports Magazines Inc. v. Bonta*,
80 F.4th 1109 (9th Cir. 2023) .................................................16, 18, 19

*Lever Brothers Co. v. Maurer*,
712 F. Supp. 645 (S.D. Ohio 1989) ...................................................21

*M.S. v. Brown*,
902 F.3d 1076 (9th Cir. 2018) ..............................................................8

*Minority Television Project, Inc. v. F.C.C.*,
736 F.3d 1192 (9th Cir. 2013) ..............................................................9

*Miyoko's Kitchen v. Ross*,
2020 WL 8361994 (N.D. Cal. Aug. 21, 2020) .................................17

*NetChoice, LLC v. Bonta*,
170 F.4th 744 (9th Cir. 2026).......................................................12, 15

MPA IN SUPPORT OF PLAINTIFFS' MOT. FOR PRELIM. INJ.       26cv01675

*Ocheesee Creamery LLC v. Putnam,*
   851 F.3d 1228 (11th Cir. 2017) ............................................................17, 22, 23

*Peel v. Att'y Registration & Disciplinary Comm'n,*
   496 U.S. 91 (1990).............................................................................24, 25

*Posadas de Puerto Rico Assocs. v. Tourism Co.,*
   478 U.S. 328 (1986)..................................................................................6, 7

*Project 80's, Inc. v. City of Pocatello,*
   942 F.2d 635 (9th Cir. 1991) ......................................................................22

*In re R.M.J.,*
   455 U.S. 191 (1982)............................................................................17, 24

*In re Reyes,*
   910 F.2d 611 (9th Cir. 1990) .......................................................................16

*Riley v. Nat'l Fed'n of the Blind of N.C., Inc.,*
   487 U.S. 781 (1988)..................................................................................24

*Rubin v. Coors Brewing Co.,*
   514 U.S. 476 (1995)..................................................................................24

*Thompson v. W. States Med. Ctr.,*
   535 U.S. 357 (2002)..................................................................................22

*Turtle Island Foods SPC v. Soman,*
   424 F. Supp. 3d 552 (E.D. Ark. 2019) .......................................................23, 24

*United States v. Hall,*
   912 F.3d 1224 (9th Cir. 2019) ......................................................................11

*Valley Broad. Co. v. United States,*
   107 F.3d 1328 (9th Cir. 1997) ........................................................................6

*Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.,*
   455 U.S. 489 (1982)....................................................................................9

*W. States Med. Ctr. v. Shalala,*
   238 F.3d 1090 (9th Cir. 2001) ......................................................................17

*Wash. Mercantile Ass'n v. Williams,*
   733 F.2d 687 (9th Cir. 1984) ..........................................................................9

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008)......................................................................................................8

*Wolfson v. Brammer*,
    616 F.3d 1045 (9th Cir. 2010) ................................................................................8

*Yim v. City of Seattle*,
    63 F.4th 783 (9th Cir. 2023) ..................................................................................23

**Statutes**

Cal. Bus. & Prof. Code § 17203 ...............................................................................3

Cal. Bus. & Prof. Code § 17206 ...............................................................................3

Cal. Bus. & Prof. Code § 17500 ...............................................................................3

Cal. Bus. & Prof. Code § 17535 ...............................................................................3

Cal. Bus. & Prof. Code § 17580.5 ............................................................................2

Cal. Bus. & Prof. Code § 17581 ...............................................................................3

Cal. Civ. Code § 1770................................................................................................3

Cal. Civ. Code § 1780................................................................................................3

Cal. Pub. Res. Code §§ 42355.51 *et seq* ..........................................................*passim*

Cal. Pub. Res. Code § 42358 ....................................................................................3

**Other Authorities**

16 C.F.R. § 260.12(b)(2)............................................................................................4

MPA IN SUPPORT OF PLAINTIFFS' MOT. FOR PRELIM. INJ.    26cv01675

## I.    **INTRODUCTION**

Recycling depends on informed consumers. A consumer who does not know that a package can be recycled will not recycle it—she will throw it away. For decades, the familiar chasing arrows symbol and the word "recyclable" on product packaging have served as the essential cue that connects a consumer's individual disposal decision to the broader recycling system. SB 343 bans that cue—and other truthful speech.

Beginning October 4, 2026, California will make it a crime for businesses to display that symbol, use that word, or make any statement "indicating" recyclability unless an unworkable set of statewide criteria are satisfied. The law does not merely prohibit false or misleading claims. It prohibits accurate ones too. A company whose packaging is widely accepted by curbside programs may not tell its customers to recycle it simply because statewide sorting thresholds are not met. A business cannot make a qualified statement, like "Recyclable where facilities exist – check locally," even where that statement is accurate, because SB 343 permits no middle ground: either a product meets every one of the State's rigid criteria, or any mention of recyclability is deemed a crime. The criteria forming this sweeping ban are so vague that even the state agency charged with implementing the law has admitted it cannot tell businesses whether their products comply. The result will be less information in the marketplace, less recycling, and more waste in California's landfills. That is not a permissible use of the government's power to regulate speech.

By the time October 4 arrives, it will be too late. Because packaging redesigns require months to years of planning, retooling, and lead time through supply chains, Plaintiffs' members are being forced to make expensive and significant operational decisions today based on a law that should never take effect. They are having to audit thousands of SKUs against criteria that CalRecycle itself acknowledges it cannot interpret. They are retooling production lines and renegotiating multi-year vendor contracts. Many are already removing accurate recyclability claims from their packaging to avoid criminal prosecution, civil penalties, and the litigation free-for-all engineered

- 1 -

into this law. Every day without relief, another business is forced to make a costly labeling or manufacturing decision to comply with the state's speech restriction. The Court should preliminarily enjoin this law while it considers the merits.

## II.   BACKGROUND

### A.   The Recyclability Criteria Under SB 343

SB 343 provides that "a product or packaging is recyclable" only if it meets all of the following criteria: (1) It "is of a material type and form that routinely becomes feedstock used in the production of new products or packaging," (2) "The material type and form is collected for recycling by recycling programs for jurisdictions that collectively encompass at least 60 percent of the population of the state," (3) "The material type and form is sorted into defined streams for recycling processes by large volume transfer or processing facilities . . . that process materials and collectively serve at least 60 percent of recycling programs statewide, with the defined streams sent to and reclaimed at a reclaiming facility consistent with the requirements of the Basel Convention," and, (4) The product or packaging meets several additional design and composition requirements. Cal. Pub. Res. Code §§ 42355.51(b)(1), (d)(2), (d)(3).

A product that does not meet all of these criteria but that "displays a chasing arrows symbol, a chasing arrows symbol surrounding a resin identification code, or any other symbol or statement indicating the product or packaging is recyclable, or otherwise directing the consumer to recycle the product or packaging" is a "deceptive or misleading claim" under Public Resources Code (PRC) section 42355.51 and Business & Professions Code (BPC) section 17580.5. *See also* FAC ¶¶ 61–64.

