ROB BONTA
Attorney General of California
ANYA M. BINSACCA
Supervising Deputy Attorney General
MEGAN RICHARDS
Deputy Attorney General
State Bar No. 281307
 455 Golden Gate Avenue, Suite 11000
 San Francisco, CA  94102-7004
 Telephone:  (415) 510-3526
 Fax:  (415) 703-1234
 E-mail:  Megan.Richards@doj.ca.gov
*Attorneys for Defendant Rob Bonta, as
Attorney General of the State of California*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **CALIFORNIA LEAGUE OF FOOD PRODUCERS, et al.,**<br><br>Plaintiffs,<br><br>**v.**<br><br>**ROB BONTA, in his official capacity as Attorney General of the State of California,**<br><br>Defendant. | Case No. 3:26-cv-01675<br><br>**DEFENDANT ROB BONTA'S OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**<br><br>Hearing Date: June 1, 2026<br>Time:            None set<br>Judge:           Hon. William Q. Hayes<br>Trial Date:    None set<br>Action Filed:  March 17, 2026 |

1

## TABLE OF CONTENTS

**Page**

Introduction ...................................................................................................6

I.  The Legislature Passed SB 343 To Protect Consumers and Address Problems with Recycling in California.................................7

II.  Plaintiffs File This Lawsuit To Invalidate SB 343............................10

Legal Standard for Preliminary Injunction ..................................................11

Argument......................................................................................................11

I.  Plaintiffs Have Not Established Standing.........................................11

II.  Plaintiffs Are Not Likely To Succeed in Showing that SB 343 Is Unconstitutionally Vague.................................................................13

   A.  Plaintiffs are unlikely to show that the definition of "recyclable" in SB 343 is unconstitutionally vague.................13

     1.  "Routinely Becomes Feedstock"....................................15

     2.  Basel Convention...........................................................16

     3.  APR Design Guide Criterion..........................................17

     4.  Ensures or Prevents Recyclability..................................18

III.  Plaintiffs Are Not Likely to Succeed in Showing that SB 343 Facially Violates the First Amendment. ..........................................19

   A.  SB 343 regulates misleading commercial speech ...................20

   B.  SB 343 is constitutional under the *Central Hudson* factors .....21

     1.  First Amendment protection ...........................................22

     2.  California's interest is substantial ..................................22

     3.  SB 343 directly addresses the interests asserted............23

     4.  SB 343 is not more extensive than necessary ................26

IV.  Plaintiffs Will Not Face Irreparable Harm .......................................28

V.  The Balance of Equities & Public Interest........................................28

VI.  Severability Analysis .......................................................................29

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Arixx, LLC v. NutriSearch Corp.*
  985 F.3d 1107 (9th Cir. 2021)......................................................................21

*Assoc. of Nat. Advertisers, Inc. v. Lungren*
  809 F.Supp. 747 (N.D. Cal. 1992)................................................. 20, 21, 22, 30

*Associated Gen. Contractors of Am., San Diego Chapter, Inc. v. Cal.
  Dep't of Transp.*
  713 F.3d 1187 (9th Cir. 2013)......................................................................12

*Bolger v. Youngs Drug Prods. Corp.*
  463 U.S. 60 (1983)..............................................................................20, 21

*Cal. Chamber of Com. v. Council for Educ. & Rsch. on Toxics*
  29 F.4th 468 (9th Cir. 2022).........................................................................11

*California Teachers Ass'n v. State Bd. of Educ.*
  271 F.3d 1141 (9th Cir. 2001)......................................................................14

*Central Hudson Gas & Electric Corp. v. Public Service Comm'n*
  447 U.S. 447 (1980)............................................................... 20, 21, 23, 28

*Drakes Bay Oyster Co. v. Jewell*
  747 F.3d 1073 (9th Cir. 2014)......................................................................28

*Edenfield v. Fane*
  507 U.S. 761 (1993)....................................................................................23

*Fla. Bar v. Went For It, Inc.*
  515 U.S. 618 (1995)....................................................................................23

*Free Enter. Fund. v. Pub. Co. Acc'g Oversight Bd.*
  561 U.S. 477 (2010)....................................................................................29

*Grayned v. City of Rockford*
  408 U.S. 104 (1972)....................................................................................14

*Ibanez v. Fla. Dept. of Bus. & Prof. Reg., Bd. of Acc'y*
  512 U.S. 136 (1994)....................................................................................20

Def. Rob Bonta's Opp. to Pls.' Motion for a Pre. Injunction (3:26-cv-01675)

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Lamb-Weston, Inc. v. McCain Foods, Ltd.*
  941 F.2d 970 (9th Cir. 1991)............................................................................29

*Lorillard Tobacco Co. v. Reilly*
  533 U.S. 525 (2001)........................................................................................23

*Meinecke v. City of Seattle*
  99 F.4th 514 (9th Cir. 2024)...........................................................................11

*Moody v. NetChoice, LLC*
  603 U.S. 707 (2024)........................................................................................19

*Mullins v. City of New York*
  *626 F.3d 47 (2d Cir.2010)* ..............................................................................6

*Netchoice, LLC v. Bonta*
  113 F.4th 1101 (9th Cir. 2024)................................................................20, 29

*NetChoice, LLC v. Bonta*
  152 F.4th 1002 (9th Cir. 2025)................................................ 12, 19, 20, 29

*Nken v. Holder*
  556 U.S. 418, 434 (2009)................................................................................28

*Rubin v. Coors Brewing Co.*
  514 U.S. 476, 481-82 (1995)..........................................................................20

*Spokeo, Inc. v. Robins*
  578 U.S. 330 (2016)................................................................................. 11, 12

*Townley v. Miller*
  722 F.3d 1128 (9th Cir. 2013).........................................................................12

*Tuscon v. City of Seattle*
  91 F.4th 1318 (9th Cir. 2024).........................................................................14

*United States v. Lucero*
  989 F.3d 1088 (9th Cir. 2021).........................................................................18

*United States v. Williams*
  553 U.S. 285 (2008)................................................................................. 13, 19

Def. Rob Bonta's Opp. to Pls.' Motion for a Pre. Injunction (3:26-cv-01675)

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Vivid Ent., LLC v. Fielding*
  774 F.3d 566 (9th Cir. 2014)..................................................................................30

*Winter v. Nat. Res. Def. Council, Inc.*
  555 U.S. 7 (2008).........................................................................................11, 28

*X Corp. v. Bonta*
  116 F.4th 888 (9th Cir. 2024)................................................................................11

**STATUTES**

California Business and Professions Code
  § 17580(a)(6)...............................................................................................10

