Trenton H. Norris (CA Bar No. 164781)
trent.norris@hoganlovells.com
Alexander Tablan (CA Bar No. 346309)
alexander.tablan@hoganlovells.com
Andrew Muse-Fisher (CA Bar No. 364086)
andrew.muse-fisher@hoganlovells.com
HOGAN LOVELLS US LLP
Four Embarcadero Center, 35th Floor
San Francisco, CA 94111-4024
Telephone: 415.374.2300
Facsimile: 415.374.2499

Attorneys for Plaintiffs listed in caption

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA LEAGUE OF FOOD PRODUCERS, AMERICAN FOREST & PAPER ASSOCIATION, CALIFORNIA APPLE COMMISSION, CALIFORNIA BLUEBERRY COMMISSION, CALIFORNIA GROCERS ASSOCIATION, CALIFORNIA RESTAURANT ASSOCIATION, CALIFORNIA RETAILERS ASSOCIATION, CALIFORNIA STRAWBERRY COMMISSION, CALIFORNIA TABLE GRAPE COMMISSION, CALIFORNIA WALNUT COMMISSION, CALIFORNIANS FOR AFFORDABLE PACKAGING, CONSUMER BRANDS ASSOCIATION, DAIRY INSTITUTE OF CALIFORNIA, FLEXIBLE PACKAGING ASSOCIATION, GROWER SHIPPER ASSOCIATION OF CENTRAL CALIFORNIA, OLIVE OIL COMMISSION OF CALIFORNIA, PERSONAL CARE PRODUCTS COUNCIL, PET FOOD INSTITUTE, PRINT CREATIVE ALLIANCE, SNAC INTERNATIONAL, and WESTERN GROWERS ASSOCIATION, <br><br> Plaintiffs, <br><br> v. <br><br> ROB BONTA, IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL OF THE STATE OF CALIFORNIA, | Case No. 3:26-cv-01675-WQH-JAC <br><br> **PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** <br><br> Judge: Hon. William Q. Hayes <br> Action Filed: March 17, 2026 <br> Trial Date: Not Set <br> Hearing: June 3, 2026 |

REPLY BRIEF ISO MOTION FOR PRELIMINARY INJUNCTION    26cv01675

## **TABLE OF CONTENTS**

**Page**

I.     PLAINTIFFS HAVE SOUNDLY DEMONSTRATED
       STANDING. ..................................................................................1

II.    SB 343 IS FACIALLY VOID FOR VAGUENESS. ....................................2

III.   THE AG'S SEVERABILITY DEFENSE FAILS. .......................................5

IV.    SB 343 FAILS INTERMEDIATE SCRUTINY UNDER
       CENTRAL HUDSON. ......................................................................6

       A.     The AG Has Not Carried His Burden. ...................................6

       B.     SB 343 Is Not Narrowly Tailored. .......................................8

V.     PLAINTIFFS HAVE ESTABLISHED IRREPARABLE HARM,
       AND THE EQUITIES FAVOR RELIEF. ..................................................10

- i -

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Americans for Prosperity Found. v. Bonta,*
  594 U.S. 595 (2021)................................................................................................2

*Barlow v. Davis,*
  72 Cal. App. 4th 1258 (1999) ................................................................................6

*Cal-Almond, Inc. v. U.S. Dept. of Agric.,*
  14 F.3d. 429 (9th Cir. 1993) ..................................................................................7

*Cal. Teachers Ass'n v. State Bd. of Educ.,*
  271 F.3d 1141 (9th Cir. 2001) ...............................................................................3

*Cal. Trucking Ass'n v. Bonta,*
  996 F.3d 644 (9th Cir. 2021) .................................................................................2

*Calfarm Ins. Co. v. Deukmejian,*
  48 Cal. 3d 805 (1989) ............................................................................................6

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.,*
  447 U.S. 557 (1980)...........................................................................................9, 10

*Cuviello v. City of Vallejo,*
  944 F.3d 816 (9th Cir. 2019) ...............................................................................10

*Edenfield v. Fane,*
  507 U.S. 761 (1993)................................................................................................9

*Fresenius Med. Care Orange Cnty., LLC v. Bonta,*
  172 F.4th 718 (9th Cir. 2026) ................................................................................6

