Jonathan Weissglass (CSB 185008)
Law Office of Jonathan Weissglass
1939 Harrison Street, Suite 150-B
Oakland, CA 94612
Telephone: 510-836-4200
E-mail: jonathan@weissglass.com

Attorney for Proposed Intervenors
Earth Island Institute and
Californians Against Waste

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA LEAGUE OF FOOD PRODUCERS, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>ROB BONTA,<br><br>Defendant. | Case No. 3:26-cv-01675-WQH-JAC<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EARTH ISLAND INSTITUTE AND CALIFORNIANS AGAINST WASTE'S MOTION TO INTERVENE AS DEFENDANTS** |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................... ii

INTRODUCTION ...................................................................................................1

BACKGROUND .....................................................................................................1

    Proposed Intervenors .....................................................................................1

    The Need For S.B. 343 ...................................................................................5

    S.B. 343...........................................................................................................7

    The Lawsuit ....................................................................................................8

DISCUSSION ........................................................................................................8

    I.    Proposed Intervenors Are Entitled To Intervene As Of Right...................8

        A.    The Motion to Intervene Is Timely .................................................9

        B.    Proposed Intervenors Have Interests In The Action .....................12

        C.    This Action May Impede Or Impair Proposed Intervenors' Interests ..........13

        D.    Proposed Intervenors' Interests Are Not Adequately Represented ..............13

            1.    Proposed Intervenors' Interests Are Different Than Defendant's ....14

            2.    Proposed Intervenors Will Raise Different Points Than Defendant...................................................................14

            3.    Proposed Intervenors Have Substantive Expertise .........................16

    II.    Alternatively, Proposed Intervenors Should Be Granted Permissive Intervention ..................................................................16

CONCLUSION ....................................................................................................18

## <u>TABLE OF AUTHORITIES</u>

### Federal Cases

*Association of National Advertisers, Inc. v. Lungren*, 809 F.Supp. 747 (N.D. Cal. 1992),
   *affirmed*, 44 F.3d 726 (9th Cir. 1994)................................................................5

*Brown v. Google LLC*, 172 F.4th 1128 (9th Cir. 2026) .................................................10

*California Teachers Ass'n v. State Bd. of Educ.*, 271 F.3d 1141 (9th Cir. 2001).......................15, 16

*Citizens for Balanced Use v. Montana Wilderness Ass'n*,
   647 F.3d 893 (9th Cir. 2011) ....................................................9, 12, 13, 14, 15, 16

*CTM Holdings, LLC v. United States Department of Agriculture*,
   Case No. 24-CV-2016-CJW, 2024 WL 5700558 (N.D. Iowa Dec. 3, 2024) .......................14

*Day v. Apoliona*, 505 F.3d 963 (9th Cir. 2007) ..........................................................11

*Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489 (9th Cir. 1995)............................14

*Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836 (9th Cir. 2011) .............................17

*Kalbers v. U.S. Dep't of Just.*, 22 F.4th 816 (9th Cir. 2021) ......................................9, 10, 11

*Kootenai Tribe of Idaho*, 313 F.3d 1094 (9th Cir. 2002)..............................................9, 10, 11

*Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525 (9th Cir. 1983)..................................13, 16

*San Diego County Lodging Ass'n v. City of San Diego*, Case No.: 20-cv-2151-WQH-MDD,
   2021 WL 1733383 (S.D. Cal. May 3, 2021)..............................................10, 13, 14

*Sierra Club v. U.S. Env't Prot. Agency*, 995 F.2d 1478 (9th Cir. 1993) .........................................9

*Smith v. Los Angeles Unified Sch. Dist.*, 830 F.3d 843 (9th Cir. 2016)................................9, 10, 11

*Smith v. Marsh*, 194 F.3d 1045 (9th Cir. 1999) ..........................................................10

*Southwest Center for Biological Diversity v. Berg*, 268 F.3d 810 (9th Cir. 2001)...........................14

*Spangler v. Pasadena City Bd. of Ed.*, 552 F.2d 1326 (9th Cir. 1977)............................................17

*Trbovich v. United Mine Workers*, 404 U.S. 528 (1972)................................................13

*Trump v. CASA, Inc.*, 606 U.S. 831 (2025) ..........................................................16

*United States v. Aerojet Gen. Corp.*, 606 F.3d 1142 (9th Cir. 2010).................................11

*United States v. City of Los Angeles*, 288 F.3d 391 (9th Cir. 2002) ..............................17

*United States v. Oregon*, 745 F.2d 550 (9th Cir. 1984)................................................11

*United States v. Oregon*, 839 F.2d 635 (9th Cir. 1988).................................................15

*Washington State Bldg. & Constr. Trades Council v. Spellman*, 684 F.2d 627 (9th Cir. 1982) ......13

*Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011) (en banc)...................9, 12, 14

**Federal Rules**

Federal Rules of Civil Procedure

24(a) ..............................................................................................................8

24(b)(1)(B) ....................................................................................................17

**State Statutes**

Pub. Res. Code

§8015(d)..........................................................................................................7

§42355.5...........................................................................................................7

§42355.51(d)(1) ...............................................................................................7

§42355.51(d)(2) ...............................................................................................7

§42355.51(d)(3) ...............................................................................................7

§42355.51(d)(3)(B)..........................................................................................15

§42355.51(d)(4) ...............................................................................................7

Mem. ISO Motion to Intervene, Case No. 3:26-cv-01675-WQH-JAC

**INTRODUCTION**

This litigation is an attempt by the food and packaging industry to block a California law that works to strengthen the recycling system. The legislation at issue – S.B. 343 – addresses fundamental challenges with today's recycling system by encouraging companies to design goods and packaging to be genuinely recyclable and by reducing the contamination and consumer confusion that undermine recycling.