### B.   Criminal and Civil Penalties Under SB 343's Strict Liability Regime

Businesses that violate SB 343 face overlapping layers of criminal and civil exposure. SB 343 "expand[s] the scope of an existing crime" under California's Environmental Representations Law, RJN Ex. A, at 2, to expressly encompass recyclability claims, deeming such speech accompanying "any product or packaging" to be a *per se* "deceptive or misleading" claim unless the State's definitional criteria are

- 2 -

satisfied. *See* PRC § 42355.51(a)–(b). A violation is a misdemeanor "punishable by imprisonment" for up to six months, a fine of up to $2,500, or both. BPC § 17581. And because each product sold or imported into California constitutes a separate violation, criminal exposure can compound quickly and even exceed a company's value.

On the civil side, the law provides escalating statutory penalties: $500 for the first violation, $1,000 for the second, and $2,000 for each subsequent violation. PRC § 42358. These penalties are not exclusive; they stack on top of the Unfair Competition Law's separate authorization of civil penalties of up to $2,500 per violation. BPC § 17206. Businesses also face injunctive relief and can be forced to pay restitution under both the UCL and False Advertising Law, even on a class-wide basis. *Id.* §§ 17203, 17535 (authorizing private individuals to pursue representative claims and seek relief on behalf of others). They face even greater liability exposure under the Consumers Legal Remedies Act, which prohibits "unfair or deceptive acts" tied to the sale of goods to consumers. Civ. Code § 1770(a). A prevailing CLRA plaintiff may recover actual and punitive damages and is also entitled to recover her attorney fees. *Id.* § 1780(a), (e).

Imposing overlapping layers of liability for violations of SB 343, no matter the severity or intent, is by design. SB 343's author candidly told the Legislature that "violations of this bill . . . serve as predicate offenses" for the CLRA, FAL, and UCL, enabling "[c]onsumers and public entities [to] thus enforce [its] provisions . . . ." RJN Ex. B, at 19. And in a separate proceeding where Defendant filed briefing to share the State's views on SB 343, he stated that "the express purpose of section 42355.51 is to bolster . . . preexisting laws against deceptive marketing by adding a *per se rule* for applying them." RJN Ex. C, at 26 (emphasis added).

Previously, a plaintiff claiming that a business deceptively labeled its product as recyclable had to establish that the labeling statement was actually misleading or likely to deceive a reasonable consumer—and often had to prove that the defendant knew, or reasonably should have known, that its recyclability statement was untrue or misleading. *See* BPC § 17500. A business could defend against these suits by showing that its

recycling claim conformed to the federal Green Guides, *id.* § 17580.5(b), where qualified recyclability claims are expressly allowed. 16 C.F.R. § 260.12(b)(2).

SB 343 eliminated those hurdles and made it far easier for plaintiffs to initiate litigation. Once it takes effect, any recyclability claim is deemed misleading as a matter of law unless the product satisfies every State criterion in section 42355.51(b)(1) and (d). No proof of actual consumer deception needed. No inquiry into the reasonableness of the claim. No good-faith defense. No safe harbor under the Green Guides. Under this strict liability regime, on October 4, 2026, the litigation floodgates will open.

### C.     Current and Imminent Enforcement of SB 343

Since SB 343 was signed into law, various plaintiffs have filed no fewer than 30 lawsuits in California state and federal court alleging that businesses deceptively labeled their products as recyclable. Norris Decl. ¶ 5; *see also* FAC ¶¶ 88–94. Many of these plaintiffs brought claims under the FAL, UCL, and CLRA without directly citing the provisions of SB 343, the recyclability definition of which takes effect on October 4. But a sizable and growing number of these actions explicitly use an alleged violation of SB 343 as a predicate offense for other statutory claims. Norris Decl. ¶¶ 17–23.

Similarly, Defendant has brought at least three lawsuits on behalf of the State of California, each time citing section 42355.51 in arguing that businesses had falsely claimed their products are recyclable. *Id.* ¶¶ 24–29. Where private individuals have brought these actions, many have continued well past the early pleading stages. *Id.* ¶ 15. As the operative date of SB 343 draws closer, businesses are bracing for the threat of determined plaintiffs who will be armed with another tool to initiate costly litigation and extract settlements from businesses making recyclability claims. *Id.* ¶¶ 15-16, 23, 29.

### D.     California's Previous Attempt to Ban Recyclability Claims

SB 343 is not California's first attempt at redefining words like "recyclable" and then criminalizing commercial speech that uses those terms unless the goods strictly align with the State's preferred definition. In 1990, the Legislature enacted AB 3994, which made it "unlawful for any [business] to represent that any consumer good" that it

- 4 -

MPA IN SUPPORT OF PLAINTIFFS' MOT. FOR PRELIM. INJ.      26cv01675

makes or sells is "ozone friendly," "biodegradable," "photodegradable," "recyclable," or "recycled" unless that product met the respective statutory definition. A coalition of trade associations responded by bringing suit against then-Attorney General Lungren, seeking a declaration that the law "impermissibly restricts both commercial and non-commercial speech and is unconstitutionally vague." *Ass'n of Nat'l Advertisers, Inc. v. Lungren*, 44 F.3d 726, 728 (9th Cir. 1994), *aff'g* 809 F. Supp. 747 (N.D. Cal. 1992). The plaintiffs also sought a permanent injunction against the law's enforcement.

Under AB 3994, "recyclable" was defined as being "conveniently recycled . . . in every county in California with a population over 300,000 persons." The advertisers argued that this definition was unconstitutionally vague. The district court agreed after making two key holdings. First, that plaintiffs' facial vagueness challenge was proper and that it was the court's duty to decide "whether the law affords fair notice to a businessperson of ordinary intelligence as to what conduct is illegal." 809 F. Supp. at 760–61. In deciding that question, the court applied a "more demanding" standard of "certainty" and "[]precision" to the law because it "impose[d] criminal sanctions." *Id.* Second, because the law "offer[ed] no guidance as to what recycling programs satisfy the 'conveniently recycled' requirement," the "constitutional requirement of definiteness ha[d] not been met," and the court struck down the State's definition of "recyclable." *Id.* at 761–62. The State did not contest that ruling. *See* 44 F.3d at 728 n.1.

On appeal, the Ninth Circuit was asked to decide whether the district court had properly applied the four-pronged *Central Hudson* test in holding that AB 3994 withstood intermediate scrutiny. The Ninth Circuit agreed that the regulated terms were only "potentially misleading" and thus constitutionally protected commercial speech. *Id.* at 731–32. It also held that the State's interest in "ensuring truthful environmental advertising and encouraging recycling" was substantial. *Id.* at 732.

As to *Central Hudson*'s third prong, in finding that the law directly advanced the State's interest, the Ninth Circuit declined to require any rigorous evidentiary showing that the statute's definitional mandates actually and materially advanced California's

MPA IN SUPPORT OF PLAINTIFFS' MOT. FOR PRELIM. INJ.    26cv01675

consumer protection and recycling interests. *Id.* at 732–33. Instead, relying on *Posadas de Puerto Rico Assocs. v. Tourism Co.*, 478 U.S. 328 (1986), the court asked only whether the legislature's belief in the nexus between its chosen means of regulation and governmental interests was merely "reasonable." *Id.* ("[T]he *Posadas* Court looked no further than the reasonableness of the legislature's belief.").