California Public Resources Code
  § 40180............................................................................................................6
  § 42005(b)(3)...................................................................................................9
  § 42061(a)(3)(B)........................................................................................10, 13
  § 42355.5(a).................................................................................................8, 22
  § 42355.5(b).....................................................................................................8
  § 42355.51................................................................................................8, 13, 26
  § 42355.51(b)..................................................................................................13
  § 42355.51(b)(1)............................................................................................9, 15
  § 42355.51(b)(2)...............................................................................................10
  § 42355.51(d)(2)...........................................................................................13, 15
  § 42355.51(d)(2)(A).........................................................................................14
  § 42355.51(d)(2)(B).........................................................................................16
  § 42355.51(d)(2)(B)(i)...................................................................................14, 16
  § 42355.51(d)(3)..............................................................................................17
  § 42355.51(d)(3)(A).........................................................................................17
  § 42390............................................................................................................9
  § 48500...........................................................................................................29

**CONSTITUTIONAL PROVISIONS**

First Amendment ...................................................................................*passim*

Def. Rob Bonta's Opp. to Pls.' Motion for a Pre. Injunction (3:26-cv-01675)

**INTRODUCTION**

Under California law, "recycling" refers to "the process of collecting, sorting, cleansing, treating, and reconstituting materials that would otherwise become solid waste, and returning them to the economic mainstream in the form of raw material for new, reused, or reconstituted products…" Pub. Res Code § 40180. A product is "recycled" in California when it is diverted from the waste stream and processed into a material that will be used to create a new product. When it passed SB 343, the Legislature cited that under California's definition of recycling, less than 15% of single-use plastic is actually recycled. Pls.' RJN Ex. DD, p. 1557. The current number is lower, 5 %. Def. Ex. 6, p.311.[1]

Plaintiffs frequently advocate for a definition of "recyclable" that means "capable of being recycled." *See e.g.* Pitts Decl. ¶ 25, Sanders Decl. ¶ 24, Fong Decl. ¶ 22, Hughes Decl. ¶ 21. Plaintiffs' definition of recycling focuses on whether, under some conditions, the product or the product's material could be recycled, without regard to whether those conditions currently exist in California. In their view, it does not matter if Californians lack access to facilities to recycle the item in their area. Nor does it matter that there is no viable market for the particular material, such that after it is sorted at recycling centers, it ultimately is incinerated or landfilled.

Believing that consumers have a right to know whether items can be recycled in California, the Legislature rejected Plaintiffs' definition of "recyclable." SB 343 states that for a product to be labeled as "recyclable" it must be of a material type and form that is widely collected, sorted, and recycled in California, as measured by

---

[1] All of Defendant's Exhibits in Support of this Opposition are attached to the Declaration of Megan Richards. Exhibits 1 through 5 are judicially noticeable, and discussed in Defendants' Request for Judicial Notice. The remainder of the exhibits consist of articles and studies. Courts customarily rely on similar hearsay evidence at the preliminary injunction stage, when parties typically have not had sufficient time to develop an evidentiary record. *See, e.g., Mullins v. City of New York*, 626 F.3d 47, 52 (2d Cir.2010) ("[H]earsay evidence may be considered by a district court in determining whether to grant a preliminary injunction.").

Def. Rob Bonta's Opp. to Pls.' Motion for a Pre. Injunction (3:26-cv-01675)

a 60 percent collection and 60 percent sortation criteria. Individual products must also be designed to ensure that they do not include components that would prevent recyclability or specified harmful additives, such as perfluoroalkyl substances (PFAs). SB 343's requirements aim to ensure that recyclability claims reflect whether consumers can reasonably cause the item to be recycled.

The Court should deny the Plaintiffs' motion for preliminary injunction. As a threshold matter, Plaintiffs have failed to establish standing because they have not identified specific harm suffered by individual members of the institutional plaintiffs. Nor have Plaintiffs shown a likelihood of success on their facial constitutional claims. Commonly understood words like "routinely" give notice of the prohibited conduct. The Legislature's requirement that products and packaging be designed without components that prevent recyclability also is not vague.

Plaintiffs also fail to show that they are likely to prevail with their claim that SB 343 is an unconstitutional restraint on speech. California has a substantial interest in regulating environmental marking claims to reduce consumer confusion and deception, decrease contamination in recycling bins, and improve the economic viability of recycling streams. SB 343 directly addresses these interests and is not more extensive than necessary to accomplish its goals. For these reasons, and those discussed below, the Court should deny Plaintiffs' motion.

## I. THE LEGISLATURE PASSED SB 343 TO PROTECT CONSUMERS AND ADDRESS PROBLEMS WITH RECYCLING IN CALIFORNIA

SB 343 addresses several issues the Legislature identified with recycling in California, including (1) consumer confusion, which often causes (2) the contamination of recycling streams with materials that are not recyclable; which in turn causes (3) the reduced processing of bona fide recyclable material. The primary source of consumer confusion is false advertising of products as recyclable.

Californians regularly place materials into recycling bins that have no viable process for becoming raw material for new products. Def. Ex. 2, p. 180; Def. Ex. 1,

p. 43. This contamination of the recycling stream adds to the cost of processing materials for recycling because the non-recyclable materials must be separated from materials that are actually recyclable. *Id.* Often these materials, such as plastic bags and films, jam sorting machines. Def. Ex. 1, p. 107. They also find their way into bales of sorted materials, lowering the value of the bales, often to the point where they have no market value and must be disposed of in landfills or burned. Def. Ex. 2, p. 180; see also Def. Ex. 5, pp. 239-240 (explaining costs of contamination).

California's Legislature declared it a public policy of the State "that environmental marketing claims, whether explicit or implied, should be substantiated by competent and reliable evidence to prevent deceiving or misleading consumers about the environmental impact of plastic products." Cal. Pub. Res. Code § 42355.5(a). Further, the Legislature declared that "claims related to the recyclability of a product or packaging be truthful in practice and accurate." Pub. Resources Code § 42355.5(b). According to California's lawmakers, "Consumers deserve accurate and useful information related to how to properly handle the end of life of a product or packaging." *Id.*

SB 343 requires people to ensure their goods are recyclable in California before they advertise them as recyclable. Section 42355.51 prohibits a person from offering a product or packaging for sale where a deceptive or misleading claim about the recyclability of the product or packaging has been made. "[A] product or packaging that displays a chasing arrows symbol, or any other symbol or statement indicating the product or packaging is recyclable, or otherwise directing the consumer to recycle the product or packaging, is deemed to be a deceptive or misleading claim…unless the product or packaging is considered recyclable in the state pursuant to subdivision (d) and is a material type and form that routinely becomes feedstock[2] used in the production of new products or packaging." Pub.

---

[2] As used in the California Public Resources Code, "feedstock" is raw material used in the production of a new product. *See e.g.* Cal. Pub. Res. Code

(continued…)

Def. Rob Bonta's Opp. to Pls.' Motion for a Pre. Injunction (3:26-cv-01675)

Res. Code § 42355.51(b)(1).