*F.C.C. v. Fox Television Stations, Inc.,*
  567 U.S. 239 (2012)................................................................................................3

*Italian Colors Rest. v. Becerra,*
  878 F.3d. 1165 (9th Cir. 2018) ..............................................................................7

*Junior Sports Mags. Inc. v. Bonta,*
  80 F.4th 1109 (9th Cir. 2023)................................................................................7

REPLY BRIEF ISO MOTION FOR PRELIMINARY INJUNCTION   26cv01675

*LSO, Ltd. v. Stroh*,
   205 F.3d 1146 (9th Cir. 2000) ................................................................................2

*Ass'n of Nat'l Advertisers, Inc. v Lungren*,
   809 F. Supp. 747 (N.D. Cal. 1992).......................................................................3, 6

*Mi Familia Vota v. Fontes*,
   129 F.4th 691 (9th Cir. 2025) ...............................................................................1

*NAACP v. Alabama*,
   357 U.S. 449 (1958).............................................................................................2

*Nat'l Council of La Raza v. Cegavske*,
   800 F.3d 1032 (9th Cir. 2015) ..............................................................................1

*O'Kane v. Catuira*,
   212 Cal. App. 2d 131 (1963) ................................................................................6

*Project 80's, Inc. v. City of Pocatello*,
   942 F.2d. 635 (9th Cir. 1991) ...............................................................................9

*Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*,
   487 U.S. 781 (1988).............................................................................................8, 9

*Reno v. Am. C.L. Union*,
   521 U.S. 844 (1997).............................................................................................4

*S.D. Cnty. Lodging Ass'n v. City of S.D.*,
   No. 20cv2151-WQH, 2021 WL 5176477 (S.D. Cal. July 8, 2021) ....................1

*Summers v. Earth Island Inst.*,
   555 U.S. 488 (2009) .............................................................................................1

*Susan B. Anthony List v. Driehaus*,
   573 U.S. 149 (2014).............................................................................................2

*Thompson v. W. States Med. Ctr.*,
   535 U.S. 357 (2002).............................................................................................9

*Tucker v. Cal. Dept. of Educ.*,
   97 F.3d 1204 (9th Cir. 1996) ...............................................................................6

*United States v. Lucero*,
   989 F.3d 1088 (9th Cir. 2021) ..............................................................................4

- iii -

REPLY BRIEF ISO MOTION FOR PRELIMINARY INJUNCTION   26cv01675

*Vill. of Hoffman Ests. v. Flipside, Hoffman Est., Inc.*,
455 U.S. 489 (1982)..........................................................................................4

*Yim v. City of Seattle*,
63 F.4th 783 (9th Cir. 2023) ...........................................................................10

REPLY BRIEF ISO MOTION FOR PRELIMINARY INJUNCTION     26cv01675

Faced with a complex but vague statute that silences truthful and misleading speech alike, the AG tries to rewrite SB 343 to suit the U.S. Constitution's standards for due process and freedom of speech. Even if the AG's clever reframing of the State's interests is accepted, he still fails to carry his "heavy" burden in showing that SB 343 directly serves those interests or is narrowly tailored. His "common sense" arguments are self-defeating and divorced from the slew of authorities cited in Plaintiffs' Motion, which go uncontested. For the reasons stated in Plaintiffs' Motion and below, the Court should grant the requested preliminary injunction.

## I.    **Plaintiffs Have Soundly Demonstrated Standing.**

The AG contends Plaintiffs lack standing because they have not identified individual companies harmed by SB 343. Opp. at 12 (citing *Summers v. Earth Island Inst.*, 555 U.S. 488 (2009)). But he ignores binding precedent interpreting *Summers* and squarely rejecting "that an injured member of an organization must always be specifically identified in order to establish Article III standing." *See Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032, 1041 (9th Cir. 2015). "[W]hen it is clear and not speculative that a member of a group will be adversely affected by a challenged action and a defendant does not need to know the identity of a particular member to defend against an organization's claims, the organization does not have to identify particular injured members by name." *Mi Familia Vota v. Fontes*, 129 F.4th 691, 708 (9th Cir. 2025) (citing *La Raza*, 800 F.3d at 1041); *cf. S.D. Cnty. Lodging Ass'n v. City of S.D.*, No. 20cv2151-WQH, 2021 WL 5176477, at *4 (S.D. Cal. July 8, 2021).