Proposed Intervenors Earth Island Institute and Californians Against Waste have long worked to advance recycling. Their decades of experience wrestling with obstacles to recycling led them to advocate on the issues that S.B. 343 addresses and ultimately for S.B. 343 itself, with Californians Against Waste taking the lead as one of the original sponsors of the bill.

Proposed Intervenors' interests in S.B. 343 are now under attack in this litigation, which seeks to undo the progress this law makes, leaving California mired in harmful waste and incapable of meeting its goals for recycling. Proposed Intervenors' environmental interests are distinct from the State's interest, which balances environmental concerns with other factors such as increased costs and administrative ease. Proposed Intervenors also intend to raise different issues than the State. Further, they have extensive expertise that will assist the Court in understanding the complex combination of challenges that plague California's waste management and recycling systems. In sum, Defendant does not adequately represent Proposed Intervenors.

Accordingly, Proposed Intervenors seek to intervene to defend the constitutionality of S.B. 343. Their interests remain strong, even after the Court's preliminary injunction. Proposed Intervenors meet the requirements for intervention under Rule 24 of the Federal Rules of Civil Procedure and should be permitted to intervene to protect their interests and mount a vigorous defense of S.B. 343.

**BACKGROUND**

**Proposed Intervenors**

California has long been at the forefront of recycling. Proposed Intervenors have been integrally involved in this effort as described below.

Mem. ISO Motion to Intervene, Case No. 3:26-cv-01675-WQH-JAC

Earth Island Institute ("Earth Island") is a California non-profit, public interest membership organization established pursuant to §501(c)(3) of the Internal Revenue Code. Through its fiscally sponsored projects and programmatic work, Earth Island has worked to combat plastic pollution and protect California's coasts, wild places, and communities from myriad harms stemming from plastic pollution. Declaration of Scott Hochberg ¶¶3-6. For instance, Earth Island has a long track record of litigation to oppose "greenwashing" and misleading statements of recyclability. *Id.* ¶5. In addition, Earth Island has litigated against companies that produce and market single-use plastics that end up as trash on California's beaches and waterways. *Id.* ¶6.

Earth Island seeks to intervene in its own name and on behalf of its fiscally sponsored project, Plastic Pollution Coalition ("PPC"). PPC is a non-profit communications and advocacy organization that seeks to create a more just, equitable, regenerative world free of plastic pollution. PPC works to expose the harms of plastic pollution and to advance systemic solutions. In particular, PPC advocates to transition from single-use plastic through education and through the promotion of reuse, refill, and other solutions. Declaration of Julia Cohen ¶¶2-3.

PPC, with support from Earth Island's fiscal sponsorship, directly supported S.B. 343, both before and after the bill's passage and codification. PPC lobbied for the passage of S.B. 343, including by authoring pieces about the law, direct lobbying, signing on to letters of support, and conducting media outreach. *Id.* ¶16. PPC's involvement has continued since the bill passed, including by calling for CalRecycle to strengthen S.B. 343 by revising its Material Characterization Study. *Id.* ¶17. In 2025, PPC opposed A.B. 473, which ultimately failed, but would have weakened S.B. 343 by allowing for inaccurate recyclability labels on plastic products. *Id.* Today, PPC continues advocating for a binding global plastics treaty addressing the full life cycle of plastics, including by sponsoring a petition with more than 29,000 signatures. *Id.*

Californians Against Waste ("CAW") is a California non-profit organization with members throughout the State. CAW was founded in 1977, and its mission is to protect communities by eliminating the pollution inherent in the extraction and disposal of natural resources. Declaration of Nick Lapis ¶3. CAW works on solutions to pollution and conservation problems that threaten the public health and the environment. *Id.* The principle of producer responsibility is the basis of

2

much of CAW's work. *Id.* ¶ 4. CAW believes that when manufacturers are required to internalize the environmental costs of their products, the market motivates them to reduce waste, replace virgin resources with recycled materials, and design products and packaging so that they are recyclable. *Id.*

In 1986, CAW sponsored the legislation that established the California Redemption Value ("CRV") and the State's beverage container recycling program, known as the "Bottle Bill." CAW has continued its work on the Bottle Bill program thereafter. *Id.* ¶5.

In 1989, CAW supported and helped secure passage of the California Integrated Waste Management Act, which required localities to reduce waste and established the modern framework for California's recycling and diversion programs. *Id.* ¶6.