On the fourth prong, in finding that AB 3994 was "no more extensive than necessary," the *Lungren* court similarly relied on *Posadas* to dismiss the availability of a disclosure or qualifying-language regime, reasoning that courts should not "second guess a legislative decision to restrict speech rather than to require more speech." *Id.* at 736. The Ninth Circuit qualified its decision to not "disturb" California's somewhat "arbitrar[y]" perimeters of regulated terms, emphasizing that "the thresholds drawn do not appear unduly prohibitive" and "leave considerable room" for businesses to make "editorial commentary" and "alternative expressions conveying . . . information about the modest environmental attributes of products." *Id.* at 736–37 (observing that the law permits businesses to say, "these trash bags will decompose in two years under x conditions," in lieu of "biodegradable").[1]

Later decisions have abrogated the legislative deference of *Posadas* that undergirded the *Lungren* court's holdings on the third and fourth prongs of *Central Hudson*. In *44 Liquormart, Inc. v. Rhode Island*, the Supreme Court declared that "*Posadas* clearly erred in concluding that it was 'up to the legislature' to choose suppression over a less speech-restrictive policy." 517 U.S. 484, 509 (1996) (plurality opinion); *see also Greater New Orleans Broad. Ass'n, Inc. v. United States*, 527 U.S. 173, 182 (1999) ("[T]he opinions in [*44 Liquormart*] concluded that our precedent both preceding and following *Posadas* had applied the *Central Hudson* test more strictly"); *Valley Broad. Co. v. United States*, 107 F.3d 1328, 1335 n.7 (9th Cir. 1997) ("[T]he

[1] AB 3994 was repealed soon after in 1995 and replaced with a provision requiring environmental marketing claims to conform to the Green Guides. *See* S.B. 426, 1995–1996 Leg., Reg. Sess. (Cal. 1995).

- 6 -

Court's reasoning in *Posadas*—especially its unquestioning acceptance" of the state's theories of restricting speech—is "no longer as compelling").

## III.   <u>STANDING</u>

There is no doubt that standing is sufficiently alleged in the FAC, *see* ¶¶ 5, 16–59, and substantiated by the declarations. *See, e.g.*, Hughes Decl. ¶¶ 3–8, 15–20, 24–26; Sanders Declarations ("Sanders Decls.") ¶¶ 3–8, 15–23, 27–29; Pitts Decl. ¶¶ 3–8, 15–24, 28–30; and Fong Decl. ¶¶ 3–8, 15–21, 26–28. Plaintiff associations have standing to sue on behalf of their members where (1) at least one of their respective members would have standing to sue in its own right; (2) the interests they seek to protect are "germane to the organization's purpose"; and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. *Assoc. Gen. Contractors of Am. v. Cal. Dep't of Transp.*, 713 F.3d 1187, 1194 (9th Cir. 2013). Each element is satisfied here.

As to the first element, individual members establish standing by showing an injury-in-fact, causation, and redressability. *Id.* In this First Amendment context, Plaintiffs need not wait for SB 343 to take effect—let alone face prosecution under it—to challenge the law that already threatens constitutionally protected commercial speech. *See Italian Colors Restaurant v. Becerra*, 878 F.3d 1165, 1172–73 (9th Cir. 2018). Pre-enforcement standing exists where members face a "credible threat of enforcement" and intend to violate the challenged law. *Id*. Chilling of First Amendment rights "is, itself, a constitutionally sufficient injury." *Id.* at 1173.

As in *Italian Colors*, "California has not communicated any threat or warning of impending proceedings against them," but Plaintiffs' members still "suffer injury by being forced to modify [their] speech and behavior to comply with the statute." *Id.* Their intention to engage in protected speech is thoroughly documented in Plaintiffs' declarations. *See, e.g.*, Hewitt Decl. ¶¶ 4–8; Sanders Decls. ¶¶ 4–8; Felton Decl. ¶¶ 4–8; and Condie Decl. ¶¶ 4–8. In this context, the Ninth Circuit has held that pre-enforcement standing analysis "tilt[s] dramatically toward a finding of standing." *See Italian Colors*,

878 F.3d at 1174; *cf. Wolfson v. Brammer*, 616 F.3d 1045, 1058 (9th Cir. 2010) (applying standing requirements "less stringently in the context of First Amendment claims").

The remaining elements are easily met. The labeling and packaging interests at stake are central to each association's mission, and declaratory and injunctive relief does not require individualized member participation. *See, e.g.*, Davey Decl. ¶¶ 2–3; Tomlinson Decl. ¶¶ 2–3; Flynn Decl. ¶¶ 2–3; and Michelin Decl. ¶¶ 2–3. The injuries stem directly from SB 343's speech restrictions and grow more severe with each passing day. An injunction against enforcement would halt the need for self-censorship and dramatically curb the threat of litigation tied to Plaintiffs' members current and planned use of recyclability claims. *Cf. M.S. v. Brown*, 902 F.3d 1076, 1083 (9th Cir. 2018) (describing a plaintiff's burden to demonstrate redressability as "relatively modest").

## IV.   <u>ARGUMENT</u>

A plaintiff is entitled to a preliminary injunction after showing (1) that it is "likely to succeed on the merits" and (2) "likely to suffer irreparable harm in the absence of preliminary relief," (3) that "the balance of equities tips in [its] favor," and (4) that the injunction "is in the public interest." *Hubbard v. City of San Diego*, 139 F.4th 843, 849 (9th Cir. 2025) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). Under the Ninth Circuit's sliding scale framework, the injunction may issue where a plaintiff raises "serious questions going to the merits" and "the balance of hardships tips sharply in plaintiff's favor." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). "[I]n the First Amendment context, the moving party bears the initial burden of making a colorable claim that its First Amendment rights have been infringed, or are threatened with infringement, at which point the burden shifts to the government to justify the restriction" on speech. *Doe v. Harris*, 772 F.3d 563, 570 (9th Cir. 2014).

**A.   <u>Plaintiffs Are Likely to Succeed on the Merits Because SB 343 Is Unconstitutionally Vague.</u>**

A law is unconstitutionally vague if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited" or if it is "so standardless that it authorizes

- 8 -

or encourages seriously discriminatory enforcement." *F.C.C. v. Fox Television Stations, Inc.*, 567 U.S. 239, 253–54 (2012). When speech is involved, "rigorous adherence" to vagueness principles "is necessary to ensure that ambiguity does not chill protected speech." *Id.*; *see also Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 499 (1982) (holding that, where a law "interferes with the right of free speech," courts must apply a "more stringent vagueness test").[2]

In this First Amendment context, where SB 343 "clearly implicates free speech rights," Plaintiffs' "facial vagueness challenge[] [is] appropriate." *Cal. Teachers Ass'n v. State Bd. of Educ.*, 271 F.3d 1141, 1149 (9th Cir. 2001) ("*CTA*"). Plaintiffs "need not demonstrate that [the statute] is impermissibly vague in all of its applications to succeed" in this challenge. *Id.* at n.7. And, even where the meaning of a statutory term is "fully within 'common understanding,'" uncertainty can still exist, so it is important that the agency overseeing the law is authorized to "remove uncertainty" through "declaratory rulings to [businesses] who fear they might run afoul" of the statute's restrictions. *See Minority Television Project, Inc. v. F.C.C.*, 736 F.3d 1192, 1210–11 (9th Cir. 2013).