SB 343 states that:

Subject to paragraph (3) [listing exceptions based on product design and additives], a product or packaging is considered recyclable in California if based on information published by the department…, the product or packaging is of a material type and form that meets both of the following requirements:

(A) The material type and form is collected for recycling by recycling programs for jurisdictions that collectively encompass at least 60 percent of the population of the state.

(B) (i) The material type and form is sorted into defined streams for recycling processes by large volume transfer or processing facilities…with the defined streams sent to and reclaimed at a reclaiming facility consistent with the requirements of the Basel Convention.

*Id.* at (d)(2).

The Governor signed SB 343 into law on October 5, 2021. "[T]o provide information to the public sufficient for evaluating whether a product or packaging is recyclable in the state according to the criteria set forth [in the law] and are of the material types and forms that routinely becomes feedstock used in the production of new products and packaging," the Legislature tasked the California Department of Resources, Recycling and Recovery (CalRecycle) with publishing a material characterization study stating which materials were collected and sorted for recycling in California. *Id.* at (d)(1). The Legislature provided that the definition of "recyclable" would take effect 18 months after CalRecycle published its study. *Id.*

CalRecycle's study, published April 4, 2025, shows the waste collected by residential curbside recycling programs, the materials sorted by California large volume transfer/processing facilities, and the results of a sampling of recyclable materials. Pls.' Ex. E, at 38. By hand-sorting waste materials, CalRecycle identified whether materials were found in the appropriate bales aggregated for sale and processing as recyclable material, or found in the inappropriate bales (as

§ 42005(b)(3) ("industrially usable feedstocks"); *Id.*, § 42390 ("Recycled material" means feedstock material from any of the following that has been diverted from landfill disposal…).

contaminants) or sorted into materials that were destined for disposal. *Id.*, at 52. CalRecycle published its study with an appendix that lists and describes each of the material types and forms that it used to classify waste. *See* Pls' Ex I, starting at p. 477. CalRecycle is required to update its material characterization study every five years, with the first update being issued in 2027. *Id.* at (d)(1)(B). When materials fall below 60 percent in subsequent CalRecycle updates, they can be sold under a safe harbor provision that allows sales of goods manufactured up to 18 months after the date the department updates a study, so long as the product or packaging would have been considered recyclable under the previous study. Cal. Bus. & Prof. Code § 17580(a)(6); Cal. Pub. Res. Code § 42355.51(b)(2)

CalRecycle's material characterization study focused on large volume transfer processing facilities, which are the industrial facilities that collect and sort recyclables from curbside recycling programs. Separate provisions in SB 343 apply to products or packaging that are not collected by these large processing facilities. A product may be recyclable in the state if it has a demonstrated recycling rate of 75 percent. *Id.* at (d)(4). Manufacturer take-back programs may also qualify products to be considered recyclable "if the non-curbside collection program recovers at least 60 percent of the product or packaging in the program and the material has sufficient commercial value…" *Id.* at (d)(5). This amount is set to increase to 75 percent on January 1, 2030. *Id.* Later legislation gave CalRecycle the authority to identify materials that were trending towards meeting these goals and to designate them as "recyclable." Cal. Pub. Res. § 42061(a)(3)(B).

## II.    PLAINTIFFS FILE THIS LAWSUIT TO INVALIDATE SB 343

Plaintiffs filed their lawsuit against the Attorney General on March 17, 2026, and their First Amended Complaint for Declaratory and Injunctive Relief on April 7, 2026. Plaintiffs are trade associations and commissions who represent members in the food and packaging industries. The Amended Complaint alleges that SB 343 violates the First Amendment and is unconstitutionally vague in violation of the

Due Process Clause. Both causes of action are brought as facial challenges. Plaintiffs filed a motion for preliminary injunction on April 24, 2026. The Attorney General opposes Plaintiffs' motion for a preliminary injunction.

## LEGAL STANDARD FOR PRELIMINARY INJUNCTION

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). "A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Id*. Where the party opposing injunctive relief is a government entity, the third and fourth factors "merge." *X Corp. v. Bonta*, 116 F.4th 888, 897 (9th Cir. 2024). The likelihood of success on the merits is the "most important factor in the preliminary injunction analysis" and is "all the more critical when a plaintiff alleges a constitutional violation and injury." *Meinecke v. City of Seattle*, 99 F.4th 514, 521 (9th Cir. 2024) (quotation marks omitted). "[I]n the First Amendment context, the moving party bears the initial burden of making a colorable claim that its First Amendment rights have been infringed, or are threatened with infringement, at which point the burden shifts to the government to justify the restriction on speech." *Cal. Chamber of Com. v. Council for Educ. & Rsch. on Toxics*, 29 F.4th 468, 478 (9th Cir. 2022) (quotation marks omitted).

## ARGUMENT

### I. PLAINTIFFS HAVE NOT ESTABLISHED STANDING

For federal jurisdiction to exist, a plaintiff must have standing as required by Article III. The "'irreducible constitutional minimum' of standing consists of three elements." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citation omitted). "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* The burden is on the plaintiff to demonstrate

standing under the applicable standards at the stage of litigation at which standing is challenged. *Id.* "At the preliminary injunction stage, plaintiffs must make a clear showing of each element of standing." *Townley v. Miller*, 722 F.3d 1128, 1133 (9th Cir. 2013). Organizations, such as plaintiffs here, can assert their members' claims only when they establish "that [their] members would have standing to sue on their own." *NetChoice, LLC v. Bonta*, 152 F.4th 1002, 1013 (9th Cir. 2025). An organization seeking to assert associational standing must, at a minimum, plead "'specific allegations [that] establish that at least one *identified member* had suffered or would suffer harm.'" *Associated Gen. Contractors of Am., San Diego Chapter, Inc. v. Cal. Dep't of Transp.*, 713 F.3d 1187, 1194 (9th Cir. 2013) (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 494 (2009) (emphasis original)). This "'requirement of naming the affected members has never been dispensed with in light of statistical probabilities.'" *Associated Gen. Contractors*, 713 F.3d at 1194 (quoting *Summers*, 555 U.S. at 494)).

Plaintiffs submit declarations from industry associations and commissions, without identifying particular members and their alleged difficulties complying with particular provisions of SB 343. These declarations have mostly boilerplate pronouncements about each association or commission's members' support of recycling and general difficulty in determining how to meet the obligations of SB 343. The declarations fail to provide specific examples of any particular member and their intent to engage in speech that would be prohibited by SB 343, or any particular member's difficulty in applying allegedly vague requirements of SB 343.