That is the case here. Plaintiffs' declarations establish that members wish to make claims restricted by SB 343 but fear enforcement under its vague terms. Mot. at 7-8. Where injury is "relatively clear," and the defendant never explains how "know[ing] the identity of a particular member" would help him "understand and respond to [Plaintiffs'] claim[s] of injury," courts do not "requir[e] an organization to identify by name the member[s] . . . injured." *La Raza*, 800 F.3d at 1041. That is all the more important where, as here, identifying individual businesses will make them easy targets for enforcement

REPLY BRIEF ISO MOTION FOR PRELIMINARY INJUNCTION    26cv01675

actions by the AG, district attorneys, and private plaintiffs.[1]

The AG next contends that his prior enforcement actions citing SB 343 do not show imminent enforcement because they were not "brought under section 42355.51." Opp. at 12. But of course not: SB 343 is not yet in effect. The AG's prior prosecutions of recyclable claims are the best proxy. *See Cal. Trucking Ass'n v. Bonta*, 996 F.3d 644, 653-54 (9th Cir. 2021) (imminent enforcement shown where challenged law was "relatively new" and the State had previously brought a similar action). And tellingly, although the AG promises not to enforce the Basel Criterion, he makes no promise as to the law as a whole. Opp. at 16-17.

The AG also says nothing of the obvious, imminent risk of private enforcement, which has already begun. *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 164 (2014) (credibility of future enforcement "bolstered" where "any person" suspecting a violation may file suit); *see also* Norris Decl. ¶¶ 17-23. Of course, he cannot control the plaintiff's bar, which is also already citing SB 343 in aggressive enforcement actions.

In sum, Plaintiffs have shown "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and . . . [with] a credible threat of prosecution thereunder." *Driehaus*, 573 U.S. at 159; *see also LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1155 (9th Cir. 2000) ("[W]hen the threatened enforcement effort implicates First Amendment rights, the inquiry tilts dramatically toward a finding of standing."). There is simply no question that Plaintiffs have standing here.

## II. SB 343 is Facially Void for Vagueness.

The AG's response on vagueness follows the same pattern: ignore most of the binding authorities cited, quote selectively from a few, and provide a counterexample that actually proves Plaintiffs' point. Take the AG's discussion of the applicable

---

[1] Plaintiffs invoke their members' right to private association by avoiding needless disclosure. The First Amendment protects the "vital relationship between freedom to associate and privacy in one's associations." *NAACP v. Ala.*, 357 U.S. 449, 462 (1958). Requiring members to disclose their identities when there is no legal or factual need to do so threatens this right and "would subject them to the risk of reprisals." *Americans for Prosperity Found. v. Bonta*, 594 U.S. 595, 603 (2021).

- 2 -

standard, where he quotes *California Teachers Ass'n* that "perfect clarity is not required even when a law regulates protected speech," Opp. at 13-14, but leaves out the Ninth Circuit's holding that "[w]hen First Amendment freedoms are at stake, courts apply the vagueness analysis more strictly." *CTA*, 271 F.3d at 1150; *cf.* Mot. at 9 n.2. Here, what is being demanded is not "perfect clarity," but rather a "greater degree of specificity and clarity than would be necessary under ordinary due process principles," (*id.*) particularly because SB 343 "imposes criminal sanctions." *Lungren*, 809 F. Supp. at 761.

The AG notes that "[m]any product types and forms clearly meet, or clearly fail" the 60/60 thresholds, pointing to a handful of the simplest examples. Opp. at 14 ("clear glass containers" and "tin cans"). Aside from ignoring multi-material packaging used for the majority of consumer goods and the difficulty applying the law's complex categories, the AG doesn't mention SB 343's remaining criteria, four of which are so vague as to deprive them of "fair notice" and "so standardless" that they encourage "arbitrary [and] discriminatory" enforcement. *See Fox Television*, 567 U.S. at 253. Because the failure to meet any one of these criteria—not just the 60/60 thresholds—renders a recycling claim unlawful, SB 343's entire scheme is constitutionally infirm. The AG also ignores the inevitability of private enforcement (Mot. at 4), striving (and failing) to assure the Court that "fair notice" is found in "[c]ommonly understood words like 'routinely'". Opp. at 7.