Beginning in the 2000s, CAW sponsored legislation applying producer responsibility to specific waste streams, creating manufacturer take-back and product stewardship programs for electronic waste, batteries, paint, and mattresses. *Id.* ¶7.

CAW sponsored California's statewide single-use plastic carryout bag restriction legislation, which was enacted in 2014 and upheld by California voters in 2016. CAW has also advocated for laws requiring manufacturers to substantiate environmental marketing claims such as with respect to recycled content, reflecting its concern with deceptive or unsubstantiated "green" claims. *Id.* ¶¶8-9.

CAW opposes counting as "recycling" the exportation to other countries of mixed, contaminated plastic waste. In 2018, China and other countries stopped accepting most low-value mixed plastics and the market collapsed for material previously treated as "recyclable." Because such material had often been dumped or incinerated overseas, rather than recycled, it became plain that the practice of exporting such material had artificially inflated perceived plastic recycling rates. In line with CAW's belief that recyclability does not include shipment abroad for landfill or incineration, CAW supported measures to stop counting exported mixed plastic waste as "recycled" and to instead define recycling as limited to actual environmentally sound outcomes. *Id.* ¶11.

Mem. ISO Motion to Intervene, Case No. 3:26-cv-01675-WQH-JAC

CAW was a co-sponsor of S.B. 343, the law challenged in this action, together with the National Stewardship Action Council. CAW was integrally involved in developing and drafting the bill as well as in advocating for the bill's passage. Indeed, CAW's Director of Advocacy served as a principal contact for the measure and was a member of the commission that led to the bill. *Id.* ¶12. CAW has also worked on implementation of S.B. 343. *Id.* ¶13.

CAW's familiarity with the day-to-day operation of California's recycling system, developed over decades, positions it to explain to the Court exactly how S.B. 343 will function in practice and why it will improve, rather than depress, actual recycling rates. *Id.* ¶¶15-21.

For example, the concern that efficiency gains at recycling facilities may be outweighed by a decrease in the volume of recyclable material reaching those facilities rests on a premise that CAW can rebut. Much of the material that S.B. 343 removes from the curbside stream is not recyclable material diverted away from materials recovery facilities ("MRFs"); it is disproportionately contaminants that MRFs already could not recover that were destined to be landfilled. Because such materials could not have been recycled (whether they were placed in the blue bin or not) and through their contamination would cause other products not to be recycled either, their exclusion does not lower total recyclable volume. The benefit is therefore not confined to processing efficiency; it extends to net recovery and recycling rates as well. Removing contaminants increases the absolute quantity of material recovered into end markets because bales that would otherwise have been rejected and landfilled on account of contamination are instead marketed and remanufactured. CAW can supply the operational and market evidence the Court needs to see that the statute's two effects do not offset one another but operate in the same direction toward the State's recycling goals. *Id.* ¶¶17-21.

In sum, CAW has decades of experience with California's waste management systems and can speak authoritatively on how S.B. 343 will address longstanding issues with the State's recycling infrastructure.

Notably, CAW and another environmental group were allowed to intervene as of right in a very similar case that an association of advertisers and others brought against the California Attorney General, challenging a statute that restricted the use of certain environmental advertising

claims. *Association of National Advertisers, Inc. v. Lungren*, 809 F.Supp. 747, 749 n.1 (N.D. Cal. 1992), *affirmed*, 44 F.3d 726 (9th Cir. 1994).

**The Need For S.B. 343**

Scientists have defined nine "planetary boundaries" – guardrails or thresholds for crucial planetary life-support systems that ensure that Earth is able to continue to provide a hospitable home for humans and other life. Seven of these boundaries have been breached. To address this threat, the State of California and the United States have embraced the concept of a circular economy that reduces waste and directs materials to their highest and best use through designing products for reuse, composting organic materials, and recycling inorganic materials. Recycling is an essential part of how a circular economy protects Earth's ability to sustain human life while reducing harm from extractive processes and waste disposal to communities and ecosystems. Cohen Dec. ¶¶5-6.

There are at least three threats to recycling's ability to play this key role effectively, particularly with respect to plastic. First, the composition and design of plastic products create substantial problems for the recycling process. Many types of plastic are challenging to recycle as a technical and practical matter, and no realistic and economically feasible path to reuse of these materials is likely to emerge. In addition, producers are using more composite packaging (lining paper with plastic or mixing plastic, paper, and aluminum), which is difficult for processors to separate and recycle. *Id.* ¶10.