But here, CalRecycle has no such authority to "sufficiently narrow potentially vague or arbitrary interpretations" of SB 343 by declaring what products or packaging fully comply with the recyclability criteria. *See id.* (quoting *Hoffman Estates*, 455 U.S. at 504). SB 343 is self-executing and grants no authority to CalRecycle to promulgate clarifying regulations. As Defendant conceded, "CalRecycle has no express or implied authority to do so under SB 343," "[n]or does SB 343 assign to CalRecycle any role in making more general recyclability determinations concerning categories of products." *See* RJN Ex. C, at 25. Stated plainly: CalRecycle can carry out its mandate "without ever having to determine what constitutes a recyclable product or packaging." *Id.*

---

[2] This goes for commercial speech restrictions too. *Wash. Mercantile Ass'n v. Williams*, 733 F.2d 687, 692 (9th Cir. 1984) ("Because constitutionally protected commercial speech is at issue, the standard here is more rigorous."); *Lungren*, 809 F. Supp. at 761 (facial vagueness of commercial speech prohibition with criminal sanctions turns on "fair notice to a businessperson of ordinary intelligence as to what conduct is illegal").

- 9 -

MPA IN SUPPORT OF PLAINTIFFS' MOT. FOR PRELIM. INJ.    26cv01675

Given this regulatory vacuum, there are at least four bases for declaring the law unconstitutionally vague on its face. Under ordinary due process principles, any one of these reasons at least raises "serious questions" going to the merits. *See All. for the Wild Rockies*, 632 F.3d at 1131. Because speech is at stake, the Court must apply the void-for-vagueness doctrine even "more strictly." *See CTA*, 271 F.3d at 1150 (requiring a "greater degree of specificity and clarity than would be necessary under ordinary due process principles"). In this bright light, SB 343 cannot survive scrutiny.

### 1. *Businesses Cannot Know Whether a Material* "Routinely *Becomes Feedstock Used in the Production of New Products or Packaging.*"

The law is unconstitutionally vague at the threshold because it conditions speech on whether a product or packaging is "of a material type and form that routinely becomes feedstock used in the production of new products or packaging." PRC § 42355.51(b)(1). What does "routinely" mean? More than half the time? More than 75 percent of the time? Almost all the time? The law does not say.

While the Constitution does not expect "mathematical" certainty, *see CTA*, 271 F.3d at 1152, it does require a discernible standard. The word "routinely" is a key criterion controlling whether a business can lawfully speak on this issue. But this standard offers no "measure to guide" a business about which products can be labeled recyclable and which cannot. *Free Speech Coalition v. Reno*, 198 F.3d 1083, 1095 (9th Cir. 1999). Whether a business can freely speak depends on an undefined level of downstream material reuse—an inquiry that rests on opaque, constantly varying market conditions far beyond the control or visibility of the speaker. And without an administrable rule, businesses have no concept of the evidence that would suffice to demonstrate compliance.

The "absence of [a] definition[] for th[is] key phrase[]" in SB 343 "allows law enforcement officials to exercise their discretion, subjectively," (*see id.*) about what "routinely becomes feedstock." Worse still, opportunistic private enforcers will be drawn to the vagueness of this term, certain in the knowledge that their complaint will

- 10 -

raise factual issues requiring discovery, even expert discovery, as well as uncertainty, the burdens of which will prompt the business to provide a lucrative settlement. As a result, no business can be "reasonably certain about whose perspective defines" this key phrase. *See id.* Where a provision is "susceptible to many different interpretations," or "raises questions with no clear answers," *United States v. Hall*, 912 F.3d 1224, 1227 (9th Cir. 2019), that vagueness renders the statute facially invalid.

When a similar speech restriction was at issue in *Lungren*, even though the law "unambiguously define[d] 'recycled,'" the lack of an "equally lucid explication of 'conveniently'" rendered the requirement void for vagueness. *See* 809 F. Supp. at 761–62 ("[T]he absence of any standard for 'conveniently recycled' wrecks this portion of [AB 3994] on the shoals of vagueness."). Three decades later, because SB 343 similarly "offers no guidance" as to how often or under what metric material must become feedstock to "satisfy the ['routine'] requirement," California's second attempt at redefining the common the word "recyclable" is just as problematic. *See id.*; *cf. Johnson v. United States*, 576 U.S. 591, 597–98 (2015) (declaring statute unconstitutionally vague where it combines "indeterminacy about *how to measure*" a relevant criterion with "indeterminacy about *how much*" is required to satisfy it) (emphasis added).

### 2. *The Basel Convention Criterion Gives Businesses No Way to Know Whether their Speech is Lawful.*

Section 42355.51(d)(2)(B)(i) restricts the term "recyclable" to material types and forms that are sorted into "defined streams sent to and reclaimed at a reclaiming facility consistent with the requirements of the Basel Convention." The law gives no clue as to what information a business must obtain to make that determination, or from whom to obtain it. This problem is borne out by the State's own implementation of the statute.

In one official guidance document, CalRecycle made clear that, in its view, SB 343 does not require the agency to determine the ultimate destination of defined waste streams and whether end markets are operating "consistent with the requirements of the Basel Convention." RJN Ex. D, at 32 ("CalRecycle was not directed to investigate

- 11 -

the[se] [issues.]"). In another, CalRecycle likewise conceded that it "does not provide information on the destination or ultimate disposition of materials sorted and sold by LVTP facilities" as needed for the Basel Criterion, leaving businesses without "all the information necessary to determine the recyclability status" for their materials. RJN Ex. E, at 39–40. When CalRecycle solicited public comments on its preliminary material characterization study (MCS), numerous stakeholders (including several Plaintiffs) voiced objections to being deprived of any guidance on this issue, *see* Norris Decl. ¶ 53, but their cries evidently fell on deaf ears. This is precisely the kind of "standardless" regime that the vagueness doctrine forbids. *See Fox Television*, 567 U.S. at 253.

The vagueness problem is compounded by the fact that the United States never even ratified the Basel Convention. RJN Ex. F, at 90. Because it is not binding domestic law, the Basel Convention does not supply a clear, incorporated standard that businesses can reliably consult. SB 343 thus forces businesses to interpret and apply an evolving body of international norms—without any authoritative guidance—to determine whether their speech is lawful. That added layer of uncertainty reinforces the statute's failure to provide fair notice. *See* Norris Decl. ¶¶ 34–35.

The Basel Criterion also invites arbitrary enforcement. Different enforcers can take different positions on what "consisten[cy]" with the Basel Convention means and what facts are necessary to prove it. Public comments on CalRecycle's preliminary MCS illustrate this division and range of views from potential litigants. *Id.* ¶¶ 52–53; RJN Ex. G (*compare* pp. 118; 176; 345; *with* pp. 367; 374–75; 401). Without guidance to discern what requirements of the Basel Convention control and how strictly third-party facilities are expected to comply, the "risk of subjective enforcement is particularly high." *NetChoice, LLC v. Bonta*, 170 F.4th 744, 765 (9th Cir. 2026). "Absent statutory guidance on the meaning" of the Basel Criterion, this provision is impermissibly vague. *Id*. at 767.