Nor do the declarations provide evidence of imminent intent by the Attorney General to enforce SB 343 against their members. Plaintiffs state that "Defendant has brought at least three lawsuits on behalf of the State of California, each time citing section 42355.51 in arguing that businesses had falsely claimed their products are recyclable" (Mot. at 4). None of the three cited cases where the Attorney General referenced SB 343 were brought under section 42355.51 or use

12

the presumption in section 42355.51 to establish that products were not recyclable.[3] Nor do these lawsuits seek to establish any facts on the basis of strict liability.

As further examples, Plaintiffs' motion states that SB 343 is vague because it incorporates the APR Design Guide, yet no plaintiff presents an example of relying on the APR Design Guide in a way that would be inconsistent with the requirements of SB 343. Nor do plaintiffs identify any specific product or packaging that would have an uncertain status under SB 343 on the basis of the APR Design Guide diverging from other requirements of the law.

Many of plaintiff organizations also generally allege that they participate in take-back recycling programs, but do not specifically state which take-back programs they participate in and why those programs cannot comply with SB 343. Nor do they state why they could not utilize section 42061(a)(3)(B)'s provision to request an exemption from CalRecycle. For these reasons, plaintiffs have failed to demonstrate standing to bring this lawsuit.

## II. PLAINTIFFS ARE NOT LIKELY TO SUCCEED IN SHOWING THAT SB 343 IS UNCONSTITUTIONALLY VAGUE.

### A. Plaintiffs are unlikely to show that the definition of "recyclable" in SB 343 is unconstitutionally vague

A law is unconstitutionally vague when it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *United States v. Williams*, 553 U.S. 285, 304 (2008). "[P]erfect clarity is not required even when a law regulates protected speech." *California Teachers Ass'n v. State Bd. of Educ.*,

---

[3] While these lawsuits cited provisions of SB 343 for various purposes, none relied on section 42355.51(b)'s presumption to establish that a recyclable claim about a product or packaging is deceptive. The complaints against Novolex Holdings, LLC et al. and Revolution Consumer Solutions (CA), LLC et al. cited CalRecycle's Covered Materials Categories (CMC) List and section 42355.51(d)(2) as further evidence that the material at issue in those lawsuits, plastic bags, were not substantially collected or sorted for recycling in California. The 147-page complaint against ExxonMobil, meanwhile, mentions SB 343 just once in passing, as evidence of the allegation that the California legislature has taken multiple approaches to reducing plastic waste in California.

Def. Rob Bonta's Opp. to Pls.' Motion for a Pre. Injunction (3:26-cv-01675)

271 F.3d 1141, 1150 (9th Cir. 2001). "Condemned to the use of words, [courts] can never expect mathematical certainty from our language." *Grayned v. City of Rockford*, 408 U.S. 104, 110 (1972). "Therefore, even when a law implicates First Amendment rights, the constitution must tolerate a certain amount of vagueness." *Cal. Teachers*, 271 F.3d at 1151. Furthermore, "speculation about possible vagueness in hypothetical situations not before the Court will not support a facial attack on a statute when it is surely valid 'in the vast majority of its intended applications.'" *Tuscon v. City of Seattle*, 91 F.4th 1318, 1330 (9th Cir. 2024) (quoting *Hill v. Colorado*, 530 U.S. 703, 733 (2000)).

SB 343 requires that a product or packaging labeled as recyclable "meets both of the following requirements:" be of a "material type and form [that] is [(A)] collected for recycling by recycling programs for jurisdictions that collectively encompass at least 60 percent of the population of the state," and (B) "sorted into defined streams for recycling processes by large volume transfer or processing facilities . . . that process materials and collectively serve at least 60 percent of recycling programs statewide" and that send the defined streams to be "reclaimed at a reclaiming facility consistent with the requirements of the Basel Convention. Cal. Pub. Res. Code § 42355.51(d)(2)(A) & (B)(i). In addition to this 60/60 requirement, packaging and products must also meet design requirements, related to whether the product has additional components and additives that would prevent it from being recycled, notwithstanding whether it is made of a material that is technically capable of being recycled. *Id.*, at (d)(3).

Many product types and forms clearly meet, or clearly fail, these requirements. For example, most material types and forms that relate to paper exceed the 60/60 thresholds, as described in detail in CalRecycle's report. *See* Pls.' Ex. I, at 62. And many other material types and forms meet the 60/60 requirements: clear glass containers; aluminum cans; tin cans; and PET clear bottles. Other items clearly fail and are so designated in CalRecycle's report, such as various films, including

plastic bags, solid polystyrene hinged containers, aseptic containers, and mailing pouches (unless they are paper only); composite food service paper and packaging (described in detail in Ex. I, Appx. A, at p.  67); plastic lids; and plastic produce baskets. CalRecycle's report includes Table J1, which "displays all material types and forms which met criteria set forth by CalRecycle, demonstrating sufficient evidence of effective sorting within the study" and Table J2, showing material types and forms that "failed to meet the criteria, demonstrating ineffective sorting and evidence of potential contamination." *See id.*, Ex. I, at pp. 181, 195 (start of Table J2). These provisions, and others described above, allow a substantial number of materials to be called "recyclable" while clearly proscribing many others. Thus, the general directives of SB 343 are sufficiently clear to give individuals fair notice of when they may or may not make a recyclability claim.

In their Motion for a Preliminary Injunction, plaintiffs ask the Court to preliminarily enjoin California's entire legislative scheme. Plaintiffs' challenge focuses on four specific areas of alleged vagueness in SB 343. Because any questions that Plaintiffs present occur only at the margins of SB 343, Plaintiffs fail to show a likelihood of prevailing on their facial vagueness challenge.

### 1.    "Routinely Becomes Feedstock"

SB 343 requires that before a person uses a recyclability claim on a product or package, the person must ensure that the product is "considered recyclable in the state and is of a material type and form that routinely becomes feedstock used in the production of new products or packaging." Cal. Pub. Res. Code § 42355.51(b)(1); *see also id.*, § 42355.51 (d)(2). "Routinely" means "as part of a regular occurrence." *Merriam-Webster.com/dictionary/routinely.* Here, "routinely becomes feedstock" means that the product or packaging is "of a material type and form" that, when it is collected and sorted for recycling, will become feedstock for the production of new materials as part of a regular occurrence, or regularly.

Def. Rob Bonta's Opp. to Pls.' Motion for a Pre. Injunction (3:26-cv-01675)

A material type and form that is collected and sorted in sufficient quantities to meet the 60/60 requirement, could fail to be reclaimed at a reclaiming facility and turned into feedstock, if, for example, large volume processors are unable to find a market for the material type and form. *See e.g.* Def. Ex. 6, p. 314. Plaintiffs focus on the word "routinely," arguing that such a threshold is unconstitutionally vague. The requirement reflects the legislature's intent that products would not be labeled "recyclable" in California unless the conditions exist in California for that product to actually be recycled as a matter of course, or routinely. This requirement is easily understandable. If large volume processors cannot find a market for a material type and form, it does not routinely become feedstock, and thus labeling products of that type and form "recyclable" would be misleading.