The AG contests Plaintiffs' challenges (Mot. at 10-11) to the "routinely becomes feedstock" criterion by flatly asserting that the term is "easily understandable." Opp. at 16. But the AG cannot hide behind a dictionary definition (Opp. at 15) and declare this core requirement of SB 343 free of vagueness. The Court need only look to *Lungren*'s holding on a substantially similar term – "conveniently" – in a substantially similar context to find that the utter "absence of any standard for ['routinely becomes feedstock'] wrecks this portion of [SB 343] on the shoals of vagueness." *See* 809 F. Supp. at 761-62. The AG's silence on the obvious parallel here speaks volumes.

Yet his words on the Basel Criterion speak louder still. While he does not contest

REPLY BRIEF ISO MOTION FOR PRELIMINARY INJUNCTION   26cv01675

the uncertainty and unreliability of an international treaty that the United States never even ratified (Mot. at 12), he rightly concedes that SB 343 leaves a vacuum of guidance regarding what conclusions businesses can draw about "consisten[cy]" with the Basel Convention. Opp. at 16. More telling is his statement that he "does not intend to enforce the Basel [Criterion] independently from the 60 percent sorting requirement." *Id.* at 16-17. That concession only proves Plaintiffs' point. If the AG himself believes that this requirement is too vague to be administrable, it certainly fails the "more stringent vagueness test" that applies where protected speech is concerned. *See Vill. of Hoffman Ests.*, 455 U.S. at 499; Mot. at 9.

The AG's defense of the APR Design Criterion fares no better. Ignoring the due process concerns triggered by the law's delegation to the private APR Guide, *see* Mot. at 13, the AG tries to rewrite section 42355.51(d)(3)(A) to require conformity with the APR Guide's ever-changing, imprecise criteria only when a package is designed and not when it is sold. Opp. at 17. This is far from the most obvious reading of the provision, and certainly not one adopted or even assumed by CalRecycle. In fact, the AG is silent on the manifest conflict between CalRecycle's guidance and the APR Guide. Mot. at 13; FAC ¶ 146. And in support of his proposition that "close cases" may arise without rendering a law vague (Opp. at 18), the AG puzzlingly relies on *United States v. Lucero*, 989 F.3d 1088, 1091-92 (9th Cir. 2021), which addressed the Clean Water Act's "waters of the United States" provision where, unlike here, no First Amendment interest was at stake and agencies were delegated authority to interpret and apply the term.

Tellingly, the Opposition (at 18) suggests that manufacturers would "arguably" comply with subdivision (d)(3)(A)'s requirement to design packaging to not include components that "prevent recyclability" if recyclers grudgingly allow such features. But since Plaintiffs' members face the risk of criminal and civil penalties, they must be able to discern more than *arguable* compliance before they can speak with any measure of confidence. *See Reno v. Am. C.L. Union*, 521 U.S. 844, 872 (1997) ("The severity of criminal sanctions may well cause speakers to remain silent rather than communicate

REPLY BRIEF ISO MOTION FOR PRELIMINARY INJUNCTION      26cv01675

even *arguably* unlawful words, ideas, and images.") (emphasis added).

The AG's defense of subdivision (d)(3)(B) similarly refutes itself. Without contesting that CalRecycle has "made clear that it will not aid businesses in making [the] determination" that something "ensures" or "prevents" recyclability, *see* Mot. at 14-15, the AG suggests that compliance requires speakers to "consult industry guidance" and "work with recycling experts." Opp. at 19. He even refers Plaintiffs to nonexistent "reports" on contaminants by CalRecycle (*id.*), apparently forgetting statements he made on behalf of the agency before another court, where he expressly declared that information needed to satisfy subdivision (d)(3) was "outside the scope of CalRecycle's forthcoming characterization study." RJN Ex. C at 26-27. This approach – "figure it out yourself, at your own peril" – is precisely what due process forbids.