Second, contamination in the processing stream reduces actual recycling rates. Recycling systems rely on clean material streams to function economically, but contamination at the bin level restricts where facilities can sell processed materials. Lapis Dec. ¶¶17-20. As producers increase hard-to-recycle resins and composite materials in their packaging and use non-recyclable labels and dyes, recycling processors have to spend additional resources to separate out the problematic materials. At best, contamination slows the sorting process and raises the per-unit cost of recycling. But often, processors cannot sufficiently separate out the contaminants, which leads to the landfilling or incineration of entire loads of otherwise recyclable materials. Cohen Dec. ¶¶10-12. Contamination leads to the degradation of bale quality, reducing value and undermining

5

recycling's economic viability. Lapis Dec. ¶¶19-20. Estimates put the cost of contamination of recycling in the United States at more than $3.5 billion per year, with 25 percent or more of recycling streams contaminated. Cohen Dec. ¶12

Third, the rise of the practice known as greenwashing lowers recycling rates by increasing contamination and by dissuading consumer participation in the recycling system overall. Greenwashing occurs when companies provide misleading information about the ultimate recyclability of their products, eager to boost sales among the growing percentage of the public that prizes environmental stewardship and confident that the costs of recycling contamination will be borne by other parties. When companies provide misleading information about the recyclability of their products, it places an informational burden on consumers to learn complex and changing rules regarding which materials are accepted by their local programs. The effects are two-fold. On one hand, greenwashing exacerbates the contamination issue discussed above because many consumers "wishcycle" by placing items they hope can be recycled into the blue bin. On the other hand, greenwashing can discourage recycling altogether; research shows that when consumers learn that products labeled as recyclable are unlikely to be turned into new products, they lose faith in recycling processes, which leads to lower overall participation in the system. *Id.* ¶14. Neither outcome is desirable.

The cumulative result of these challenges is significant. For instance, only a small fraction of plastic is recycled; the rest is landfilled, incinerated, or becomes litter in the environment. *Id.* ¶9.

In addition, equating recycling with whether a particular product is collected and sorted, rather than whether it is ultimately reused/converted into another product, promotes a false narrative about the meaning of recycling. This framing conflicts with consumer understanding and ignores the reality that products that have been collected and sorted are often still landfilled, incinerated, or mishandled to become waste in the environment. Lapis Dec. ¶18. Proposed Intervenors believe a definition of recycling must include the requirement that reuse/conversion of the material actually occurs. Equating recycling with collection and sorting overinflates recycling rates, misleads consumers, and masks problems like contamination and greenwashing, which worsens actual recycling rates in the long term.

**S.B. 343**

S.B. 343 seeks to solve these impediments to recycling. The Legislature "declare[d] that it is the public policy of the state that environmental marketing claims, whether explicit or implied, should be substantiated by competent and reliable evidence to prevent deceiving or misleading consumers about the environmental impact of plastic products" and "that claims related to the recyclability of a product or packaging be truthful in practice and accurate." Pub. Res. Code §42355.5. As particularly pertinent to this case and to further those goals, S.B. 343 limits the use of the chasing arrows symbol and other statements that denote recyclability to products and packaging that either meet statewide recyclability criteria or have an actual recycling rate of at least 75 percent and are of a material type and form that routinely becomes feedstock for new products or packaging. *See* Pub. Res. Code §§18015(d), 42355.51(d)(1), (4). The main statewide recyclability criteria, known as the 60/60 requirement, specify that the product or packaging is collected for recycling in jurisdictions that together cover at least 60 percent of the State's population and is sorted by facilities that together serve at least 60 percent of the State's recycling programs consistent with the Basel Convention. Pub. Res. Code §42355.51(d)(2). In addition, the product or packing must avoid including components or additives that prevent recycling, such as certain pigments. Pub. Res. Code §42355.51(d)(3).

S.B. 343 provides clarity to manufacturers and consumers as well as multiple compliance pathways for businesses. First, a business can package its products in one of the many materials that exceed the 60/60 threshold such as paper, cardboard, glass, and aluminum, and plastic in the form of PET, HDPE, and PP. Lapis Dec. ¶22. This ease of compliance is difficult to overstate: if a manufacturer designs a product with a single material or resin type, and does not add unnecessary contamination to the product, Plaintiffs provide no reason to expect an enforcement action under the law. These straightforward examples are a large percentage of California's waste. *Id.*

Second, if a company does not want to use plainly recyclable materials, it may simply refrain from making inaccurate statements concerning recyclability and avoid any possibility of liability under S.B. 343.

Third, companies may research whether their products are indeed recyclable consistent with the definitions in S.B. 343. The Association of Plastic Recyclers provides specific guidance on how to design plastic products to be recyclable. Lapis Dec. ¶23.

Fourth, companies can develop end-markets for their product packaging, thereby raising recyclability rates. By way of example, the Carton Council trade association supported a new recycling manufacturing facility in 2025 to turn certain top cartons into building materials. The result has been that carton recycling is now provided to 62% of the State – above S.B. 343's 60% threshold. Lapis Dec. ¶24. This is precisely what S.B. 343 is meant to do: incentivize companies to increase the recyclability of their products.

**The Lawsuit**

On March 17, 2026, Plaintiffs filed this lawsuit. The operative First Amended Complaint pleads violations of the First and Fourteenth Amendments for unconstitutional restrictions on speech and vagueness. Dkt. No. 7 ¶¶151-74. In particular, Plaintiffs take aim at the restrictions on the use of the chasing arrows symbol and at the statewide recyclability criteria. Dkt. No. 7 ¶¶3-4, 15. On April 24, 2026, Plaintiffs moved for a preliminary injunction. Dkt. No. 14. The State filed its opposition to the preliminary injunction on May 18, 2026. Dkt. No. 16. The Court held a hearing on the preliminary injunction on June 3. The Court issued a preliminary injunction on July 14. Dkt. No. 24.