### 3. *The APR Design Guide Criterion Leaves Speakers Guessing.*

Under SB 343, before claiming that its plastic packaging is recyclable, a business must determine that it is "designed to not include any components, inks, adhesives, or

labels that prevent the recyclability of the packaging *according to the APR Design®️ Guide* published by the Association of Plastic Recyclers." PRC § 42355.51(d)(3)(A) (emphasis added). This criterion is also impermissibly vague.

For starters, the APR Design Guide ("APR Guide") does not align with SB 343's requirement that plastic packaging not include elements that "prevent the recyclability of the packaging." The Guide uses four "Recyclability Categories": (1) APR Design Preferred; (2) Detrimental to Recycling; (3) Renders Package Non-Recyclable; and (4) Requires Testing. Norris Decl. ¶ 38. The second category is used for "Features that present known technical challenges . . . , but are grudgingly tolerated and accepted by the majority of" materials recovery facilities and recyclers. *Id.* The third is used for features that the majority of material recovery facilities ("MRFs") or reclaimers cannot remove "to the degree required to generate a marketable end product." *Id.* Do features in the second category "prevent the recyclability of the packaging," or just features in the third category? Businesses are left to guess.

The Legislature can of course incorporate technical standards. But when speech liability turns on an external, nongovernmental standard that can change outside ordinary legislative or administrative procedures, with no oversight by government officials, due process problems emerge. *See Carter v. Carter Coal Co.*, 298 U.S. 238, 311 (1936) (striking down statutory scheme as unconstitutional delegation of legislative power to private industry groups). Here, the statute points to the APR Guide generically, without specifying which edition applies or how regulated entities are to know when and whether later revisions alter the legality of their packaging claims. The APR Guide is even described by its authors as "open source," "dynamic," and meant to "grow[] as the recycling system and packaging technologies evolve." RJN Ex. H, at 422. Indeed, the most recent version was last updated on March 30, 2026, years after SB 343 was enacted, and has been updated dozens of times. Norris Decl. ¶ 40. Moreover, CalRecycle's own guidance concerning size requirements conflicts with the Guide, raising serious questions as to which standard controls. RJN Exs. D, at 32; I, at 518; FAC at ¶ 146.

MPA IN SUPPORT OF PLAINTIFFS' MOT. FOR PRELIM. INJ.    26cv01675

That uncertainty especially matters because SB 343 is not a law that merely suggests design specifications; it restricts speech under threat of criminal sanctions. A business does not have the luxury of sorting out the meaning after the fact. It must decide, before printing, manufacturing, or distributing packaging, whether displaying a recyclability instruction or symbol will expose it to enforcement—which entails guessing whether its packaging conforms to a privately developed, indeterminate standard that may change without notice. Such uncertainty leads speakers to "steer far wider of the unlawful zone than if the boundaries of the forbidden areas were clearly marked." *CTA*, 271 F.3d at 1150.

### 4. *Whether Design Ensures or Prevents Recyclability is Unknown.*

SB 343's requirements that cover products and non-plastic packaging (as opposed to plastic packaging covered by the APR Guide) fare no better under due process analysis. Each of these items must be "designed to ensure recyclability and does not include any components, inks, adhesives, or labels that prevent the recyclability of the product or packaging." PRC § 42355.51(d)(3)(B). First, the statute offers no guidance on what it means to "ensure" recyclability or to "prevent" it. If recycling infrastructure evolves such that a component "preventing" recyclability at the time of design no longer does so by the time it reaches consumers, has the manufacturer "ensured" recyclability? Do these terms contemplate a feasibility standard, a *de minimis* threshold, or something much stricter? How is reasonably anticipated consumer behavior factored into these standards? "That questions of this nature so readily come to mind means that it is not sufficiently clear . . . what exactly the statute prohibits." *Lungren*, 809 F. Supp. at 762.[3]

Second, the determination of whether a component "prevents" recyclability is not one that Plaintiffs' members can make with any degree of confidence—it is made

---

[3] A component that merely complicates a step in the recycling process or affects recyclability in some facilities but not others occupies ambiguous territory. Multi-material designs, adhesives, and inks routinely interact with recycling infrastructure in ways that are partial and facility dependent. Businesses have no way of knowing whether such components cross the statute's lines. Norris Decl. ¶ 36.

- 14 -

MPA IN SUPPORT OF PLAINTIFFS' MOT. FOR PRELIM. INJ.       26cv01675

downstream by individual MRFs applying their own operational standards, well outside the control and insight of commercial speakers subject to SB 343's restrictions. Businesses do not have the power to require every MRF in California to answer whether a particular ink formulation, adhesive, or label component is perfectly compatible with the MRF's recycling processes. And CalRecycle has already made clear that it will not aid businesses in making that determination. *See* RJN Exs. D, at 31; E, at 39. Without that insight or any statutory benchmark to help businesses even venture to make that assessment for themselves, speakers are left to guess whether their products comply, and more importantly, whether they can freely exercise their speech rights without fear of being dragged into court and subjected to criminal punishment.

*    *    *

In sum, this is far from a case where "uncertainty [exists] at a statute's margins." *CTA*, 271 F.3d at 1151. Indeed, uncertainty "permeates" SB 343's recyclability criteria, which requires its facial invalidation. *See NetChoice*, 170 F.4th at 764. "Businesses of ordinary intelligence cannot reliably determine what compliance requires." *Id.* at 767. At virtually every step of the way, a business is "left guessing" about when speech is prohibited and when it is not. *Free Speech Coalition*, 198 F.3d at 1095. The "absence of definitions for [] key phrases in [SB 343] allows law enforcement officials [and private enforcers] to exercise their discretion, subjectively," (*see id.*) about what "routinely becomes feedstock," what inks or adhesives "prevent the recyclability" of an item, or whether something is reclaimed in a manner "consistent with the requirements of the Basel Convention." By lacking "precision and guidance," SB 343 not only leaves Plaintiffs' members vulnerable to significant civil and criminal liability—it actually invites "arbitrary [and] discriminatory" prosecution by self-deputized enforcers. *See Fox Television*, 567 U.S. at 253. The Court should find SB 343 void for vagueness.

Because the constitutional defects of SB 343 attach to the heart of the statute's restriction on commercial speech, severance would be inappropriate. To be severable, a provision "must be grammatically, functionally, and volitionally separable." *Fresenius*

- 15 -

*Med. Care Orange Cnty. v. Bonta*, 2026 WL 934331, at \*11 (9th Cir. Apr. 7, 2026).

The volitional inquiry alone forecloses severance here. It necessarily "invites speculation about what the legislature would have done if it was only allowed to keep the constitutional provision[s]," and therefore requires "compelling reason[s]" to conclude that the legislature would have wanted SB 343's blanket restriction on recyclability claims to operate without every one of the criteria in PRC § 42355.51 that collectively define "recyclable." There are none. Indeed, courts evaluating the constitutionality of California statutes treat the absence of a severability clause as evidence of legislative "intent to have all components operate together or not at all." *See, e.g., Am. Bankers Ass'n v. Lockyer*, 239 F. Supp. 2d 1000, 1021 (E.D. Cal. 2002) (quoting *In re Reyes*, 910 F.2d 611, 613 (9th Cir. 1990); *cf. Bd. of Nat. Res. of Wash. v. Brown*, 992 F.2d 937, 948 (9th Cir. 1993).