### 2.    Basel Convention

Plaintiffs argue that Section 42355.51(d)(2)(B)(i), which requires that material types and forms be sorted into "defined streams sent to and reclaimed at a reclaiming facility consistent with the requirements of the Basel Convention," "gives no clue as to what information a business must obtain to make that determination, or from whom to obtain it." Mot. 11. The Basel Convention requirement is contained within SB 343's requirement that a product or packaging be of a material type and form that is sorted into defined stream for recycling…with the defined streams sent to and reclaimed at a reclaiming facility consistent with the requirements of the Basel Convention." Cal. Pub. Res. Code § 42355.51(d)(2)(B). SB 343 does not specifically require CalRecycle to determine whether waste streams or end markets are operating "consistent with the requirements of the Basel Convention." Mot. at 11, citing RJN Ex. D, at 32. CalRecycle's material characterization study does not draw any conclusions about consistency or inconsistency with the Basel Convention. The study simply identifies by type and form which materials are commonly collected, sorted, sold, or transferred for recycling in California. The Attorney General does not intend to enforce the Basel

Convention requirement independently from the 60 percent sorting requirement against plaintiffs during the course of this litigation until the court can rule on the merits of their claim.

### 3. APR Design Guide Criterion

There is no ambiguity in SB 343's cross-reference to industry standards. To be considered recyclable, plastic packaging must be "designed to not include any components, inks, adhesives, or labels that prevent the recyclability of the packaging according to the APR Design Guide…" Cal. Pub. Res. Code § 42355.51(d)(3). Plaintiffs agree that the "[t]he Legislature can of course incorporate technical standards" but state that the law impermissibly rests speech liability on external, nongovernmental sources that are subject to change." Pls.' Motion at 13. Importantly, no plaintiff presents any example of a specific piece of plastic packaging which would have an uncertain status under SB 343 on the basis of the APR Design Guide diverging from other requirements of the law.

Plaintiff's hypothetical scenarios of rapidly changing industry standards and inconsistent requirements miss the mark because this provision of SB 343 focuses on the manufacturer's design, not on whether the end-product continually meets changing industry standards. § 42355.51(d)(3)(A). The statute requires that a product be "*designed* to not include any components, inks, adhesives, or labels that *prevent* recyclability of the packaging according to the APR Design Guide…" A manufacturer that consults the APR Design Guide and *designs* a product that conforms to the APR Design Guide meets the requirements of this particular subsection. To read the subsection as incorporating compliance with the APR Design Guide in real-time would read the word "designed to" out of the statute.

Plaintiffs also suggest the law is vague because the APR Design Guide uses different terminology and categories for designs than SB 343. Theoretically (again Plaintiffs give no examples of actual products) a manufacturer could design a product that has "[f]eatures that present known technical challenges…but are

Def. Rob Bonta's Opp. to Pls.' Motion for a Pre. Injunction (3:26-cv-01675)

grudgingly tolerated" by recyclers, such that it falls under APR's "needs improvement" category. Arguably the manufacturer will have complied with (d)(3)(A)'s requirement to design packaging to not include any components that *prevent* recycling because recyclers grudgingly allow such features. That close cases may arise in *applying* this test does not make it unconstitutional, given there will always be an inherent but permissible degree of uncertainty in applying any standards-based test." *United States v. Lucero*, 989 F.3d 1088, 1102 (9th Cir. 2021) (quoting *Yamada v. Snipes*, 786 F.3d 1182, 1190-91 (9th Cir. 2015)). To invalidate an entire statutory scheme on the basis of vagueness, plaintiffs must do more than concoct imaginary difficulties. Plaintiffs fail to show how this provision would be vague in a substantial number of cases.

### 4.    Ensures or Prevents Recyclability

Plaintiffs' similar arguments about subdivision (d)(3)(B) of Cal. Pub. Res. Code § 42355.51 also fail to show how the provision would be vague in a substantial number of cases. This subdivision requires the product or packaging be "designed to ensure recyclability and does not include any components, inks, adhesives, or labels that prevent the recyclability of the product or packaging." Plaintiffs argue that the statute offers no guidance on what "ensure" recyclability means, or what to "prevent" it means. But the plain meaning of these words, in context, are reasonably clear: a product should be designed without known impediments to recyclability, including those listed in the statute: "components, inks, adhesives, or labels that prevent the recyclability of the product or packaging."

Plaintiffs state that their members cannot determine with any degree of confidence what inks or other components prevent recycling. But plaintiffs' alleged difficulty in making this factual determination does not make the law vague. The factual requirement that products be designed to not include components that prevent recyclability is possible to determine. "What renders a statute vague is not the possibility that it will sometimes be difficult to determine whether the

incriminating fact it establishes has been proved; but rather the indeterminacy of precisely what the fact is." *U.S. v. Williams*, 553 U.S. 285, 306 (2008). Following this guiding principle, the Ninth Circuit has determined that it was constitutionally permissible for a law to ban certain types of social media feeds even if it might be difficult to determine whether certain cases met the statutory criteria. *NetChoice, LLC v. Bonta*, 152 F.4th 1002, 1023 (9th Cir. 2025). As the court explained, "In some cases, it might be difficult to determine whether a feed is based on a user's 'follows' or 'other information.' Yet there is no question about the statutory criteria. And that is the only indeterminancy that makes a law vague." *Id.* (citing *Williams*, 553 U.S. at 305-306).  Plaintiffs can look to CalRecycle's reports for guidance on what recycling centers view as contaminants. They may also need to consult industry guidance or work with recycling experts. This may be additional work for a manufacturer who wishes to use a new product design and advertise it as recyclable, but requiring companies to ensure their design choices do not prevent the recyclability of their "recyclable" product is permissible, and the requirement is not vague.