The AG then invokes *NetChoice* for the proposition that difficulty in applying a statute does not render it vague so long as "there is no question about the statutory criteria." Opp. at 19. But whether a component "prevents the recyclability of the product" is itself indeterminate because, with sufficient effort, almost anything can be made into a new product. The statute provides no definition of "prevent," no threshold for how widespread such prevention must be among disparate recyclers with changing practices, and no metric for distinguishing facility-specific operational quirks from systemic incompatibility. *NetChoice* upheld a law whose criteria were clear and did not raise these sorts of questions; SB 343's criteria fail this standard.

### III.   The AG's Severability Defense Fails.

Plaintiffs agree with the AG's cited authorities counseling courts to "try to limit the solution to the problem." Opp. at 29. But here, the problems are so interwoven throughout the State's definition that the only solution is to invalidate SB 343's speech restriction as a whole. The vague "routinely becomes feedstock" provision is integral to the Legislature's effort to define recyclability in terms of whether a material is ultimately processed into new products. Similarly, the Basel Criterion, the APR Design Guide requirement, and the design criteria in (d)(3)(B) operate together to address overlapping

REPLY BRIEF ISO MOTION FOR PRELIMINARY INJUNCTION     26cv01675

components of the Legislature's definition of "recyclable." Excising just one or some of them would leave behind a materially different scheme that no longer reflects that legislative approach. *Cf. Tucker v. Cal. Dept. of Educ.*, 97 F.3d 1204, 1217 (9th Cir. 1996) ("[I]t is not within the province of this court to 'rewrite' the [law] to cure its substantial constitutional infirmities."); *see also* Mot. at 16.

The Ninth Circuit recently emphasized that a court may not sever unconstitutional provisions of a statute absent a "compelling reason" to believe "a rational legislator would think the [remainder], without its sister provisions," would be "worth it" to enact by itself. *Fresenius*, 172 F.4th at 735-36. The AG cannot make this showing by merely asserting that "[i]t is [] clear" that the challenged provisions are volitionally severable. Opp. at 30. And, while a generic severability clause can be found in the Public Resources Code,[2] it "does not conclusively dictate" severability, *Calfarm Ins. Co. v. Deukmejian*, 48 Cal. 3d 805, 821 (1989), as "[s]uch a clause does not require that [a court] salvage provisions … [that] are not intended to be independently operative." *Barlow v. Davis*, 72 Cal. App. 4th 1258, 1266 (1999) (cleaned up). Finally, the AG's reliance on *Lungren* is misplaced. Opp. at 30. There, the court struck down AB 3994's definition of "recyclable" as unconstitutionally vague, while leaving intact the several *other* definitions and associated speech restrictions. *Lungren*, 809 F. Supp. at 762. Therefore, severance is not appropriate.

## IV.   SB 343 Fails Intermediate Scrutiny Under *Central Hudson.*

### A.   The AG Has Not Carried His Burden.

To survive *Central Hudson* scrutiny, the AG must identify a "'substantial' governmental" interest and show the law "directly" advances it. He does neither. Neglecting to wrestle with the fact that "California's burden under this test is heavy" and cannot be met with "mere speculation or conjecture," *Italian Colors*, 878 F.3d at

---

[2] This carries limited weight because it does not resolve the Legislature's intent when enacting SB 343. *Cf. O'Kane v. Catuira*, 212 Cal. App. 2d 131, 141 (1963) (declining to sever invalid provisions, despite division-wide severability clause, where doing so would not reflect legislative intent).

- 6 -

1176, the AG repeatedly invokes "common sense." But the Ninth Circuit has made clear that he must "do more than appeal to common sense and a chain of inferences to prove that the law would *significantly* advance the State's interest." *Junior Sports*, 80 F.4th at 1118. The AG's defense is plainly insufficient in light of these holdings and others, counseling trial courts to apply *Central Hudson* "more strictly" (Mot. at 6) and "not simply defer to legislative . . . judgment on this question." *Cal-Almond*, 14 F.3d at 437.

The AG begins with an extraordinary leap of logic trying to connect the law's ban on speech to "the rate at which items are processed into new products" as opposed to how many items go into the recycling bin versus the trash bin. Opp. at 23. But SB 343 does not regulate recycling processes—it restricts what businesses can say about recycling. Revealingly, the bill's lead author attributed California's "dismal recycling rate" to, "most notably," a "severe drop in the market for recycled material and the low cost of virgin petroleum." RJN Ex. B at 16. Even "common sense" cannot explain how a blanket restriction on commercial speech would address either of those supposed causes at the time, during the pandemic and before the sharp rise in oil prices.