Defendant has not answered as of the time Proposed Intervenors seek to intervene.

**DISCUSSION**

**I.      Proposed Intervenors Are Entitled To Intervene As Of Right**

Under Rule 24(a) of the Federal Rules of Civil Procedure, the requirements for intervention as of right are that the proposed intervenor (1) brings a timely motion, (2) has an interest relating to the property or transaction that is the subject of the litigation, (3) is situated such that the disposition of the action may impair or impede its ability to protect that interest, and (4) is inadequately represented by the existing parties to the suit. A "court must permit anyone to intervene who" meets those requirements. F.R.C.P. 24(a).

Moreover, courts "favor intervention because it serves both efficient resolution of issues and broadened access to the courts," liberally construe intervention motions, and "discourage premature intervention." *Kalbers v. U.S. Dep't of Just.*, 22 F.4th 816, 823 (9th Cir. 2021) (internal quotation marks omitted).

### A. The Motion to Intervene Is Timely

"Timeliness is determined by the totality of the circumstances" and involves three main factors: (1) the stage of the proceeding; (2) the possibility of prejudice; and (3) the "reason for and length of the delay" in seeking intervention. *Smith v. Los Angeles Unified Sch. Dist.*, 830 F.3d 843, 854 (9th Cir. 2016) ("*Smith v. LAUSD*"); *see also Kalbers*, 22 F.4th at 822-23. This motion is timely because it was filed at an early stage in the proceedings, it will not prejudice the original parties, and the delay in filing was both minimal and justified.

As to the first factor, courts routinely allow intervention while proceedings are in early stages. For instance, the Ninth Circuit found a motion was timely when it "was made at the outset of the litigation, before the EPA had even filed its answer." *Sierra Club v. U.S. Env't Prot. Agency*, 995 F.2d 1478, 1481 (9th Cir. 1993), *abrogated on other grounds by Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011) (en banc). Indeed, intervention can even be timely when sought after an answer has been filed. *See, e.g.*, *Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011). In this case, the answer is not due until 30 days after the decision on the motion for a preliminary injunction – or August 13. *See* Dkt. Nos. 12, 13.

Nor does it matter that a preliminary injunction has issued given that Proposed Intervenors will come into the case with that decision already made. In *Kootenai Tribe of Idaho*, while the plaintiffs' motion for a preliminary injunction was pending, the district court allowed environmental organizations to intervene as defendants. 313 F.3d 1094, 1106-07 (9th Cir. 2002), *abrogated on other grounds by Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173. The Ninth Circuit upheld the district court's grant of intervention in the context of permissive intervention because "intervention motions were filed near the case outset and the defendant-intervenors said

they could abide the court's briefing and procedural scheduling orders." *Id.* at 1111 n.10. Proposed Intervenors here are in a similar position.

Likewise, this Court has found that a motion to intervene is timely even when brought after a defendant had moved to dismiss and a plaintiff had moved for summary judgment – a point considerably further into the proceeding than an initial request for a preliminary injunction. *See San Diego County Lodging Ass'n v. City of San Diego*, Case No.: 20-cv-2151-WQH-MDD, 2021 WL 1733383, at *1, 3 (S.D. Cal. May 3, 2021). Indeed, in that case, the Court permitted the intervenor-defendant to file its own motion to dismiss and set a briefing schedule on that motion. *Id. *4.

With respect to the second factor, the timing of the intervention will not prejudice the original parties. Prejudice "is the most important consideration" in the timeliness inquiry. *Smith v. LAUSD*, 830 F.3d at 857 (internal quotation marks omitted); *see also Kalbers*, 22 F.4th at 826. When considering the timeliness of a motion to intervene, the "only prejudice that is relevant" is that which results from the timing of the intervention motion, "not from the fact that including another party in the case might make resolution more difficult[ ]." *Smith v. LAUSD*, 830 F.3d at 857 (internal quotation marks omitted; alteration in original); *see also Kalbers*, 22 F.4th at 825. Such prejudice can take the form of a threat to settlement negotiations or a substantial delay at a late stage in the proceedings. *See Brown v. Google LLC*, 172 F.4th 1128, 1137 (9th Cir. 2026) (finding prejudice where intervention would "likely" require existing parties to "start from scratch and nix the settlement deal"); *Smith v. Marsh*, 194 F.3d 1045, 1050-51 (9th Cir. 1999) (finding prejudice where "there was a lengthy delay – fifteen months – before [the] attempt[] to intervene, and many substantive and procedural issues had already been settled by the time of the intervention motion," including rulings on motions for summary judgment and class certification).