### B. Plaintiffs Are Likely to Succeed on the Merits Because the State Cannot Establish that SB 343 Passes Intermediate Scrutiny.

Restrictions on commercial speech are subject to intermediate scrutiny under *Central Hudson*.[4] "Commercial speech that is not false, deceptive, or misleading can be restricted, but only if the State shows that the restriction directly and materially advances a substantial state interest in a manner no more extensive than necessary to serve that interest." *Ibanez v. Fla. Dep't Bus. & Prof. Reg.*, 512 U.S. 136, 142 (1994) (citing *Cent. Hudson Gas & Elec. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 556, 566 (1980). The burden is high because the "free flow of commercial information is valuable enough to justify imposing on would-be regulators the costs of distinguishing the truthful from the false [and] the helpful from the misleading." *Id.* at 143; *Italian Colors*, 878 F.3d at 1176 ("California's burden under this test is heavy, . . . and the Attorney General cannot satisfy

---

[4] Alternatively, because content-based speech restrictions are subject to strict scrutiny, the State has the "burden of proving that [SB 343] furthers a compelling interest and is narrowly tailored to achieve that interest." *Hubbard*, 139 F.4th at 852; *cf. Junior Sports Magazines Inc. v. Bonta*, 80 F.4th 1109, 1115 n.1 (9th Cir. 2023) (declining to answer whether strict scrutiny applies to content-based commercial speech restrictions).

it by mere speculation or conjecture."). "Government prohibitions of truthful commercial messages are particularly dangerous and deserve rigorous review." *W. States Med. Ctr. v. Shalala*, 238 F.3d 1090, 1096 (9th Cir. 2001), *aff'd Thompson v. W. States Med. Ctr.*, 535 U.S. 357 (2002).

### 1. *Plaintiffs' Speech Is Not Inherently Misleading.*

Commercial speech that is neither unlawful nor inherently misleading retains First Amendment protection and may not be suppressed unless the State satisfies the remaining *Central Hudson* prongs. *See Am. Acad. of Pain Mgmt. v. Joseph*, 353 F.3d 1099, 1106–07 (9th Cir. 2004). This threshold inquiry distinguishes between speech that is "inherently likely to deceive" and speech that is only "potentially misleading." If it is only "potentially misleading," that is, "if the information also may be presented in a way that is not deceptive," courts review the speech restriction under intermediate scrutiny. *Id.* (quoting *In re R.M.J.*, 455 U.S. 191, 203 (1982)).

As the Ninth Circuit held in *Lungren*, recyclability claims are only "potentially misleading." 44 F.3d at 731–32; *see also* FAC ¶¶ 127–130. The State cannot point to its own definition of "recyclable" to argue that its law regulates unlawful or inherently misleading speech. After all, "justifying governmental speech regulation using the government-issued dictionary is troublingly self-fulfilling." *Miyoko's Kitchen v. Ross*, 2020 WL 8361994, at *5 (N.D. Cal. Aug. 21, 2020) (citing *Ocheesee Creamery LLC v. Putnam*, 851 F.3d 1228, 1238 (11th Cir. 2017)).[5]

As to the second prong under *Central Hudson*, Plaintiffs do not dispute that California has substantial governmental interests in ending consumer confusion and improving recycling rates. But these interests alone "do[] not provide a constitutionally adequate reason for restricting protected speech," *see Cent. Hudson*, 447 U.S. at 569—

---

[5] "All a state would need to do in order to regulate speech would be to redefine the pertinent language in accordance with its regulatory goals. Then, all usage in conflict with the regulatory agenda would be inherently misleading and fail *Central Hudson*'s threshold test. Such reasoning is self-evidently circular." *Ocheesee Creamery*, *supra* (rejecting definition of misleading speech tethered to "state's preferred definition").

- 17 -
MPA IN SUPPORT OF PLAINTIFFS' MOT. FOR PRELIM. INJ.     26cv01675

"the Attorney General must do more than merely identify a state interest served by the statute." *Italian Colors*, 878 F.3d at 1177.

### 2. *SB 343 Does Not Directly Advance California's Asserted Interests.*

Under the third prong, the AG must also show that SB 343 "directly advances" the asserted interests; he "must demonstrate that the harms he recites are real and that the speech restriction will in fact alleviate them to a material degree." *Id.* (quoting *Greater New Orleans*, 527 U.S. at 188). There must be an "immediate connection" between the speech restrictions and the governmental interests. *Cent. Hudson*, 447 U.S. at 569. If the link between them is "[i]neffective or remote," "tenuous," or "speculative," the law cannot survive scrutiny. *Id.* at 564, 569.

In deciding whether the third *Central Hudson* prong is met, courts in our circuit "may not simply defer to legislative . . . judgment on this question." *Cal-Almond, Inc. v. U.S. Dep't of Ag.*, 14 F.3d 429, 437 (9th Cir. 1993) ("[W]e must determine ourselves whether the program directly advances USDA's asserted interests."). The AG must "do more than appeal to common sense and a chain of inferences to prove that the law would *significantly* advance the State's interest." *Junior Sports*, 80 F.4th at 1118.

Because SB 343 arbitrarily suppresses truthful recyclability claims—eliminating the very information that serves the law's goals of reducing consumer confusion and landfill waste—there are at minimum serious questions whether the State can meet its "heavy" burden of demonstrating that its restriction directly "alleviates these harms to a material degree." *Italian Colors*, 878 F.3d at 1176–77. Put more simply, a restriction that effectively deprives consumers of accurate information cannot be said to "directly advance" interests that depend on informed consumer behavior.

### a. What Chasing Arrow Symbols and the Like Communicate

The State's theory of confusion that SB 343 purports to address rests on a faulty and unsubstantiated premise about what chasing arrow symbols and recyclability labels in general communicate. In the State's view, when an average consumer sees such a label, she understands it as a promise that something will be recycled and a

- 18 -

representation about the recycling infrastructure in her municipality. But the common and most natural interpretation of a chasing arrows symbol and recycling labels is that something is *capable* of being recycled. That is, it conveys a single attribute of the item; it does not promise a likelihood of the item eventually being recycled, or say anything about broader infrastructure.[6] Nor does the simple label instruction to recycle a product convey anything about the product's chemical composition, which puzzlingly forms another one of SB 343's criteria. *See* PRC § 42355.51(d)(3)(C), (D).

That the law's speech restrictions extend as far as banning a statement like "Recyclable where facilities exist – check locally," exposes another unfounded assumption. By suppressing even qualified statements such as this, the State assumes that consumers respond to accurate, qualified claims the same way they respond to deceptive and unqualified ones. A law that is conceived around such fundamental misunderstandings fails *Central Hudson*'s third prong. *See Junior Sports*, 80 F.4th at 1117 ("To satisfy its burden, California must provide evidence establishing that the harms it recites are real") (cleaned up).