### III. PLAINTIFFS ARE NOT LIKELY TO SUCCEED IN SHOWING THAT SB 343 FACIALLY VIOLATES THE FIRST AMENDMENT.

Plaintiffs, composed almost entirely of industry associations, have chosen to pursue their First Amendment claim as a facial challenge. As the Supreme Court has admonished, this decision "comes at a cost." *Moody v. NetChoice, LLC*, 603 U.S. 707, 723 (2024). "For a host of reasons, courts usually handle constitutional claims case by case, not en masse." *Id.* "Claims of facial invalidity often rest on speculation about the law's coverage and its future enforcement" and "facial challenges threaten to short circuit the democratic process by preventing duly enacted laws from being implemented in constitutional ways." *Id.* The Supreme Court "has therefore made facial challenges hard to win." *Id.*

## A.   SB 343 regulates misleading commercial speech

Laws regulating commercial speech are generally subject to intermediate scrutiny. *See Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n*, 447 U.S. 447, 563-66 (1980). Speech clearly falls within the "core notion of commercial speech" when "it 'does no more than propose a commercial transaction.'" *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 66 (1983) (citation omitted). Courts have broadened this category to other product-specific claims, such as a statement of alcohol content on a label of beer, *Rubin v. Coors Brewing Co.*, 514 U.S. 476, 481-82 (1995), and statements on an attorney's letterhead and business cards identifying the attorney as a CPA, *Ibanez v. Fla. Dept. of Bus. & Prof. Reg., Bd. of Acc'y*, 512 U.S. 136, 142 (1994). This expanded category of commercial speech may be identified using three non-dispositive factors identified in *Bolger*: (i) whether the speech occurs within an advertising format; (ii) whether the speech is in reference to a specific product; and (iii) the underlying economic motive of the speaker. *NetChoice,* 113 F.4th at 1119; *Bolger*, 453 U.S. at 66-67. "The combination of all these characteristics…provides strong support" for a "conclusion that [the analyzed speech is] properly characterized as commercial speech." *Id.* at 67.

In *Assoc. of National Advertisers, Inc. v. Lungren,* the Ninth Circuit determined that a previous law that regulated the use of terms including "recyclable" and "biodegradable" regulated only commercial speech. 44 F.3d 726, 728 (9th Cir. 1994). Approving of the district court's application of the *Bolger* factors to first reach this conclusion, the Ninth Circuit quoted the lower court's reasoning:

> First, by its explicit terms, the statute regulates representations concerning a specific consumer good which take the form of advertisements or product labels. Second, section 17508.5 specifically requires that the representation be made about a specific consumer good which a firm manufactures or distributes. Third, there is little doubt that by touting the environmental benefits of consumer products, plaintiffs' association members hope to capture a portion of the "green market".

*Id.* at 729 (quoting *Assoc. of Nat. Advertisers, Inc. v. Lungren*, 809 F.Supp. 747, 754 (N.D. Cal. 1992).

SB 343 likewise involves commercial speech. The first *Bolger* factor is met because SB 343 regulates speech within an advertising format. SB 343 applies to symbols and writing that appear on a product or packaging.

As to the second *Bolger* factor, SB 343 does not involve claims about recyclability in general, but instead claims that a specific product is recyclable, or claims that would lead a consumer to believe that is the case.

The third *Bolger* factor is met because Plaintiffs have an underlying economic motivation for conveying to consumers that their products are recyclable. This factor "asks whether the speaker acted primarily out of economic motivation, not simply whether the speaker had any economic motivation." *Arixx, LLC v. NutriSearch Corp.*, 985 F.3d 1107, 1116-17 (9th Cir. 2021). The court in *Lungren* had "little doubt" that manufacturers used environmental claims, such as "recyclable," to capture the "green market." *Lungren*, at p. 728. The same is true here with Plaintiffs' recycling claims.

### B.    SB 343 is constitutional under the *Central Hudson* factors

If commercial speech is lawful and not misleading, courts will analyze it to determine if it survives intermediate scrutiny under the four-part test introduced in *Central Hudson*. 447 U.S. at 566. First, the court "must determine whether the expression is protected by the First Amendment," which involves ensuring that the speech "must concern lawful activity and not be misleading." *Id.* at 566. Second, the court "ask[s] whether the asserted governmental interest is substantial." Third, the court will "determine whether the regulation directly advances the governmental interest asserted." *Id.* And finally, the court asks "whether it is not more extensive than is necessary to serve that interest." *Id.*

### 1. First Amendment protection

For the purposes of this opposition, the Attorney General agrees with Plaintiffs that the commercial speech regulated by SB 343 is "potentially misleading." *Lungren*, 44 F.3d at 731-32. Accordingly, we move on to the second factor.

### 2. California's interest is substantial

The second factor analyzes the State's asserted governmental interest in regulating the commercial speech. As plaintiffs concede, "California has substantial governmental interests in ending consumer confusion and improving recycling rates." *See* FAC ¶ 131; see also Mot. at 17 (stating that "Plaintiffs do not dispute that). But California's interests in regulating environmental marketing terms go beyond ending consumer confusion and improving recycling rates, and include furthering the "public policy of the state that environmental marketing claims, whether explicit or implied, should be substantiated by competent and reliable evidence to prevent deceiving or misleading consumers about the environmental impact of plastic products." Pub. Resources Code § 42355.5(a). "For consumers to have accurate and useful information about the environmental impact of plastic products, environmental marketing claims should adhere to uniform and recognized standards, including those standard specifications established by the American Society for Testing and Materials." *Id.* In passing SB 343, the Legislature also found and declared "that it is the public policy of the state that claims related to the recyclability of a product or packaging be truthful in practice and accurate. Consumers deserve accurate and useful information related to how to properly handle the end of life of a product or packaging." *Id.* at (b).

California's interests also include reducing contamination of recyclable materials, lowering waste volume, and improving recycling rates. Def.'s Ex. DD, p. 1557. Although many plastics are labeled as recyclable and placed in recycling bins by consumers, less than 15% of single-use plastic is actually recycled. *Id.* SB 343 is intended to reduce the burden to material recovery facilities by reducing the

Def. Rob Bonta's Opp. to Pls.' Motion for a Pre. Injunction (3:26-cv-01675)

bulk of unrecyclable materials that consumers place into recycling bins: "SB 343 would reduce the burden on waste haulers and MRFs from collecting, sorting, and disposing of materials from blue bins that ultimately will not be recycled." *Id.*, p. 1558.

Accordingly, the Legislature asserted substantial state interests when it passed SB 343.

### 3. SB 343 directly addresses the interests asserted

SB 343 directly addresses the interests asserted by prohibiting recycling symbols or recycling instructions on items that are not actually recyclable. Under the third prong of *Central Hudson*, "a governmental body seeking to sustain a restriction on commercial speech must demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree." *Edenfield v. Fane*, 507 U.S. 761, 770–71 (1993). As a result, a commercial speech restriction "cannot be sustained if it 'provides only ineffective or remote support for the government's purpose,' ... or if there is 'little chance' that the restriction will advance the State's goal." *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 566 (2001) (quotation omitted). The government can justify its restriction by reference to studies, anecdotes, history, consensus, or "simple common sense"; it need not rely on empirical data accompanied by excessive background information. *See Fla. Bar v. Went For It, Inc.*, 515 U.S. 618, 628 (1995).