What's more, the AG presents no evidence that SB 343's true focus is on the blue bin recycling rate and seems to simply assume this narrow interest is both governmental and substantial. But while restricting what goes in the recycling bin may help private recycling businesses and increase the percentage of a shrinking subset of discarded items that is recycled, landfills will expand with trash made from finite resources extracted at environmental cost. In so narrowing the law's goal to help fit its ban on speech, the AG virtually mocks five decades of environmental policymaking.

The AG also points to delivering "accurate and useful information" to consumers and "fixing California's trash problem" as the Legislature's declared goals. Opp. at 8, 27. As to the former interest, the AG's threadbare defense of the law's supposed protection of consumers (Opp. at 26) sidesteps Plaintiffs' arguments about what chasing arrow symbols and the like actually communicate to consumers (Mot. at 18-19) and the multiple forms of confusion that SB 343 will spawn. Mot. at 20-21. The AG presents

- 7 -

conjecture and assumption, but no evidence, on these points.

As for fixing the trash problem, the AG's theory is patently illogical. While agreeing that consumers "rely on recycling symbols as a 'cue'" for sorting material into the recycling bin (Opp. at 25), the AG asks the court to ignore that the chill from SB 343's strict liability regime will also strip those cues from materials that are collected and sorted at high rates across the state. Mot. at 19-20. Eliminating, instead of clarifying, these cues will inevitably result in less material entering recycling streams and more material going to landfills. Furthermore, when recyclable materials are removed from the recycling rate denominator and end up in landfills, the net effect on contamination rates of recycling streams is uncertain, at best. The AG is also notably silent on the diminishing recycling rates SB 343 will cause for materials collected through take-back and store drop-off programs, and similarly mute on how SB 343 stifles the innovation in sustainable packaging that is essential to fix the "trash problem." Mot. at 21-22.

Perhaps most tellingly, the Opposition is filled with references to how the State's speech restriction will benefit the economics of recycling for waste processors—an aim that is simply not part of SB 343. *See, e.g.*, Opp. at 7 ("improve the economic viability of recycling streams"), 8 ("often to the point where they have no market value"), 24 ("The more it costs to reclaim the materials, the more expensive the end product becomes."), 25 ("labels … impede recoverability and economic viability"). But even if it was, and even if this were a substantial governmental interest, economic efficiencies cannot serve as a constitutionally adequate justification for the suppression of speech. *See Riley*, 487 U.S. at 795 ("reaffirm[ing] simply and emphatically that the First Amendment does not permit the State to sacrifice speech for efficiency").

**B.    SB 343 Is Not Narrowly Tailored.**

The AG claims that SB 343 is narrowly tailored because it allows for limited qualified claims and QR codes. Opp. at 26-27. Plaintiffs would welcome this newly espoused interpretation, if only it were grounded in the text of the law. As the AG notes, SB 343 prohibits "any . . . symbol or statement indicating the product or packaging is

- 8 -

REPLY BRIEF ISO MOTION FOR PRELIMINARY INJUNCTION    26cv01675

recyclable" unless it meets each provision of the law. PRC § 42355.51(b)(1). Litigants bringing consumer class actions will undoubtedly contend that (1) even a statement such as "Not recyclable in most areas; check locally" indicates that the product is recyclable in *some* areas; and (2) even if the recyclability message is not on the product itself, a QR code linking to it is still a "symbol" that is "otherwise directing the consumer to recycle the product." *Id.* Because the outcome of such litigation is unpredictable, the AG's post hoc rationalization in this lawsuit at best merely spotlights the vagueness of the law.

The AG next declares, without evidence, that Plaintiffs' suggested alternatives would not "be as effective at fixing California's trash problem." Opp. at 27. But that is no excuse. Efficiency is not the measure of a lawful restriction of speech. *Riley*, 487 U.S. at 795; *Thompson*, 535 U.S. at 373 ("If the First Amendment means anything, it means that regulating speech must be a last—not first—resort."). Furthermore, the AG has no evidence for this contention. The State bears the burden of justifying a restriction of commercial speech. *Edenfield*, 507 U.S. at 770. This burden cannot be satisfied "by mere speculation or conjecture." *Id.* Instead, the State "must affirmatively prove that the [law is] narrowly tailored." *Project 80's*, 942 F.2d at 637. The AG has not done so.