Here, the timing of Proposed Intervenors' motion, filed prior to an answer, is early enough to avoid any prejudice. At this early stage, there are no settlement negotiations that intervention could undermine, nor are there "many substantive and procedural issues … already … settled" that intervention could disturb. *See Brown v. Google*, 172 F.4th at 1137; *Smith v. Marsh*, 194 F.3d at

1051. Rather, as in *Kootenai Tribe*, nothing suggests that intervention at this early stage would cause undue delay or prejudice. *See* 313 F.3d at 1111 n.10.

As to the third factor, the delay in seeking intervention was brief and entirely justified. Courts measure delay "from the date the proposed intervenor knew or should have known that the parties would no longer adequately protect its interests" – not from the date that the litigation began. *Kalbers*, 22 F.4th at 824; *see also Smith v. LAUSD*, 830 F.3d at 854. Here, Proposed Intervenors only learned that the existing Defendant might not adequately represent their interests on May 18, 2026, when Defendant filed its Opposition to Plaintiffs' Motion for a Preliminary Injunction (Dkt. No. 16). Hochberg Dec. ¶9; Lapis Dec. ¶16. After the preliminary injunction hearing on June 3, 2026, Proposed Intervenors became more fully aware of the extent to which the State might not adequately represent their interests. Hochberg Dec. ¶10; Lapis Dec. ¶16.

Assuming the delay should be measured from May 18, it took Proposed Intervenors only a little more than two months to bring their motion to intervene. Such a short delay is minimal in light of the amount of time necessary to obtain counsel and prepare intervention papers. The Ninth Circuit has found that a similar delay "after concluding their interests were not being represented" can be justified. *Smith v. LAUSD*, 830 F.3d at 853, 859-62 (deeming a motion to intervene brought more than 70 days after learning of need to intervene was timely); *see also United States v. Aerojet Gen. Corp.*, 606 F.3d 1142, 1149 (9th Cir. 2010) (finding timely motion to intervene brought four months after learning of consent decree).

Alternatively, even if measured against the beginning of the litigation, Proposed Intervenors' motion to intervene was not significantly delayed. Courts have repeatedly allowed intervention even years into litigation. *See, e.g.*, *Day v. Apoliona*, 505 F.3d 963, 965-66 (9th Cir. 2007) (allowing intervention two years into proceedings, "even though Hawaii could have and should have intervened earlier"); *United States v. Oregon*, 745 F.2d 550, 552-53 (9th Cir. 1984) (allowing intervention 15 years after litigation began and noting "[m]ere lapse of time alone is not determinative"); *Smith v. LAUSD*, 830 F.3d at 854 (allowing intervention 20 years after start of litigation).

Mem. ISO Motion to Intervene, Case No. 3:26-cv-01675-WQH-JAC

**B.      Proposed Intervenors Have Interests In The Action**

"Whether an applicant for intervention as of right demonstrates sufficient interest in an action is a practical, threshold inquiry, and [n]o specific legal or equitable interest need be established." *Citizens for Balanced Use*, 647 F.3d at 897 (internal quotation marks omitted; alteration in original). To meet the test, "an applicant must establish that the interest is protectable under some law and that there is a relationship between the legally protected interest and the claims at issue." *Id.* An intervenor has a sufficient interest when it "will suffer a practical impairment of its interests as a result of the pending litigation." *Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d at 1179 (internal quotation marks omitted).

Proposed Intervenors meet the interest test. As discussed above, Earth Island and CAW have an interest in increasing recycling, for instance through motivating companies to make their products recyclable and prohibiting greenwashing. *See supra* at 2:1-4:5.

To effectuate this interest, both Proposed Intervenors have long supported the policy that S.B. 343 finally put into effect. Indeed, CAW co-sponsored S.B. 343 and took an active role in ensuring its passage. Lapis Dec. ¶12. PPC likewise lobbied for the bill's passage. Cohen Dec. ¶16. Since S.B. 343's enactment, Proposed Intervenors remain engaged in its implementation and have invested staff time and organizational resources in monitoring and participating in proceedings related to the CalRecycle material characterization process that determines which materials meet the law's criteria. Lapis Dec. ¶13; Cohen Dec. ¶17.

CAW has also been engaged in the development and implementation of S.B. 54, California's packaging extended producer responsibility program. Lapis Dec. ¶14. Because S.B. 54 depends on the same recyclability criteria as S.B. 343, the integrity of S.B. 343 matters to the operation of the program set forth in S.B. 54. *Id.*

This litigation not only affects Proposed Intervenors' interests at a general level but challenges the very legislation that Proposed Intervenors have successfully advanced to specifically protect their interests. In such a situation, the relationship between the interests and the claims is direct and irrefutable, and intervention should be permitted. *See Citizens for Balanced Use*, 647 F.3d at 897-98 (finding interest requirement met based on conservation groups' interests

in enjoying wilderness that was established by statute at issue in litigation); *Washington State Bldg. & Constr. Trades Council v. Spellman*, 684 F.2d 627, 630 (9th Cir. 1982) (determining that the proposed intervenor, "as the public interest group that sponsored the initiative, was entitled to intervention as a matter of right"); *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 526-27 (9th Cir. 1983) (granting intervention to environmental group that had "participated actively in the administrative process" to establish a conservation area).