### b. SB 343 Suppresses All Recyclability Labeling, Accurate or Not.

The law does not merely prohibit deceptive labeling in the ordinary sense. It creates a strict liability scheme under which *any* "symbol or statement indicating the product or packaging is recyclable," *see* PRC § 42355.51(b)(1), however accurate or carefully qualified, exposes a business to criminal prosecution, escalating civil penalties, and an unlimited private enforcement free-for-all. Because SB 343's criteria are vague, shifting, and in key respects unverifiable, no business can determine with confidence

---

[6] Consider the flammability symbol on a hairspray product. A person who sees this symbol understands the hairspray *can* catch fire, not that in most use conditions it will burst into flames. Similarly, when a consumer handling an electronic device sees the 5G icon, he understands that the device's hardware can connect to 5G networks where they exist, not that 5G infrastructure is available wherever he happens to use the phone. The chasing arrows symbol and recycling labels in general are no different. They tell a consumer something about the product she is holding; they do not lead him to make conclusions about what surrounding infrastructure does with it.

- 19 -

whether any given recyclability label will be deemed compliant if challenged. The rational response to that uncertainty and risk is silence. Many businesses that would otherwise make accurate, qualified recyclability claims will instead strip their packaging of all recyclability guidance to avoid the risk of liability.

This chilling effect is not speculative. It is the foreseeable consequence of the statute's design, and it is already occurring. For Plaintiffs' members who presently sell or distribute products carrying any type of recycling claim, the concrete downsides of defending against class actions brought on arguable interpretations of SB 343's criteria may far exceed the theoretical benefits of making a "recyclable" claim. *See, e.g.*, Manoso Decl. ¶¶ 19–21; LeMay Decl. ¶¶ 22–23; Landry Decl. ¶¶ 20, 29–30; and Fong Decl. ¶¶ 15, 18, 21. For those whose products do not presently carry a recycling claim or those deciding how to launch new products in California, the risks of civil litigation and criminal prosecution that attach to any recycling label can far outweigh the benefits of adding a chasing arrows symbol, regardless of its accuracy. *See, e.g.*, Flores Decl. ¶¶ 24–25; Verloop Decl. ¶¶ 26–28; Pitts Decl. ¶¶ 28–30; and Condie Decl. ¶¶ 27–29. Faced with these threats, it matters little that a product is accepted and sorted by recycling programs serving most of California or otherwise meets the State's definition; many businesses, acting rationally, will remain silent.

### c. SB 343 Spawns Confusion and Undermines Recycling Rates.

Even if the State could produce sufficient evidence showing widespread consumer confusion in the status quo, SB 343 will ultimately generate *more* confusion. For one, because CalRecycle periodically updates its MCS, a label that is "truthful" one year may be "deceptive" the next. FAC ¶¶ 92, 98. And consumers who purchase products in other states—or who purchased the same product in California before the October 4, 2026 compliance deadline—will be confused when identical products subsequently appear on California shelves stripped of any recyclability guidance. *Id.* ¶¶ 76, 109. Worse, consumers deprived of accurate, qualified recycling instructions will mistakenly think that a product is not recyclable anywhere and discard it as waste destined for the landfill.

Consumers use on-package instructions and familiar chasing arrows symbols as cues for recycling material. A consumer who encounters a product bearing no recycling label will reasonably conclude that the product cannot be recycled and discard it. Under SB 343, materials that are in fact recyclable and accepted in a consumer's locale must still be left unlabeled if they fail statewide thresholds unrelated to that consumer's local recycling options. *See* FAC ¶¶ 127–28. Even materials that are widely collected and sorted for recycling—well exceeding the State's 60/60 threshold—would still be left unlabeled if there is a colorable argument that any one of the remaining definitional criteria could not be met. *See, e.g.*, Kuester Decl. ¶¶ 21, 23; Valadez Decl. ¶¶ 24, 26; Felton Decl. ¶¶ 25, 28; and Michelin Decl. ¶¶ 22, 24.

Because SB 343 just as easily prohibits accurate, context-specific information about recycling, it could hardly be less directly related to advancing "truth" in labeling. "[A] law that keeps truthful [recycling] information from customers" does not "increase[] the accuracy of information in the marketplace." *See Italian Colors*, 878 F.3d at 1177; *cf. Lever Brothers Co. v. Maurer*, 712 F. Supp. 645, 652–53 (S.D. Ohio 1989) (holding that a state's "absolute ban on the use of the word 'butter'" unless products met state criteria would "actually frustrate" the goal of accurate consumer information).

By leaving consumers less informed about how to dispose of recyclable materials, SB 343 also undermines the State's recycling and landfill diversion interests. Recycling rates are a direct function of informed consumer behavior, and a consumer who has been denied accurate disposal guidance will not make the choices that drive material away from landfills and into the recycling stream. And herein lies the paradox. Stripped of any mention of recycling, products that are currently collected by curbside recycling programs and sorted for recycling—but which do not obviously comply with SB 343's many requirements—will end up in California's landfills. In other words, instead of producing better recycling outcomes, the law produces uninformed consumers who cannot make the very choices the State claims to encourage.

SB 343 will also undermine non-curbside recycling programs. Materials collected

- 21 -

through take-back and store drop-off programs cannot be labeled recyclable unless 60 percent of the product is collected, rising to 75 percent after January 1, 2030. FAC ¶ 78. As businesses will be forced to strip "Store Drop-off" labels and chasing arrows symbols from products that fall short of these thresholds, consumer participation in non-curbside programs will decline, making it virtually impossible for those programs ever to reach the required collection rates. *Id.* ¶¶ 102, 134; *see also* Fong Decl. ¶ 23; Michelin Decl. ¶ 23; and Felton Decl. ¶ 26. It will also stifle beneficial innovation in sustainable packaging: new materials by definition will not meet these collection rates, and they will never do so if consumers cannot be informed about their recyclability. Norris Decl. ¶ 49. The law thus guarantees that the recycling gap it seeks to close will only widen.

### 3. SB 343 is More Extensive Than Necessary.

Even if the State could establish that its speech restrictions directly advance its asserted interests, SB 343 would still fail the last prong of *Central Hudson*. To satisfy this prong, the State "must affirmatively prove" that the law is "narrowly tailored to serve substantial government interests." *Project 80's, Inc. v. City of Pocatello*, 942 F.2d 635, 637 (9th Cir. 1991). As a matter of law, commercial speech restrictions that "disregard far less restrictive and more precise means are not narrowly tailored," *id.* at 638; they "cannot be treated as simply another means that the government may use to achieve its ends." *44 Liquormart*, 517 U.S. at 507, 512 (striking down restriction on price advertising of alcohol because "alternative forms of regulation that would not involve any restriction on speech would be more likely to achieve the State's goal of promoting temperance"). If the State can achieve its interests "in a manner that does not restrict speech, or that restricts less speech, [it] must do so." *Thompson*, 535 U.S. at 371.

In service of the governmental interest to reducing consumer confusion, states beside California have also sought to ban certain terms appearing on commercial labels unless the products satisfy the government's narrow definitions of those terms. But such laws are invalidated under *Central Hudson*'s fourth prong when disclaimers or other less speech-restrictive options could serve the same interest. *See, e.g., Ocheesee Creamery*,

- 22 -

851 F.3d at 1236–40 (law regulating the term "skim milk" was "clearly more extensive than necessary to achieve" the goal of curbing deception, which could be served by "allowing skim milk to be called what it is and merely requiring a disclosure"); *Turtle Island Foods SPC v. Soman*, 424 F. Supp. 3d 552, 576 (E.D. Ark. 2019) (ban on terms like "burger" for plant-based products was "more extensive than necessary" because the state could require disclosures of the vegan nature of the products).