Improving Recycling Rates – Immediately and Long Term

Plaintiffs argue that SB 343 will not improve recycling rates and speculate that SB 343 will spawn confusion and undermine recycling rates. Plaintiffs' argument continues to focus on the rate at which people put items in the recycling bin, rather than the rate at which items are processed into new products. SB 343's focus is the latter, which the Legislature found to be the more pressing problem in California. SB 343 is designed to address cross-contamination in recycling streams, which

Def. Rob Bonta's Opp. to Pls.' Motion for a Pre. Injunction (3:26-cv-01675)

makes recycling less effective, and to eventually increase the number of products that are designed to be recyclable in California.

Californians place materials in the blue bin when instructed to do so. The problem that SB 343 addresses is that many of the materials Californians place into the bin cannot be used as raw material for new products, even though they may be marketed as recyclable and collected by curbside collection programs. The presence of these recyclable-in-theory but non-recyclable-in-reality materials in the recycling stream impacts the recyclability of materials that do have a viable path to becoming feedstock for making new products. When facilities are unable to sort out readily recyclable materials from unrecyclable contaminants, all of the materials end up in the same place: the landfill. Pls. Ex. DD, at p. 1558.

In addition to decreasing the rate at which recyclable products can be turned into feedstock, the presence of non-recyclable materials in the recycling stream weakens the recycling market. As CalRecycle's materials report shows, contamination in recycling is pervasive. In its sampling, CalRecycle found high levels of cross-contamination of plastics in bales of other sorted materials. *See* Pls.' Ex. I. Removing the products adds to the end cost of reclaiming marketable materials. The more it costs to reclaim the materials, the more expensive the end product becomes. This weakens the recyclables market because expensive recycled feedstock cannot compete with virgin materials. Likewise, plastic lots that are contaminated with non-recyclable materials sell for less, or not at all. Contamination can spoil loads of otherwise recyclable materials, causing the entire collection of plastics to be commercially unviable.

In 2020, California's Statewide Commission on Recycling Markets and Curbside Recycling proposed a label restriction to stop plastic bags and films from being labeled recyclable because of this contamination problem. *See* Def. Ex. 1, at p. 107. According to the Commission's report, flexible plastic materials, some of which falsely stated they are "recyclable," are harming curbside recycling systems

24

because they have no market-reclaim value and are clogging machinery in material recovery facilities. *Id.* at 105, 107-109. They also contaminate and lower the quality and material value of other recyclables. *Id.*

SB 343 immediately and directly addresses this cross-contamination by plastic films and other non-recyclables by requiring manufacturers to ensure that the products it markets as "recyclable" are actually capable of being processed into new goods. SB 343 recognizes, and Plaintiffs and Defendant seem to agree, that consumers rely on recycling symbols as a "cue" for whether a material is recyclable. Motion, at p. 21; *see also* Def. Ex. 1, at p. 105. SB 343 will result in this cue being removed from products that currently have no recyclable market and which only contaminate the recycling stream.

SB 343 holds producers responsible for creating products that have an end-of-life management plan. This aligns with the policy recommendations of California's Statewide Commission on Recycling Markets and Curbside Recycling. RJN Ex. 1 at pp. 20, 23, 98. These recommendations included that producers be held responsible to create products that have an end-of-life management plan and that they be responsible for "proper labeling and public education indicating if the product is…recyclable" and "ensur[ing] that labels, packaging, or additives are not contaminants to recycling or composting systems." *Id.* The report cited as an example "non-essential full body shrink sleeves and other labels" contained on some plastics, which impede recoverability and economic viability of otherwise recyclable materials. *Id.* at 98. Holding producers who want to use recycling symbols to advertise their products responsible for ensuring that their product and packaging are actually recyclable directly addresses the State's interest in increasing recycling rates.

Plaintiffs state that SB 343 does not promote truth in labeling. Motion at 21. This is wrong. Not only does SB 343 require that products be labeled accurately; it also requires that companies selling their products actually have evidence of the

Def. Rob Bonta's Opp. to Pls.' Motion for a Pre. Injunction (3:26-cv-01675)

environmental claims that they make. It is common sense that holding producers of "recyclable" products accountable for knowing whether their products can, in practice, be recycled, is a necessary predicate to truthful labeling.

Protecting Consumers and the Public from Greenwashing

SB 343 also directly addresses the State's interests by protecting the public from greenwashing, which is the practice of falsely conveying that a company's products are more environmentally friendly than they really are. *See* Pls.' Ex. B, at p. 14. Limiting recyclability claims to products that are likely to be recycled and turned into new products—rather than allowing them on products only theoretically capable of becoming new products—directly addresses the State's interests. Allowing recyclability claims on products not likely to be turned into new products also gives an unfair advantage over businesses who spend resources to design and produce products that are known to be recyclable. By requiring businesses to determine actual recyclability before using recyclability claims to sell more products, SB 343 directly protects both consumers and businesses.

**4. SB 343 is not more extensive than necessary**

SB 343 is not more extensive than necessary. First, Plaintiffs overstate the breadth of SB 343. Section 42355.51 is not a "complete ban on any discussion" of recyclability. *See* Mot. at 23. For items that fall outside California's definition of recyclable, it is a ban on using the "chasing arrows symbol, a chasing arrows symbol surrounding a resin identification code, or any other symbol or statement indicating the product or packing is recyclable, or otherwise directing the consumer to recycle the product or packaging." While this would prevent many current misleading recycling symbols and statements, the law is not a complete ban on discussion of recyclability. Manufacturers may discuss recyclability on their products so long as their language does not "indicat[e] the product or packaging is recyclable" or "direct[] the consumer to recycle the product or packaging." But the

Def. Rob Bonta's Opp. to Pls.' Motion for a Pre. Injunction (3:26-cv-01675)

label could say, for example: "Not recyclable in most areas; check locally," or include a QR code on the package with details regarding the product's recyclability.

None of the alternatives offered by plaintiffs would be as effective at fixing California's trash problem. Permitting or requiring labels to be accompanied by qualifying language is California's status quo, which has not reduced consumer confusion. It is common sense that consumers use recycling symbols to efficiently make decisions when they shop for products or dispose of trash. A label may not say "recyclable," have the chasing arrows, or direct the consumer to recycle it (unless the criteria for recyclability are met) because those symbols and language on a product cause consumers to place the product or packaging in the recycling bin. Qualifying language is unlikely to change that behavior.

General consumer laws to police this conduct will also not result in the kind of structural change the Legislature sought to bring about. SB 343 puts the onus on businesses to determine if their products are actually recyclable before they make that claim to the public. If they are not sure if their product can be recycled, they can choose to redesign it in a way that would make it recyclable. Or they can choose to forgo placing the recyclability symbol. Either action would increase successful recycling, as the former would reduce contamination, and the latter would replace a non-recyclable product with a product that is designed to be readily recyclable.