In one attack on suggested alternatives, the AG asserts that "[q]ualifying language is unlikely to change" consumer behavior. Opp. at 27. Devoid of authorities or any attempt to distinguish cases striking down similar commercial speech restrictions that were more extensive than necessary, *see* Mot. at 23-24, the AG instead cites "common sense" and complains—without evidence—that qualifying language "has not reduced consumer confusion" in the status quo. Opp. at 27. Even crediting this baseless assertion, if qualified claims have not singlehandedly fixed statewide recycling, that does not mean they fail as a less restrictive alternative. The solution to California's trash problem is multifaceted. The State could have prompted qualified recycling instructions to be clearer instead of resorting to censorship, as "the First Amendment presumes that some accurate information is better than no information at all." *Cent. Hudson*, 447 U.S. at 562. Here, "no showing has been made that a more limited restriction on [recyclability

REPLY BRIEF ISO MOTION FOR PRELIMINARY INJUNCTION   26cv01675

claims] would not serve adequately the State's interests." *Id.* at 570. "In the absence of authoritative findings to the contrary," the Court must credit that such less speech-restrictive alternatives can be appropriate. *Id.*

The AG's speculative criticisms of other alternatives like enforcing general consumer laws to police conduct and regulating materials directly are as thin as they are unresponsive. *See, e.g.*, Opp. at 27 ("[I]t is not clear that a ban on [a] material would be less restrictive than [a] restriction on calling the package recyclable."). The State cannot pursue its asserted interests by imposing a "near-blanket prohibition" on speech without "carefully calculat[ing] the costs and benefits associated with the burden on speech" and first trying narrower tools aimed at deception, design, or infrastructure. *See Yim*, 63 F.4th at 796. Quite remarkably, the AG concludes his *Central Hudson* analysis by declaring that "California should be able to use its Legislative judgment to determine when a ban or a labeling restriction would better further its goals." Opp. at 27. This assertion cannot be squared with the line of authorities Plaintiffs cite and the AG ignores. Mot. at 6-7.

**V.        Plaintiffs Have Established Irreparable Harm, and the Equities Favor Relief.**

Plaintiffs have undeniably raised "serious questions" going to the merits, which is enough where the remaining factors favor relief. Mot. at 8, 25. The general public interest in enforcing statutes does not extend to enforcing unconstitutional speech restrictions. Nor does the timing of the suit undercut relief. The supposed "delay" between the bill's passage and this suit "is not particularly probative" where the unrefuted recent surge of lawsuits around allegedly deceptive recycling labels—many expressly anchored on a supposed violation of section 42355.51—illustrates "ongoing, worsening injuries" that weigh in favor of relief being granted. *Cuviello*, 944 F.3d at 833. And because delay is "but a single factor" to consider in evaluating irreparable harm, "courts are loath to withhold relief solely on that ground." *Id*.

SB 343's operative restriction takes effect in a mere four months. Because Plaintiffs have raised a "colorable" free speech claim, "it is well within the public interest to issue a preliminary injunction." *See id*. at 834.

REPLY BRIEF ISO MOTION FOR PRELIMINARY INJUNCTION     26cv01675

Dated: May 26, 2026

Respectfully submitted,

By: */s/ Trenton H. Norris*
Trenton H. Norris

*Attorneys for Plaintiffs*
California League of Food Producers
American Forest & Paper Association
California Apple Commission
California Blueberry Commission
California Grocers Association
California Restaurant Association
California Retailers Association
California Strawberry Commission
California Table Grape Commission
California Walnut Commission
Californians for Affordable Packaging
Consumer Brands Association
Dairy Institute of California
Flexible Packaging Association
Grower Shipper Association of Central California
Olive Oil Commission of California
Personal Care Products Council
Pet Food Institute
Print Creative Alliance
SNAC International
Western Growers Association

REPLY BRIEF ISO MOTION FOR PRELIMINARY INJUNCTION    26cv01675