### C.    This Action May Impede Or Impair Proposed Intervenors' Interests

Where there is a significant protectable interest, there is "little difficulty concluding that the disposition of th[e] case may, as a practical matter, affect it." *Citizens for Balanced Use*, 647 F.3d at 898 (internal quotation marks omitted; alteration in original).

Here, to the extent Plaintiffs' challenge is successful, Proposed Intervenors' interests will be impeded or impaired because the legislation that furthers their interests will be enjoined. Proposed Intervenors seek to prevent this destruction of their interests.

### D.    Proposed Intervenors' Interests Are Not Adequately Represented

An applicant for intervention need only show that the representation of its interests by existing parties "may be" inadequate. *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972). The burden to meet this showing is "minimal." *Id.* Although there is a presumption of adequate representation when the government is an existing party acting on behalf of the constituency that it represents or when an existing party and the intervenor have the same objective, this presumption is rebuttable. *Citizens for Balanced Use*, 647 F.3d at 898.

The Ninth Circuit considers several factors to assess the adequacy of representation, including whether a present party will make all of the proposed intervenor's arguments and whether the proposed intervenor offers necessary elements that other parties would neglect. *Id.* The most important consideration is how the proposed intervenor's interests compare with the interests of existing parties. *Id.*; *San Diego County Lodging Ass'n*, 2021 WL 1733383, at *3. In this case, Proposed Intervenors overcome any presumption of adequate representation because their interests diverge from Defendant's, the Attorney General will not raise all of their contentions, and the groups offer necessary expertise to the proceedings that other parties lack.

### 1. Proposed Intervenors' Interests Are Different Than Defendant's

Proposed Intervenors' dedicated environmental focus is narrower than the State's broader range of public policy considerations. That "both entities occupy the same posture in the litigation" does not mean that there is an alignment of interests. *Citizens for Balanced Use*, 647 F.3d at 899. Rather, there is a divergence of interests where the government "represent[s] a broader view than the more narrow, parochial interests" advanced by the intervenors. *Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1499 (9th Cir. 1995), *abrogated on other grounds by Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173; *see also Southwest Center for Biological Diversity v. Berg*, 268 F.3d 810, 823 (9th Cir. 2001) (finding governmental entity had broader "range of considerations" and could not be expected "successfully to safeguard" private intervenor's interests); *San Diego County Lodging Ass'n*, 2021 WL 1733383, at *4 (finding interest of city in defending ordinance broader than and distinct from union's interest in protecting members who benefit from ordinance); *CTM Holdings, LLC v. United States Department of Agriculture*, Case No. 24-CV-2016-CJW, 2024 WL 5700558, at *12 (N.D. Iowa Dec. 3, 2024) (holding government's interest in protecting federal environmental program was broader than intervening environmental organizations, such that government may have to consider factors and outcomes "beyond and perhaps contrary" to interests of environmental organizations).

Here, the State has broad interests in representing all Californians. For instance, the State must balance environmental concerns with private-sector concerns regarding the costs of compliance with the law as well as with ease of administration. In contrast, Proposed Intervenors have an interest in S.B. 343 being implemented in as robust a manner as necessary to encourage companies to make their products recyclable. This will create short-run costs to which the State may give greater weight than Proposed Intervenors. Similarly, Proposed Intervenors' interest in preventing greenwashing need not be counter-balanced by other concerns that the State may take into account.

### 2. Proposed Intervenors Will Raise Different Points Than Defendant

Proposed Intervenors will also raise different points than the Attorney General. The Ninth Circuit has found inadequate representation in cases where the intervenor wished to raise issues

that it was apparent the government would not include. *See, e.g.*, *Citizens for Balanced Use*, 647 F.3d at 899; *United States v. Oregon*, 839 F.2d 635, 638 (9th Cir. 1988).

By way of example, the State conceded at the preliminary injunction hearing that it was unclear whether S.B. 343 would increase or decrease the volume of material going to landfills. Dkt. No. 22 at 37:2-8. This concession does not adequately take into account that there is a difference between reduction of the amount of items consumers place into blue bins and the volume of and rate at which materials are actually recycled (i.e., recovered and turned into new products). Lapis Dec. ¶16. This issue demonstrates a misunderstanding of one of the core features of S.B. 343, which is to reduce contamination. Contamination is an economic problem, not a cosmetic one, because it can depress bale values and cause entire bales of material that would otherwise be recyclable to be landfilled. Lapis Dec. ¶¶17, 19. Accordingly, removing contaminated materials from the recycling stream improves net recovery and actual recycling rates – even if the volume of materials going into blue bins drops. Lapis Dec. ¶¶18, 20. Recycling is measured by actual recovery into responsible markets and by reduced contamination, not by gross blue-bin tonnage. Lapis Dec. ¶21.