Even in *Lungren*, where the Ninth Circuit held that AB 3994 was no more extensive than necessary, that holding hinged on the definitions not being "unduly prohibitive" and "leav[ing] considerable room" for "alternative expressions" conveying a product was "recycled." 44 F.3d at 736–37; *see also supra* II.D. By contrast, no such disclaimers or alternative expressions are permitted under SB 343—symbols or statements merely "indicating the product or packaging is recyclable, or otherwise directing the consumer to recycle [the item]" are prohibited unless California's criteria are satisfied. PRC § 42355.51(b)(1). A "complete ban on any discussion" of recyclability such as this is certainly "not in proportion" to the State's goals. *See Yim v. City of Seattle*, 63 F.4th 783, 796 n.17 (9th Cir. 2023). If anything, this reveals that the State skipped over its responsibility to "carefully calculate[] the costs and benefits associated with the burdens on speech." *See id.* (finding "near-blanket prohibition" on commercial speech goes "much further than is necessary to serve the interest asserted").

As in *Ocheesee Creamery* and *Turtle Island*, SB 343 fails *Central Hudson*'s fourth prong because the State has "numerous and obvious less-burdensome alternatives to [its] restriction on commercial speech." *See Italian Colors*, 878 F.3d at 1178. Rather than prohibiting all recyclability claims on product labels, California could permit or even require such labels be accompanied by qualifying language—for example, "Recyclable where facilities exist – check locally," or directing consumers to a State-maintained resource identifying which materials are accepted in their area. "States may not place an absolute prohibition on certain types of potentially misleading information, . . . if the information also may be presented in a way that is not deceptive." *Id.* at 1179 (quoting

*In re R.M.J.*, 455 U.S. at 203); *see also Int'l Dairy Foods Ass'n v. Boggs*, 622 F.3d 628, 639 (6th Cir. 2010) (ban on "rbST free" claims is more extensive than necessary, where potential consumer confusion could be alleviated by disclaimer). Either option more precisely targets the confusion the State claims to address than a blunt labeling prohibition that leaves consumers with no information at all. A paternalistic "concern[] about the possibility of deception . . . is not sufficient to rebut the constitutional presumption favoring disclosure over concealment." *Peel v. Att'y Registration & Disciplinary Comm'n*, 496 U.S. 91, 111 (1990).

California likewise has no need for a sweeping new speech restriction when general consumer protection laws are already available to police the precise conduct it claims to target. Where state laws prohibiting deceptive labeling already exist, there is no reason to conclude that those laws are "ineffective at policing the alleged deceptive or confusing practices the State purports to target." *Turtle Island*, 424 F. Supp. 3d at 576; *cf. Italian Colors*, 878 F.3d at 1178 ("California could also enforce its existing laws banning unfair business practices and misleading advertising."). And if the State's concern is that certain materials are not in fact recyclable or are contaminating recycling streams, it could address that problem directly by regulating materials or contaminants. *See Rubin v. Coors Brewing Co.*, 514 U.S. 476, 490–91 (1995) (labeling ban more extensive than necessary where state could directly limit alcohol content and limit ban to specific beers); *44 Liquormart*, 517 U.S. at 507 (same principle, noting "direct regulation," taxation, and educational campaigns as less speech-restrictive options).

While California may believe that these alternatives are "not the most efficient means" of serving its goals, the Supreme Court has "emphatically" reaffirmed time and again that "the First Amendment does not permit the State to sacrifice speech for efficiency." *Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 795 (1988). The State chose to indiscriminately funnel all recyclability claims—including truthful ones—through a sieve of restrictive statutory criteria. That runs contrary to the "principle that disclosure of truthful, relevant information is more likely to make a

positive contribution to decision-making than is concealment of such information." *Peel*, 496 U.S. at 108. In as rapidly evolving area as recycling, any reasonable "fit" must leave room for the very contextual specificity that SB 343's definitional approach rejects.

## C. **Plaintiffs' Members Will Be Irreparably Harmed Without a Preliminary Injunction, and the Remaining Equitable Factors Weigh in Plaintiffs' Favor.**

The "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Hubbard*, 139 F.4th at 853. Thus, irreparable harm is "relatively easy to establish" in this case, where Plaintiffs have demonstrated "the existence of a colorable First Amendment claim." *Id*. A law "need not be enforced against a speaker to pose a threat to his free speech rights." *Cuviello v. City of Vallejo*, 944 F.3d 816, 832 (9th Cir. 2019). Many of Plaintiffs' members will "restrain [their] own speech under the threat that [SB 343] will be enforced against [the]m," and "[t]his chill on [their] free speech rights—even [though] it results from a threat of enforcement rather than actual enforcement—constitutes irreparable harm." *See id.* at 833; *see also supra* II.B-C and *e.g.*, Sanders Decls. ¶¶ 27–29; Delihant Decl. ¶¶ 24–26; Flynn Decl. ¶¶ 28–30; and Landry Decl. ¶¶ 33–35.

The final two factors—balance of equities and public interest—merge when the government is the opposing party. *Hubbard*, 139 F.4th at 854. That Plaintiffs "have raised serious First Amendment questions compels a finding that the balance of hardships tips sharply in [Plaintiffs'] favor." *Id*. "Because [Plaintiffs] ha[ve] raised a colorable free speech claim . . . , it is well within the public interest to issue a preliminary injunction." *Cuviello*, 944 F.3d at 834; *see also Hubbard*, 139 F.4th at 854 ("[I]t is always in the public interest to prevent the violation of a party's constitutional rights.").

## V. **CONCLUSION**

For the foregoing reasons, and because the elements of a preliminary injunction are met, the Court should preliminarily enjoin Defendant, and all those in privity or acting in concert with Defendant, from enforcing SB 343 against Plaintiffs and those they represent until the merits of their Complaint can be decided.

- 25 -

Dated: April 24, 2026

Respectfully submitted,

By: */s/ Trenton H. Norris*

Trenton H. Norris (CA Bar No. 164781)
Alexander Tablan (CA Bar No. 346309)
Andrew Muse-Fisher (CA Bar No. 364086)
HOGAN LOVELLS US LLP
Four Embarcadero Center, 35th Floor
San Francisco, CA 94111
Tel: (415) 374-2300
trent.norris@hoganlovells.com

*Attorneys for Plaintiffs*
California League of Food Producers American
Forest & Paper Association California Apple
Commission
California Blueberry Commission
California Grocers Association
California Restaurant Association
California Retailers Association
California Strawberry Commission
California Table Grape Commission California
Walnut Commission
Californians for Affordable Packaging
Consumer Brands Association
Dairy Institute of California
Flexible Packaging Association
Grower Shipper Association of Central
California
Olive Oil Commission of California
Personal Care Products Council
Pet Food Institute
Print Creative Alliance
SNAC International
Western Growers Association

- 26 -