Plaintiff also suggests that California could instead regulate certain materials or contaminants rather than regulating recycling symbols. But, as Plaintiffs' declarations suggest, some materials are designed with food safety and other requirements in mind. If these materials are not recyclable, it is not clear that a ban on the material would be less restrictive than restriction on calling the package recyclable. Furthermore, California should be able to use its Legislative judgment to determine when a ban or a labeling restriction would better further its goals.

27

For the above reasons, SB 343 is a constitutional regulation of commercial speech under *Central Hudson*.

## IV.   PLAINTIFFS WILL NOT FACE IRREPARABLE HARM

Plaintiffs have not shown their members would suffer irreparable harm in the absence of preliminary injunctive relief. As discussed above, plaintiffs do not present concrete examples of named members who have products or packaging that would not be recyclable under SB 343. Plaintiffs have also failed to show that they are likely to succeed on their constitutional challenge under the First Amendment and Due Process Clause.

## V.   THE BALANCE OF EQUITIES & PUBLIC INTEREST

When the government is a party, the balance of equities and the public interest factors of *Winter* merge. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014). Here, these factors tip strongly against granting Plaintiffs' motion.

As explained above, Plaintiffs' members will not be harmed by the Court's denial of injunctive relief because SB 343 does not violate their rights. The public interest is served in this case by allowing SB 343 to take effect. "The public interest may be declared in the form of a statute." *Golden Gate Rest. Ass'n*, 512 F.3d at 1127 (internal quotation and citation omitted), *overruled on other grounds by Nken v. Holder*, 556 U.S. 418, 434 (2009); see also *Int'l Franchise Ass'n,* 803 F.3d at 412 (public interest favors law taking effect). Allowing SB 343 to go into effect will further the Legislature's stated intent of ensuring that when goods are advertised as "recyclable," a consumer can readily cause them to be recycled. This protects the public from deceptive claims and will also improve recycling rates.

Plaintiff's delay in bringing this lawsuit also weighs against granting the requested injunction. SB 343 was signed into law on October 5, 2021—almost five years ago. And CalRecycle issued its material characterization study over a year ago. Plaintiffs' long wait to bring this challenge and motion for preliminary injunction also weighs against the court granting the requested relief.

Lastly, issuing the injunction is against the public interest because the requested relief is overbroad. "Injunctive relief . . . must be tailored to remedy the specific harm alleged." *Lamb-Weston, Inc. v. McCain Foods, Ltd.* 941 F.2d 970, 974 (9th Cir. 1991) (citations omitted).

### VI.   SEVERABILITY ANALYSIS

Should this Court find that Plaintiffs are likely to succeed on the merits of any of their claims, the Court should "revise" the statute if "the Legislature's intent clearly would be furthered by application of the revised version rather than by the alternative of invalidation." *New England*, 546 U.S. 320, 329 (2006). An unconstitutional provision "does not necessarily defeat or affect the validity of its remaining provisions." *Free Enter. Fund. v. Pub. Co. Acc'g Oversight Bd.*, 561 U.S. 477, 508 (2010). "Generally speaking, when confronting a constitutional flaw in a statute, [courts] try to limit the solution to the problem, severing any problematic portions while leaving the remainer intact." *Id.*

Courts address the severability of provisions of a state statute under state law. *NetChoice, LLC v. Bonta*, 152 F.4th at 1024. "In California, a severability clause normally calls for sustaining the valid part of the enactment.'" *Id.* (omitting citations). The provisions that Plaintiffs find vague are in the Waste Management Division of the Public Resources Code, which has a severability clause that applies to all provisions of the division. Cal. Pub. Res. § 48500. However, even in the absence of a severability clause, courts still analyze the invalid portion of the statute to determine if it is severable from the remainder of the statute. *Netchoice, LLC v. Bonta*, 113 F.4th 1101, 1124-25 (9th Cir. 2024) (citing *Calfarm Ins. Co. v. Deukmejian*, 258 Cal.Rptr. 161, 170) ("[I]t is clear that severance of particular provisions is permissible despite the absence of a formal severance clause.")

Under California law, the Court can sever provisions if (1) "they are 'grammatically, functionally, and volitionally separable,'" (2) the "invalid parts can be removed as a whole without affecting the wording or coherence of what

remains," and (3) if the "remainder [of the statute] is complete in itself. *Vivid Ent., LLC v. Fielding*, 774 F.3d 566, 576 (9th Cir. 2014).

Under each of these inquiries, the allegedly unconstitutional portions of SB 343 are severable. They are grammatically and functionally severable, because each are contained in their own clause or subdivision of the statute and each stands as an independent requirement.

The provisions are also volitionally severable. Volitional severability "depends on whether the remainder would have been adopted by the legislative body had the latter foreseen the partial invalidation of the statute." *Matosantos*, 135 Cal.Rptr.3d 683 (internal quotation marks omitted). When the Northern District of California held a previous definition of "recyclable" to be vague in *Association of National Advertisers v. Lungren*, it held that "[t]here can be no dispute that the California Legislature would have passed [the law] had they known that the definition of 'recyclable' was invalid." 809 F.Supp. 747, 762 (N.D. Cal. 1992). There is no serious dispute here either. The Legislature clearly intended to restrict the use of recycling symbols to products that are recyclable in most of California. If any portion of SB 343 is held to be invalid, severing the provision from the rest of the statute would further this clear legislative intent. It is also clear that any of the above-discussed parts, if they were unconstitutional, could be removed without affecting the wording or coherence of the statute and the remainder of SB 343 would still be complete in itself.

## CONCLUSION

For the reasons above, the Court should deny Plaintiff's Motion for a Preliminary Injunction.

Dated:  May 18, 2026

Respectfully submitted,

ROB BONTA
Attorney General of California
ANYA M. BINSACCA
Supervising Deputy Attorney General


/s/ Megan Richards
MEGAN RICHARDS
Deputy Attorney General
*Attorneys for Defendant*

31

# CERTIFICATE OF SERVICE

Case Name:   **California League of Food Producers, et al. v. Rob Bonta**          No.   **3:26-cv-01675**

I hereby certify that on <u>May 18, 2026</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

- **DEFENDANT ROB BONTA'S OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

- **DEFENDANT ROB BONTA'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF HIS OPPOSITION TO THE PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

- **DECLARATION OF MEGAN RICHARDS IN SUPPORT OF DEFENDANT ROB BONTA'S OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

- **TABLE OF EXHIBITS TO DECLARATION OF MEGAN RICHARDS**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on <u>May 18, 2026</u>, at San Francisco, California.

<table>
<tr><td>G. Guardado</td><td>/s/ G. Guardado</td></tr>
<tr><td>Declarant</td><td>Signature</td></tr>
</table>

SA2026301490
45080279