As another example, Proposed Intervenors and the State differ in how they interpret the provision of S.B. 343 that prohibits the use of pigments and the like "that prevent the recyclability of the product or packaging." Pub. Res. Code §42355.51(d)(3)(B). This provision is best read as a binary proposition: A good is either recyclable or not due to the pigments or other ingredients; if it is not, recyclability is prevented. But Defendant interprets the provision to be a matter of degree depending on whether the design choices would result in a good being recycled "much less often." *See* Dkt. No. 22 at 50:17-20.

Further, although Defendant asserts that Plaintiffs do not meet the standard for a facial challenge, Proposed Intervenors intend to expand on that point with evidence. In brief, "uncertainty at a statute's margins will not warrant facial invalidation if it is clear what the statute proscribes in the vast majority of its intended applications." *California Teachers Ass'n v. State Bd. of Educ.*, 271 F.3d 1141, 1151 (9th Cir. 2001) (internal quotation marks omitted). Put another way, a statute is only facially vague "if it reaches a substantial amount of constitutionally protected

15

conduct." *Id.* at 1149 n.7 (internal quotation marks omitted). Proposed Intervenors intend to present evidence that large companies such as The Coca-Cola Company and PepsiCo understand that their beverage containers are in compliance with S.B. 343. Hochberg Dec. ¶¶7-8. Given this evidence of certain companies' ability to readily comply, Plaintiffs' claims that some of their members remain uncertain should be brought as an as-applied challenge, rather than a facial challenge that would throw out the law where it is functioning smoothly.

Relatedly, Proposed Intervenors believe any injunction in this case should extend no further than to enforcement against Plaintiffs and their members. *See Trump v. CASA, Inc.*, 606 U.S. 831, 861 (2025) (limiting preliminary injunction to relief to plaintiffs in lawsuit who have standing). Defendant did not make this argument.

The above "represents more than a mere difference in litigation strategy, which might not normally justify intervention, but rather demonstrates the fundamentally differing points of view" of Proposed Intervenors and Defendant. *Citizens for Balanced Use*, 647 F.3d at 899.

### 3.    Proposed Intervenors Have Substantive Expertise

As discussed above (*see supra* at 2:1-4:22), Proposed Intervenors also bring relevant expertise that is otherwise lacking from this case, including technical background, policy experience, and an extensive litigation history in plastics and greenwashing. *See Sagebrush Rebellion*, 713 F.2d at 528 (noting intervenor's "expertise apart from that of the [government]").

Proposed Intervenors' substantive knowledge will help the Court to assess the overall picture of recycling in California. As groups that have studied, written, and advocated about how to reduce waste and improve recycling for years, Proposed Intervenors will contribute scientific expertise on these questions. In addition, Proposed Intervenors can speak authoritatively about the overall successes and limitations of California's recycling program and other matters. Moreover, as noted above, Earth Island's litigation experience bears on the propriety of this lawsuit as a facial challenge.

## II.    Alternatively, Proposed Intervenors Should Be Granted Permissive Intervention

Proposed Intervenors also satisfy the requirements for permissive intervention under Rule 24(b) of the Federal Rules of Civil Procedure – an issue the Court need only reach if it denies

16

intervention of right. The factors for permissive intervention are (1) timeliness, (2) whether there is a common question of law and fact, (3) whether there is an independent ground for jurisdiction, and (4) whether intervention will unduly delay or prejudice the parties. *United States v. City of Los Angeles*, 288 F.3d 391, 403 (9th Cir. 2002). In exercising its discretion, the Court is "entitled to consider other factors," including "the nature and extent of the intervenors' interest" and whether the intervenors "will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented." *Spangler v. Pasadena City Bd. of Ed.*, 552 F.2d 1326, 1329 (9th Cir. 1977).

Proposed Intervenors have addressed the first and fourth factors – timeliness and delay/prejudice – above. *See supra* Part I.A.

As to the second factor, Proposed Intervenors' defense "shares with the main action a common question of law or fact." F.R.C.P. 24(b)(1)(B). Proposed Intervenors intend to defend S.B. 343 as constitutional and will rely on the same general body of law and many of the same facts as the existing parties to do so – even while raising additional issues as discussed above.

As to the third factor, the Ninth Circuit has held that "in federal-question cases, the identity of the parties is irrelevant and the district court's jurisdiction is grounded in the federal question(s) raised by the plaintiff." *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 844 (9th Cir. 2011). That is the case here, so the only restriction is on intervenors bringing state law claims. *See id.* Proposed Intervenors do not, which ends the jurisdiction inquiry.

Finally, for the reasons discussed above, Proposed Intervenors present an important perspective and will provide an important contribution to this action. *See supra* Part I.D.

## CONCLUSION

For the reasons stated above, Proposed Intervenors respectfully request that the Court permit them to intervene as of right, under Rule 24(a), or in the alternative, grant them permissive intervention under Rule 24(b).

Dated: July 27, 2026                          Respectfully submitted,

Jonathan Weissglass
Law Office of Jonathan Weissglass

By: /s/ Jonathan Weissglass
        Jonathan Weissglass

Attorney for Proposed Intervenors
Earth Island Institute and
Californians Against Waste