Jonathan Weissglass (CSB 185008)
Law Office of Jonathan Weissglass
1939 Harrison Street, Suite 150-B
Oakland, CA 94612
Telephone: 510-836-4200
E-mail: jonathan@weissglass.com

Attorney for Proposed Intervenors
Earth Island Institute and
Californians Against Waste

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

CALIFORNIA LEAGUE OF FOOD
PRODUCERS, *et al.*,

        Plaintiffs,

    v.

ROB BONTA,

        Defendant.

Case No. 3:26-cv-01675-WQH-JAC

**DECLARATION OF SCOTT
HOCHBERG IN SUPPORT OF
EARTH ISLAND INSTITUTE AND
CALIFORNIANS AGAINST
WASTE'S MOTION TO
INTERVENE AS DEFENDANTS**

Declaration of Scott Hochberg, Case No. 3:26-cv-01675-WQH-JAC

I, Scott Hochberg, declare as follows:

1.    I have personal knowledge of the matters set forth in this Declaration, and if called as a witness I would testify competently to those matters.

2.    I have been employed as the General Counsel and Litigation Director at Earth Island Institute ("Earth Island") since 2024. On that basis I am familiar with the organization's litigation matters and policy advocacy.

3.    Earth Island is a 501(c)(3) non-profit environmental organization and fiscal sponsor to approximately sixty-five (65) smaller environmental organizations (i.e., "projects"), each working in the areas of conservation, environmental justice, wildlife protection, and other environmental issues.

4.    Several of Earth Island's projects work to expose the harms of plastic pollution. Those include: Plastic Pollution Coalition, a global alliance of organizations, businesses, and thought leaders working toward a world free of plastic pollution and its toxic impacts on humans, animals, waterways, oceans, and the environment; the International Marine Mammal Project, one of the leading groups fighting to protect dolphins, whales, and the ocean environment for more than 30 years; and Shark Stewards, which works to restore ocean health by saving sharks from overfishing and the shark fin trade, and protecting critical marine habitats through the establishment of marine protected areas and shark sanctuaries. Accordingly, Shark Stewards launched a marine debris prevention effort that regularly conducts cleanups and quantifies marine debris in the San Francisco Bay area. These projects expend time and resources to reduce plastic waste and advocate for policies that promote reuse, recycling, and conservation, including the policy codified by S.B. 343. Their interests and resources would be directly harmed if S.B. 343 does not come into effect.

5.    Earth Island, as well as its project Plastic Pollution Coalition, have extensive experience litigating to oppose greenwashing and misleading statements of recyclability. *See, e.g.*, *Earth Island Inst. v. Coca-Cola Co.*, 321 A.3d 654 (D.C. Cir. 2024); *Plastic Pollution Coal. v. Keurig Dr Pepper Inc.*, 2025 D.C. Super. LEXIS 89 (Dec. 18, 2025); *Plastic Pollution Coal. v.*

Declaration of Scott Hochberg, Case No. 3:26-cv-01675-WQH-JAC

*Wonderful Co., LLC*, 2025 D.C. Super. LEXIS 24 (Aug. 7, 2025); *Plastic Pollution Coal. v. Danone Waters of Am., LLC*, 2025 D.C. Super. LEXIS 7 (Mar. 18, 2025).

6.      In addition, Earth Island has brought legal action against corporations that produce and market the single-use plastics that end up polluting California's beaches and waterways. *Earth Island Inst. v. Crystal Geyser Alpine Spring Water Co.*, No. 20CIV01213 (Cal. Super. Ct., San Mateo Cnty. Mar. 25, 2026), appeal pending.

7.      That case alleged, *inter alia*, that defendant companies created a public nuisance by misleadingly labeling consumer products as recyclable when knowing that the recycling system could not process the amount of plastic goods they generated, thereby contributing to the immense amount of plastic waste in the environment. In 2025, the remaining defendants—The Coca-Cola Company, PepsiCo, Crystal Geyser, and Colgate-Palmolive—moved for summary judgment. A true and correct copy of the brief in support of that motion is attached as Exhibit A.

8.      In that motion (at pages 8-9 and 18-22), the defendants argued that their products met the thresholds defined in the Materials Characterization Study mandated by S.B. 343 because at least 60 percent of California's population has access to recycling facilities that accept rigid plastic packaging made of PET #1, HDPE #2, and Polypropylene #5. In other words, the defendants did not argue that the requirements of S.B. 343 were vague or difficult to understand: rather, they argued that their compliance was so clearly defined by the statutory requirements that no doubt remained about the legality of their statements. Earth Island intends to present this evidence to the Court.

9.      In the current case, the State of California filed its Opposition to Plaintiffs' Motion for a Preliminary Injunction on May 18, 2026. I reviewed that document the day it was filed and was concerned that Earth Island's interests would not be adequately represented by Defendant.

10.      On June 12, 2026, Earth Island obtained the transcript of the June 3 hearing concerning the preliminary injunction. Based on that transcript, I became further concerned about Earth Island's interests being adequately represented by the State.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct to the best of my knowledge.

Executed at Berkeley, California, this 23rd day of July, 2026.

_____
Scott Hochberg

Declaration of Scott Hochberg, Case No. 3:26-cv-01675-WQH-JAC

# Exhibit A

Andrew S. Tulumello (SBN 196484)
Arianna M. Scavetti (*pro hac vice*)
Claire L. Chapla (SBN 314255)
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC  20036
Telephone:  (202) 682-7000
Facsimile:  (202) 857-0940
E-mail:  drew.tulumello@weil.com
E-mail:  arianna.scavetti@weil.com
E-mail:  claire.chapla@weil.com

*Attorneys for Defendant PepsiCo, Inc.*

(additional counsel on signature page)

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF SAN MATEO

| | |
|---|---|
| EARTH ISLAND INSTITUTE,<br><br>Plaintiff,<br><br>v.<br><br>CRYSTAL GEYSER WATER COMPANY, et al.,<br><br>Defendants. | CASE NO. 20-CIV-01213<br><br>**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF JOINT MOTION FOR SUMMARY JUDGMENT**<br><br>ASSIGNED FOR ALL PURPOSES TO:<br><br>JUDGE DON R. FRANCHI<br><br>**HEARING:**<br>Date:  March 16, 2026<br>Time:  3:00 p.m.<br>Dept.:  15<br><br>Action Filed:    February 26, 2020<br>Trial Date:      May 19, 2026 |

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR SUMMARY JUDGEMENT

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ................................................................................................ 7

II. BACKGROUND ............................................................................................... 11

III. LEGAL STANDARD ........................................................................................ 15

IV. ARGUMENT ..................................................................................................... 16

  A. Plaintiff's Nuisance Claim Fails Because the Undisputed Material Facts Show the Challenged Conduct of Each Defendant Is Authorized by Law ........................... 16

    1. California Law Required and Authorized the Chasing Arrows Symbol Around the Resin Identification Code Throughout the Relevant Period ........ 16

    2. California Law Incorporating the FTC Green Guides Expressly Authorizes All of the Challenged Recyclability Labeling ............................... 19

    3. The California Beverage Container Recycling and Litter Reduction Act and the Environmental Marketing Claims Act Also Authorize the PepsiCo, Coca-Cola, and Crystal Geyser Product Marketing ........................ 22

  B. Plaintiff's Nuisance Claim Is Independently Barred Because Plaintiff Cannot Prove That Defendants Promoted Their Products for a Hazardous Use ..................... 25

  C. Plaintiff Is a Private Entity that Lacks Standing to Sue for Public Nuisance ............. 28

    1. Plaintiff Has Not Incurred a Special Injury ..................................................... 29

    2. Plaintiff Cannot Base Standing on a Private Nuisance ................................. 33

V. CONCLUSION .................................................................................................. 37

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR SUMMARY JUDGEMENT

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aerojet-Gen. Corp. v. Superior Ct.*
(1989) 257 Cal.Rptr. 621 ................................................................................................ 35

*Aguilar v. Atl. Richfield Co.*
(2001) 25 Cal.4th 826 ..................................................................................................... 15

*Andrews v. Foster Wheeler LLC*
(2006) 138 Cal.App.4th 96 ....................................................................................... 15, 34

*City & Cnty. of San Francisco v. Purdue Pharma L.P.*
(N.D. Cal. 2020) 491 F.Supp.3d 610 ....................................................................... 27, 28

*City of Modesto Redevelopment Agency v. Superior Ct.*
(2004) 119 Cal.App.4th 28 ....................................................................................... 25, 26

*City of San Diego v. U.S. Gypsum Co.*
(1994) 30 Cal.App.4th 575 ......................................................................................... 9, 26

*Cnty. of Santa Clara v. Atl. Richfield Co.*
(2006) 137 Cal.App.4th 292 ................................................................................. 9, 26, 27

*Duchimaza v. Niagara Bottling, LLC*
(S.D.N.Y. 2022) 619 F. Supp. 3d 395 ............................................................................ 21

*In re Firearm Cases*
(2005) 126 Cal.App.4th 959 ........................................................................................... 37

*People ex rel. Gallo v. Acuna*
(1997) 14 Cal.4th 1090 ............................................................................................. 33, 36

*Greenfield MHP Associates, L.P. v. Ametek, Inc.*
(S.D. Cal. 2015) 145 F.Supp.3d 1000 ...................................................................... 31, 32

*Haehlen v. Wilson*
(1936) 11 Cal.App.2d 437 .............................................................................................. 35

*Hassell v. City & Cnty. of San Francisco*
(1938) 11 Cal.2d 168 ...................................................................................................... 18

*Hill v. Roll Internat. Corp.*
(2011) 195 Cal.App.4th 1295 ......................................................................................... 20

*Ileto v. Glock, Inc.*
(9th Cir. 2003) 349 F.3d 1191 .................................................................................. 28, 37

3

*In Def. of Animals v. Sanderson Farms, Inc.*
(N.D. Cal. Sept. 17, 2021) No. 20-cv-05293-RS, 2021 WL 4243391 .................................. 30

*Institoris v. City of Los Angeles*
(1989) 210 Cal.App.3d 10........................................................................ 10, 29, 35

*Koll-Irvine Ctr. Prop. Owners Ass'n v. County of Orange*
(1994) 24 Cal.App.4th 1036 ......................................................................... 32, 35

*Lamont Storm Water Dist. v. Pavich*
(2000) 78 Cal.App.4th 1081 .................................................................................. 7

*Lind v. City of San Luis Obispo*
(1895) 109 Cal. 340 ............................................................................................ 33

*Lyle v. Warner Bros. Television Prods.*
(2006) 38 Cal.4th 264 ......................................................................................... 15

*Madani v. Rabinowitz*
(2020) 45 Cal.App.5th 602 ....................................................................... 18, 29, 33

*Mangini v. Aerojet-Gen. Corp.*
(Ct. App. 1991) 230 Cal.App.3d 1125 ............................................................. 18, 29

*McGonnell v. Kaiser Gypsum Co.*
(2002) 98 Cal.App.4th 1098 ............................................................................... 15

*Merrill v. Navegar, Inc.*
(2001) 26 Cal.4th 465 ......................................................................................... 15

*Miller v. Dept. of Corr.*
(2005) 36 Cal.4th 446 ......................................................................................... 15

*Nealy v. City of Santa Monica*
(2015) 234 Cal.App.4th 359 .......................................................................... 10, 15

*Oliver v. AT&T Wireless Servs.*
(1999) 76 Cal.App.4th 521 ................................................................................. 35

*People v. Oliver*
(1948) 86 Cal.App.2d 885.................................................................................... 35

*Public Watchdogs v. S. Cal. Edison Co.*
(S.D. Cal., Dec. 3, 2019) No. 19-CV-1635 JLS (MSB) 2019 WL 6497886 .......................... 31

*Rincon Band of Luiseno Mission Indians etc. v. Flynt*
(2021) 70 Cal.App.5th 1059 ................................................................. 7, 28, 29, 31

*Rose v. Union Oil Co. of Cal.*
(N.D. Cal. Feb. 1, 1999) No. C 97-3808 FMS, 1999 WL 51819........................................... 30

4

*Saelzler v. Advanced Grp. 400*
(2001) 25 Cal.4th 763 ................................................................. 15

*San Francisco Herring Ass'n v. Pac. Gas & Elec. Co.*
(N.D. Cal. July 26, 2019) No. 14-cv-04393-WHO, 2019 WL 11073502........................ 10, 30

*Sierra Club, Inc. v. Exxon Mobil Corp.*
(N.D. Cal. Sept. 5, 2025) 2025 WL 2578218 ................................................. 27, 28

*Tesoro Refining & Mktg. Co. LLC v. City of Long Beach*
(C.D. Cal. 2017) 334 F.Supp.3d 1031 ..................................................... 30

*Tioga Public Sch. Dist. v. U.S. Gypsum Co.*
(8th Cir. 1993) 984 F.2d 915..................................................... 9, 26

*Union Bank v. Superior Ct.*
(1995) 31 Cal.App.4th 573 ..................................................... 34

*Union City v. S. Pac. Co.*
(1968) 261 Cal.App.2d 277..................................................... 18

*Venuto v. Owens-Corning Fiberglas Corp.*
(1971) 22 Cal.App.3d 116................................. 10, 28, 29, 31, 32, 33, 35, 36

**Statutes**

Bus. & Prof. Code, § 17580 ..................................................... 9, 22

Bus. & Prof. Code, § 17580.5 ..................................................... 8, 20, 21, 22

Civ. Code, § 3482..................................................... 8, 9, 16, 18, 22, 25

Civ. Code, § 3493..................................................... 28

Code Civ. Proc., § 437c..................................................... 10, 15

Code Civ. Proc., § 731 ..................................................... 7, 28

Code Fish & Game, § 711.7 ..................................................... 36

Pub. Res. Code, § 14501 ..................................................... 16

Pub. Res. Code, § 14524 ..................................................... 23

Pub. Res. Code, § 14560 ..................................................... 23

Pub. Res. Code, § 14561 ..................................................... 23

Pub. Res. Code, § 14573 ..................................................... 23

Pub. Res. Code, § 14573.1 ..................................................... 23

5

Pub. Res. Code, § 14573.5 ............................................................................................. 23

Pub. Res. Code, § 14576 ............................................................................................... 22

Pub. Res. Code, § 18000 ............................................................................................... 16

Pub. Res. Code, § 18015 ..................................................................................... 17, 18, 19

Pub. Res. Code, § 42041 ............................................................................................... 24

Pub. Res. Code, § 42355.51 ..................................................................................... 17, 18

Water Code, § 101 ....................................................................................................... 35

Water Code, § 102 ....................................................................................................... 35

**Other Authorities**

16 C.F.R. § 260.1 ......................................................................................................... 20

16 C.F.R. § 260.3 ......................................................................................................... 21

16 C.F.R. § 260.12 ........................................................................................... 8, 19, 20, 21

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR SUMMARY JUDGEMENT

## I.    INTRODUCTION

For nearly six years, Plaintiff Earth Island Institute has endeavored to hold four consumer products companies liable for plastic waste on California's beaches and waterways.  Plaintiff's theory is that these companies created a public nuisance by labeling certain products packaged in plastic containers as "recyclable" or affixing a "chasing arrows" symbol to them.  Plaintiff asserts that because not all plastic ultimately gets recycled and some plastic may enter the California marine environment at the hands of third parties, encouraging consumers to recycle their plastic packaging is no different than encouraging them to dump toxic chemicals down a storm drain.  That theory is nonsensical and contrary to decades of controlling California law and policy.  Plaintiff's nuisance suit was permitted to proceed past the pleading stage, but it can endure no longer.

The law and the undisputed material facts point to only one outcome: summary judgment in favor of Defendants.  Each Defendant's at-issue products are packaged in containers made of plastic resins that California law defines as recyclable.  Official state reports confirm that these resins are widely accepted for recycling throughout California.  The State expressly authorizes the challenged recyclability marketing and encourages (including through financial incentives) the recycling of the at-issue products.  Plaintiff's theory contravenes numerous California statutes and upends the finely-tuned policy decisions of the State Legislature.  Plaintiff's theory also is incompatible with longstanding limits on the public nuisance doctrine.  A private non-governmental organization cannot manufacture a public nuisance out of conduct authorized and encouraged by the State.

Moreover, even if these barriers did not defeat Plaintiff's claim—and they do—the undisputed material facts also confirm that Plaintiff, a **private entity**, lacks standing to bring this claim.  Absent narrow exceptions, California law reserves public nuisance claims for "designated public prosecutors," not private organizations or individuals, "[t]o avoid a multiplicity of [public nuisance] actions." (*Rincon Band of Luiseno Mission Indians etc. v. Flynt* (2021) 70 Cal.App.5th 1059, 1103; *see also Lamont Storm Water Dist. v. Pavich* (2000) 78 Cal.App.4th 1081, 1084–85, citing Code Civ. Proc., § 731 ["[W]hen the Legislature has intended to grant the power to abate a nuisance, it has done so specifically and in clear terms."].)  Plaintiff does not fit into either of the narrow exceptions in which a private party may sue for public nuisance.  The undisputed facts show that Plaintiff has not incurred a "special injury" or

7

experienced a "private nuisance."  Plaintiff has simply voluntarily spent money in furtherance of its organizational mission and picked up various kinds of litter (plastic and otherwise) around the Bay Area.  If that were sufficient to confer standing to sue a handful of companies for plastic waste throughout California waterways, the strict limits on public nuisance standing would be meaningless.

Defendants respectfully request that the Court grant summary judgment in their favor for the following reasons:

*First*, multiple statutes expressly authorize the exact recyclability marketing that Plaintiff challenges as a public nuisance.  "Nothing which is done or maintained under the express authority of a statute can be deemed a nuisance." (See Civ. Code, § 3482.)  The recyclability marketing that Plaintiff attacks is expressly authorized by statute:

- Plaintiff alleges that each Defendant contributed to a public nuisance of marine plastic pollution in California by labeling its plastic packaging with a "chasing arrows symbol." (Second Am. Compl. ("SAC") ¶ 81, 75.)  As Plaintiff admits (*id.* ¶ 172), however, California law *required* the chasing arrows symbol to appear around the "resin identification code" (a number that identifies the type of plastic resin the container is made of) on rigid plastic packaging, including all of the products at issue here, until just weeks before Plaintiff filed the Complaint.  Since then, the statute has continued to authorize this labeling.

- Plaintiff also invokes other statements by Defendants about the recyclability of their respective products, such as "recyclable" or "please recycle."  However, California law independently authorizes these recyclability statements, too.  At all relevant times in this case, California has expressly authorized claims about the recyclability of plastic packaging where at least 60% of consumers have access to recycling facilities capable of recycling the items. (See Bus. & Prof. Code, § 17580.5; 16 C.F.R. § 260.12.)  Here, all of the relevant products are packaged in containers made of plastic resin types that are accepted for recycling throughout California at levels far in excess of 60%.  According to a report conducted at the direction of the California Legislature by the California Department of Resources Recycling and Recovery ("CalRecycle"), every one of these packaging types comfortably clears the statutory threshold for consumer access to recycling facilities—with some even exceeding a 95% accessibility rate. (Separate

8

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR SUMMARY JUDGEMENT

Statement of Undisputed Material Facts ("SSUMF") ¶¶ 113–129.)  As a matter of law and undisputed fact, each Defendant's products are packaged in recyclable containers, and Defendants were authorized to market such products as "recyclable."

- In addition, many of the products at issue here—including all of the PepsiCo and Coca-Cola products and all but one of the Crystal Geyser products—are plastic "beverage containers" covered by California's bottle deposit law, the Beverage Container Recycling and Litter Reduction Act ("BCRLRA").  The Legislature has specifically stated that it "shall not be considered misleading" to "display[] a chasing arrows symbol or otherwise direct[] a consumer to recycle" plastic beverage containers subject to the BCRLRA.  (Bus. & Prof. Code, § 17580(e)(2).)  The BCRLRA is fatal to Plaintiff's case against beverage containers.

Because these statutes authorize the challenged recyclability marketing for each Defendant's products—and because it cannot be a nuisance to market a lawful product as expressly authorized and encouraged by the law—Plaintiff's claim against each Defendant fails under Civil Code § 3482.

*Second*, Plaintiff's claim is independently barred by a long line of California authority that prohibits public nuisance from supplanting product liability doctrines unless the plaintiff can prove one narrow exception: that the defendant "affirmative[ly] and knowing[ly] ***promot[ed] a product for a hazardous use***." (*Cnty. of Santa Clara v. Atl. Richfield Co.* (2006) 137 Cal.App.4th 292, 309, original emphasis.)  This rule protects the important dividing line between nuisance law and products liability law.  California appellate courts repeatedly have enforced that line to avoid having public nuisance become "a monster that would devour in one gulp the entire law of tort." (*City of San Diego v. U.S. Gypsum Co.* (1994) 30 Cal.App.4th 575, 586, quoting *Tioga Public Sch. Dist. v. U.S. Gypsum Co.* (8th Cir. 1993) 984 F.2d 915, 921.)  This case does not fit the narrow "hazardous use" exception because promoting the recycling of recyclable plastic packaging is not promotion for a hazardous use.  Plaintiff admits that recycling plastic products is a means to address plastic pollution.  (SSUMF ¶ 134.)  For that reason, the State of California ***pays*** consumers to recycle many of these products.  If Plaintiff's nuisance theory were accepted, the Legislature, CalRecycle, and countless other State and local regulators and recycling facilities would be responsible for the same "hazardous use" and alleged public nuisance, as they all have promoted recycling of plastic packaging, too.

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR SUMMARY JUDGEMENT

*Finally*, even if a public nuisance claim were available under these facts and law (and it is not), Plaintiff lacks standing to bring it.  A ***private party*** like Plaintiff can bring a ***public nuisance*** claim only if it satisfies one of two narrow exceptions: when it has incurred a "special injury" that is "different in kind from that suffered by the general public" (*Venuto v. Owens-Corning Fiberglas Corp.* (1971) 22 Cal.App.3d 116, 124), or it suffers a concrete harm to property such that the nuisance is private as well as public.  (*Institoris v. City of Los Angeles* (1989) 210 Cal.App.3d 10, 20.)  The undisputed facts show Plaintiff does not meet either requirement.  As to special injury, Plaintiff relies on voluntary expenditures to promote its organizational mission and organize beach clean-ups of litter common to the general population.  But neither of these can constitute a "special injury" as a matter of law.  (*San Francisco Herring Ass'n v. Pac. Gas & Elec. Co.* (N.D. Cal. July 26, 2019) No. 14-cv-04393-WHO, 2019 WL 11073502, at *4.)  As to private nuisance, the undisputed facts confirm that Plaintiff has not experienced one.  After years of litigation, Plaintiff has not produced evidence that it found ***Defendants' products*** on its property before filing suit or that it otherwise was harmed in a way the law recognizes.

For all of these reasons, summary judgment is required because "there is no triable issue as to any material fact and [each Defendant] is entitled to a judgment as a matter of law." (*Nealy v. City of Santa Monica* (2015) 234 Cal.App.4th 359, 370, citing Code Civ. Proc., § 437c, subd. (c).)  Whatever concerns Plaintiff may have about plastics or recycling in the abstract, the products here are lawful, non-defective consumer products packaged in containers that are accepted for recycling throughout California and marketed in accordance with state law.  This conduct cannot give rise to a public nuisance claim as a matter of law.  Even if it could, Plaintiff does not satisfy any of the limited circumstances in which a private party—not the government—can bring a public nuisance claim.  The Court should grant summary judgment in favor of Defendants.[1]

---

[1] This memorandum addresses multiple grounds for summary judgment that are case dispositive as to all Defendants.  Two Defendants, Crysal Geyser and Colgate, are also submitting separate individual memoranda addressing additional arguments concerning their respective products.  For the avoidance of doubt, Defendants PepsiCo and Coca-Cola do not concede or waive any corresponding arguments with respect to their products but have chosen not to raise them here given other definitive grounds that compel summary judgment.

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR SUMMARY JUDGEMENT

## II.    BACKGROUND

Plaintiff Earth Island Institute is a "non-profit, public interest, membership organization" based in Berkeley, California that "work[s] to combat plastic pollution, and protect California coasts, and marine life from myriad harms."  (SAC ¶ 23.)  Plaintiff filed this lawsuit on behalf of itself and four of its "fiscally sponsored projects": Plastic Pollution Coalition, the International Marine Mammal Project, Shark Stewards, and 1000 Fountains.  (*Id.* ¶ 24.)  Plaintiff seeks to hold Defendants responsible for plastic pollution in the California marine environment because they sell consumer products packaged in plastic containers marked as "recyclable" or with a chasing arrows symbol, when in fact not all plastic actually gets recycled and some unfortunately may enter the environment.  (*Id.* ¶¶ 81, 144.)

Defendants, in turn, are PepsiCo, Inc. ("PepsiCo"), the Coca-Cola Company ("Coca-Cola"), Crystal Geyser Water Company ("Crystal Geyser"), and Colgate-Palmolive Company ("Colgate")— four manufacturers of well-known, everyday consumer products which, like countless other companies, use an array of materials to package their products, including plastic containers.  In the course of discovery in this case, relevant products for each Defendant have been defined as follows:

- *PepsiCo:* (1) Aquafina in 16.9-ounce PET #1 bottle; (2) Gatorade in 28-ounce PET and 20-ounce PET #1 bottles in Lemon-Lime, Orange, Fruit Punch, Cool Blue, and Glacier Cherry flavors; (3) Pepsi in 2-liter PET and 16.9-ounce PET #1 bottles; (4) Mountain Dew in 20-ounce PET #1 bottle; and (5) Diet Pepsi in 16.9-ounce PET #1 bottle.  (SSUMF ¶ 1.)

- *Coca-Cola:* (1) Coca-Cola - 2L PET #1 bottle; (2) Dasani - 0.5L PET #1 bottle; (3) Simply - Fruit Juice Orange No Added Sugar Bottle 52 Fluid Ounce PET #1 bottle; (4) Powerade - ION4 Sport Drink Mountain Berry Blast Bottle 32 Fluid Ounce PET #1 bottle; (5) Smartwater - 1L PET #1 bottle; (6) Coca-Cola - 16.9 oz PET #1 bottle; and (7) Diet Coke - 16.9 oz PET #1 bottle. (SSUMF ¶ 24.)

- *Crystal Geyser:* (1) Crystal Geyser Sparkling Waters, *i.e.*, Sparkling Mineral Water and Sparkling Spring Water (various flavors, in PET #1 bottles); and (2) Tejava Tea (various flavors, in both PET #1 bottles and Polypropylene #5 pods).[2]  (SSUMF ¶ 62.)

---

[2] Since late 2023, Crystal Geyser has not manufactured Sparkling Mineral Water or Sparkling Spring Water, and since about mid-2024, it has not manufactured Tejava Tea pods.  (Decl. of Chris Olsen filed

11

- **Colgate:** (1) Irish Spring Body Wash 18 oz Original scent; (2) Ajax Ultra Orange 28 oz; (3) Ajax Ultra Orange 90 oz; (4) Fabuloso 56 oz Lavender scent; (5) Fabuloso 16.9 oz Lavender scent; (6) Softsoap Liquid Hand Soap Crisp Clean 11.25 oz; (7) Softsoap Liquid Hand Soap Soothing Clean Aloe Vera Fresh 7.5 oz; and (8) Ultra Palmolive Ultra Strength 20 oz. (SSUMF ¶ 79.[3])

The plastic container for each aforementioned product is made of PET #1 or HDPE #2, except for the Crystal Geyser Tejava tea pods, which were packaged in plastic containers made of Polypropylene #5 before they were discontinued. (SSUMF ¶¶ 5, 9, 12, 16, 20, 29, 34, 38, 43, 47, 52, 57, 63–65, 84, 88, 91, 94, 96, 98, 101, 103.) Plaintiff challenges Defendants' use of the "chasing arrows" symbol on these products (SAC ¶¶ 75, 81, 239), along with other labeling or marketing statements that the products are recyclable. (See, e.g., *id.* ¶¶ 89–92, 96–102, 105.) For example, during the relevant time period, some of the PepsiCo products' labels included the statement "please recycle" in small text, as depicted with the red oval in the following annotation:



(SSUMF ¶ 15.)

---

herewith, ¶ 11.) In addition, during this litigation, Plaintiff has, from time to time, tried to attribute to Crystal Geyser a product Crystal Geyser has never manufactured or sold, "Crystal Geyser Natural Alpine Spring Water." That product is manufactured and sold by a separate company, CG Roxane LLC. Plaintiff did not sue CG Roxane. Crystal Geyser does not control or operate CG Roxane. (SSUMF ¶¶ 77–78.)

[3] While Plaintiff has contended that additional Colgate products should be at issue, Plaintiff will not be able to establish that these products are relevant to the alleged nuisance pleaded in its February 2020 Complaint. (See SSUMF ¶¶ 80–83.) In any event, Plaintiff also cannot establish that **any** Colgate product caused the marine plastic pollution at issue here. (See Motion for Summary Judgment By Defendant Colgate-Palmolive Company ("Colgate Mot. Summ. J.").)

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR SUMMARY JUDGEMENT

By way of another example, during the relevant time period, some of the Coca-Cola products' labels included the statement "please recycle" in small text, as depicted with the white oval in the following annotation:



(SSUMF ¶ 37.)

Plaintiff alleges it has been harmed by Defendants' conduct in specified ways.  Plaintiff asserts it has "diverted significant resources" to "educat[e] the media and public about Defendants['] misleading claims about recycling" and about "plastic pollution," "to remediate California coasts and waterways impacted by plastic pollution, and to counteract threats to marine wildlife from plastic." (SAC ¶¶ 26, 253; see also *id.* ¶ 252.)  Plaintiff further alleges that it owns "5.6 acres in Richmond, California, which includes two waterways connected to the San Francisco Bay, which are adversely impacted by plastic pollution." (*Id.* ¶ 28.)  Plaintiff says it "expends resources on remediating [these] waterways on its private property" (*id.* ¶ 253), and that the plastic purportedly found there "limits the aesthetic enjoyment of the property," and causes "hazard[s] to the animals who live and roam on the property," including inhibiting their movement and, through microplastics, affecting the animals' health.  (SSUMF ¶ 177.)

Plaintiff requests that the Court order Defendants to: (1) "abate[] the … nuisance," (2) "refrain from marketing and promotion of products that state or imply that the products are recyclable," (3) issue "corrective advertising … to inform consumers that the products do not have the characteristics, uses, benefits, and quality Defendants have claimed," (4) "disburse the funds and resources necessary to remediate the harm they have caused," and (5) "pay compensatory damages in an amount according to proof." (SAC, Prayer for Relief.)

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR SUMMARY JUDGEMENT

Plaintiff initially filed the lawsuit on February 26, 2020.  The original Complaint asserted seven different causes of action, including alleged violation of the California Consumers Legal Remedies Act, public nuisance, breach of express warranty, strict liability—failure to warn, strict liability—design defect, negligence, and negligence—failure to warn.  (Compl. ¶¶ 161–226.)  In its First Amended Complaint, Plaintiff added a claim for alleged violation of California's Unfair Competition law.  (First Am. Compl. ¶¶ 254–271.)  After several rounds of demurrers, the only surviving claim was a single cause of action for public nuisance.  (Order Granting Mot. to Strike (Feb. 25, 2025); Order Sustaining Demurrer to Second Am. Compl. (Feb. 25, 2025); see also SAC ¶¶ 299–316.)

Judge Swope, who was previously assigned to this case, initially sustained Defendants' demurrers to the entire Complaint, including the public nuisance claim, reasoning with respect to public nuisance that Plaintiff "neither pled sufficient facts to allege Defendants promoted a product for a hazardous use, nor causation," and "Plaintiff's argument that the products are not recyclable contradict the express allegations of the Complaint."  (Order Sustaining Demurrer to Complaint (May 26, 2023) ("First Demurrer Ruling"), at 3.)[4]

After Plaintiff filed a First Amended Complaint, Judge Swope held that Plaintiff had sufficiently addressed the pleading defects in its nuisance claim to survive demurrer.  He observed that the standard for a products-based nuisance claim against a manufacturer is that "the defendant must have promoted a product with the requisite knowledge of the hazard that such a product could create, and the instruction to use the product in a hazardous manner."  (Order Overruling in Part Demurrer to First Am. Compl. (July 11, 2024) ("Second Demurrer Ruling"), at 8.)  But he concluded that Plaintiff met this standard "[f]or the sake of sufficiency of the pleadings" by alleging that "Defendants knew of the difficulty or even impossibility of recycling the plastic in their products," yet nonetheless "encourage[d] consumers to send used plastic containers to recycling facilities."  (Id. at 9.)

Judge Swope's ruling at the pleading stage did not parse key differences between various types of packaging and plastic resin types, nor did he address the specific California statutes that authorize the recyclability labeling here.  He did not have facts before him, and at the pleading stage, he accepted

---

[4] As to standing, Judge Swope summarily held that "Plaintiff has sufficiently pled standing as a private person," without further elaboration.  (First Demurrer Ruling at 3.)

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR SUMMARY JUDGEMENT

as true Plaintiff's broad and undifferentiated allegations about plastic and limitations of recycling. (See *id*.) The undisputed facts now confirm that—as a matter of California law—there is no "difficulty or even impossibility" of recycling Defendants' products; instead, the State of California has determined these products are recyclable, authorizes them to be marketed as such, and encourages their recycling.

### III.    LEGAL STANDARD

It is "[t]he purpose of the law of summary judgment [] to provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute." (*Aguilar v. Atl. Richfield Co.* (2001) 25 Cal.4th 826, 843.) "A court shall grant a motion for summary judgment if all the papers show there is no triable issue as to any material fact and the moving party is entitled to a judgment as a matter of law." (*Nealy*, 234 Cal.App.4th at 379, citing Code Civ. Proc., § 437c, subd. (c).) When moving for summary judgment, it is the defendant's initial burden to show "that the plaintiff has not established, and cannot reasonably expect to establish, a prima facie case." (*Miller v. Dept. of Corr.* (2005) 36 Cal.4th 446, 460, quotation marks omitted, citing *Saelzler v. Advanced Grp. 400* (2001) 25 Cal.4th 763, 769.)

Once the defendant has shown one or more elements of the cause of action cannot be established, including through plaintiff's failure to provide evidence in discovery, the burden shifts to the plaintiff to produce affirmative evidence showing a triable issue of material fact exists. (See *Lyle v. Warner Bros. Television Prods.* (2006) 38 Cal.4th 264, 274; *Nealy*, 234 Cal.App.4th at 370; *Andrews v. Foster Wheeler LLC* (2006) 138 Cal.App.4th 96, 104.) To meet this burden, it is not enough for the plaintiff to say something "could" or "might" have been the case, nor is it enough to "rely upon the mere allegations or denials of [the] pleadings." (*McGonnell v. Kaiser Gypsum Co.* (2002) 98 Cal.App.4th 1098, 1105-06; *Lyle*, 38 Cal.4th at 274, citing *Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476-477.) Where the plaintiff fails to produce sufficient evidence to establish a triable issue, summary judgment for the defendant is proper. (*Lyle*, 38 Cal.4th at 274.)

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR SUMMARY JUDGEMENT

## IV.    ARGUMENT

### A.    Plaintiff's Nuisance Claim Fails Because the Undisputed Material Facts Show the Challenged Conduct of Each Defendant Is Authorized by Law

Plaintiff's claim fails as a matter of law because the conduct Plaintiff challenges—marketing recyclable plastic packaging as recyclable—is expressly authorized by law.  California law is clear that "[n]othing which is done or maintained under the express authority of a statute can be deemed a nuisance."  (See Civ. Code, § 3482.)

Plaintiff asks this Court to hold Defendants liable for all marine plastic pollution because Defendants have marketed some of their products' plastic containers as recyclable.  But California's Legislature has authorized the conduct Plaintiff targets and expressly determined that "[f]acilitating the recycling of plastics is in the best interests of the state."  (Pub. Res. Code, § 18000, subd. (a); see also *id.*, § 14501, subds. (c), (g) & (h) [describing California's interests in promoting recycling].)  And it has enacted legislation to regulate recycling and to specify which products may be labeled as recyclable. While at the pleading stage, the Court had to accept Plaintiff's allegation that Defendants' products are unlawfully labeled and impossible to recycle, the evidence has now confirmed that Defendants' marketing statements are approved, authorized, and encouraged by California law.

### 1.    California Law Required and Authorized the Chasing Arrows Symbol Around the Resin Identification Code Throughout the Relevant Period

Plaintiff contends that Defendants contributed to the alleged public nuisance by displaying a "chasing arrows" symbol on their products' packaging.  (See, e.g., SAC, Factual Background, Section A; *id.* ¶¶ 81, 239.)  The "chasing arrows" symbol is the only statement that Plaintiff alleges is common to every product at issue.  (*Id.* ¶¶ 92, 96–98, 102, 105.)  Plaintiff tries to recast this ubiquitous symbol as a contributing factor to a sweeping public nuisance.  It is not: it is a symbol that has been ***required*** and authorized by law to appear on all rigid plastic packaging, including Defendants' products.

Since January 1, 1992, "all plastic products sold in California" have been required to display "a molded label indicating the plastic resin used to produce the product," otherwise known as a resin identification code ("RIC").  (Pub. Res. Code, § 18000, subd. (b).)  Although Plaintiff's Complaint at times lumps all plastic together, there are important distinctions.  In particular, there are several varieties of plastic resins, each with specific and distinct manufacturing processes, molecular composition, and

physical characteristics that affect production, use and recyclability.  Certain resins are used for certain product types, such as polyethylene terephthalate ("PET #1") and high density polyethylene ("HDPE #2") for beverage containers and other uses.  Other resin types, including mixed resins, are often used for other food, consumer product, and industrial uses, such as plastic bags, flexible film packaging, thermoform clamshells, and buckets.  (SSUMF ¶ 130.)

California law required the RIC to be surrounded by a "chasing arrows" symbol on the packaging. (Pub. Res. Code, § 18015, subd. (a).)  Before January 1, 2020, the relevant statute mandated:

> All rigid plastic bottles and rigid plastic containers sold in California on and after January 1, 1992, shall be labeled with a code which indicates the resin used to produce the rigid plastic bottle or rigid plastic container … **The code shall consist of a number placed inside a triangle, and letters placed below the triangle. The triangle shall be equilateral, formed by three arrows with the apex of each point of the triangle at the midpoint of each arrow, rounded with a short radius. The pointer (arrowhead) of each arrow shall be at the midpoint of each side of the triangle with a short gap separating the point from the base of the adjacent arrow. The triangle, formed by the three arrows curved at their midpoints shall depict a clockwise path around the code number.**

(*Id*. [eff. to Dec. 31, 2019, emphases added].)  This yielded the familiar "chasing arrows" image:

      

Failure to comply with the RIC labeling requirement was "a crime punishable by a fine of one thousand dollars," (*id.,* § 18106), meaning that while this mandatory requirement was in effect, manufacturers could face significant fines if they did ***not*** label their products with the chasing arrows symbol.  This "chasing arrows" legal requirement was in place until December 31, 2019.  (*Id.*)  Since then, California has expressly authorized (though no longer requires) the "chasing arrows" symbol to appear around the resin identification code on recyclable plastic products like these.  (Pub. Res. Code, § 18015, subd. (a) [eff. Jan. 1, 2020 until Dec. 31, 2021]; *id.*, § 18015 subds. (a) & (d) [eff. Jan. 1, 2022]; *id.* § 42355.51, subd. (b) [eff. Jan. 1, 2022].)

Plaintiff's theory that Defendants created a public nuisance by misusing the "chasing arrows" symbol around the RIC is foreclosed several times over:

*First*, California law ***required*** the chasing arrows symbol to appear around the RIC on rigid plastic packaging, including all of the products at issue here, until December 31, 2019—just 57 days before Plaintiff filed the Complaint. (Pub. Res. Code, § 18015, subd. (a) [eff. to Dec. 31, 2019].)  The

17

Complaint acknowledges this. (See SAC ¶ 172.) Defendants' use of the chasing arrows symbol around the RIC was not just protected but legally mandated for nearly the entirety of the relevant period of February 26, 2017 to February 26, 2020.[5] Plaintiff cannot hold Defendants liable for public nuisance based on conduct required by law. (See *Union City v. S. Pac. Co.* (1968) 261 Cal.App.2d 277, 281 ["What is required by statute … cannot be a nuisance."].)

*Second*, after January 1, 2020, California law has expressly authorized the chasing arrows symbol to appear around the RIC if the packaging is recyclable in California according to CalRecycle. (See Pub. Res. Code, § 18015(a) [eff. Jan. 1, 2020 until Dec. 31, 2021)], § 42355.51, subd. (b) [eff. Jan. 1, 2022].)[6] When the Legislature passed the "Truth in Labeling for Recyclable Materials Act," or "SB 343," it mandated that CalRecycle conduct a "material characterization study" to determine the recyclability of packaging within California.[7] The Material Characterization Study, which was published on April 4, 2025, reconfirmed that all of Defendants' products are recyclable in California, as detailed below (*infra* at 19–22). Before and after publication of the Material Characterization Study, therefore, Defendants used the chasing arrows symbol and RIC on their packaging "under the express authority of a statute," so it cannot form the basis of a nuisance. (Civ. Code, § 3482; see also, e.g., *Hassell v. City & Cnty. of San Francisco* (1938) 11 Cal.2d 168, 171.)

*Third*, it makes no difference that Plaintiff alleges that some consumers may misinterpret the meaning of the RICs and "chasing arrows" symbol that Defendants were "required to display" on "rigid plastic bottles and containers." (SAC ¶ 172.) California law required this symbol to appear around the

---

[5] The statute of limitations for a nuisance claim by a private party is three years. (*See Madani v. Rabinowitz* (2020) 45 Cal.App.5th 602, 608; *Mangini v. Aerojet-Gen. Corp*. (Ct. App. 1991) 230 Cal.App.3d 1125, 1148). Plaintiff filed its complaint on February 26, 2020.

[6] (See also Pub. Res. Code, § 18015(d) ["The resin identification code … shall not be placed inside a chasing arrows symbol, as defined in subdivision (f) of Section 17580 of the Business and Professions Code, unless the rigid plastic bottle or rigid plastic container meets the statewide recyclability criteria provided in subdivision (d) of Section 42355.51."].)

[7] Specifically, the statute directed CalRecycle to determine whether the "material type and form is collected for recycling by recycling programs for jurisdictions that collectively encompass at least 60 percent of the population of the state," and whether "the material type and form is sorted into defined streams for recycling processes by large volume transfer or processing facilities … that process materials and collectively serve at least 60 percent of recycling programs statewide." (Pub. Res. Code, § 42355.51, subd. (d)(1)-(2).)

18

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR SUMMARY JUDGEMENT

RIC on all rigid plastic packaging to signify the plastic resin type used.  (See Pub. Res. Code, § 18015 ["***All rigid plastic bottles and rigid plastic containers sold in the state*** shall be labeled with a code that indicates the resin used to produce the rigid plastic bottle or rigid plastic container."] [emphasis added].)[8]  And, as discussed below, the use of the chasing arrows symbol on other parts of the Defendants' products outside the RIC is independently authorized by the Federal Trade Commission's Guides for the Use of Environmental Marketing Claim ("Green Guides"), which the California Legislature has codified and incorporated into statutory law.  Each Defendant's at-issue products ***are*** recyclable in California and can be marketed as "recyclable" under California law.  (See *infra* at 19–22.)  Plaintiff's claims based on the chasing arrows symbol are flatly precluded by California law.

> **2.      California Law Incorporating the FTC Green Guides Expressly Authorizes All of the Challenged Recyclability Labeling**

Plaintiff fares no better with respect to the other recyclability marketing claims, including:

- ***PepsiCo:*** Some of the labels of the relevant PepsiCo products included the statement, "Please Recycle."  (SSUMF ¶¶ 8, 15, 19, 23.)

- ***Coca-Cola:*** Some of the labels of the relevant Coca-Cola products included a statement that the product is "recyclable," and/or the statements "Please Recycle" or "enjoy the inside, recycle the outside."  (SSUMF ¶¶ 33, 37, 42, 46, 51, 56, 61.)

- ***Crystal Geyser:***  The labels of Crystal Geyser's sparkling water bottles (which, again, have not been manufactured for almost two years), included the statement "please recycle."  Crystal Geyser's Tejava Tea bottles include the same "please recycle" statement, along with a statement that the product is "recyclable."  The now-discontinued Tejava tea pods had a foil lid that included the "chasing arrows" symbol and the word "RECYCLE," and the box in which the tea pods were sold stated, "Recycle aluminum lid & plastic pod wherever these recyclables are accepted."  (SSUMF ¶¶ 73–75.)

- ***Colgate:*** Some of the labels of the relevant Colgate products included chasing arrows symbols with statements such as "Empty Before Recycling," "Empty and Replace Cap," "Empty &

---

[8] Likewise, the Federal Trade Commission's Guides for the Use of Environmental Marketing Claims, which California law treats as authoritative, take the view that "[i]f the manufacturer places the RIC, without more, in an inconspicuous location on the container (e.g., embedded in the bottom of the container), it would not constitute a recyclable claim."  (16 C.F.R. § 260.12, Example 2.)

Discard Pump," or "Recyclable Bottle."  (SSUMF ¶¶ 86, 90, 93, 95, 97, 99, 100, 102, 105.)  One product label contained a chasing arrows symbol with a "Check Locally" disclaimer that further noted, "Not recycled in all communities."  (SSUMF ¶ 87.)  Each of these statements is expressly authorized by California law that permits products to carry claims about recyclability when they meet certain thresholds for consumer access to recycling facilities.

The California Legislature has dictated when manufacturers can market their products as "recyclable" by codifying and incorporating the Green Guides into California statutory law.  (Bus. & Prof. Code, § 17580.5, subd. (a).)  The Green Guides, issued by the Federal Trade Commission, "help marketers avoid making environmental marketing claims that are unfair or deceptive" by setting standards for when and how manufacturers can characterize their products as having particular environmental attributes, including being "recyclable."  (16 C.F.R. § 260.1, subd. (a).)  During the relevant time period, California law provided parties with a full "defense" to liability if their "environmental marketing claims conform to the standards or are consistent with the examples contained" in the Green Guides.  (Bus. & Prof. Code, § 17580.5, subd. (b); cf. *Hill v. Roll Internat. Corp.* (2011) 195 Cal.App.4th 1295, 1302–1303 [explaining that the California Legislature, "by incorporating the [Green G]uides into the CLRA definition of environmental marketing claims (§ 17580.5, subd. (a)), has elevated the [G]uides to tests of illegality"].)

Under the Green Guides, an item can be marketed as recyclable if it "can be collected, separated, or otherwise recovered from the waste stream through an established recycling program for reuse or use in manufacturing or assembling another item." (See 16 C.F.R. § 260.12, subd. (a).)  Unqualified recyclability claims are permitted where (i) "the entire product or package, excluding minor incidental components, is recyclable," and (ii) recycling facilities that are capable of recycling the item "are available to a substantial majority of consumers or communities where the item is sold," i.e., "at least 60 percent." (*Id.* at subds. (b)(1) & (c).)[9]  If this 60 percent threshold is not satisfied, then "[m]arketers should qualify all recyclable claims." (*Id.* at subd. (b)(2).)[10]

---

[9] "Recyclable" is an example of an unqualified recyclability claim. (16 C.F.R. § 260.12, Example 1.)

[10] "For example, if recycling facilities are available to slightly less than a substantial majority of consumers or communities where the item is sold, a marketer may qualify a recyclable claim by stating:

20

The undisputed material facts show that the challenged labeling on each Defendant's products complies with these Green Guides standards, incorporated into California law for recyclability marketing. (Bus. & Prof. Code, § 17580.5, subd. (a).) All of the relevant PepsiCo and Coca-Cola products—and all of the Crystal Geyser products aside from the discontinued tea pods—are beverage containers made of PET #1. (SSUMF ¶¶ 1–3, 5, 9, 12, 16, 20, 24–26, 29, 34, 38, 43, 47, 52, 57, 63–64, 69–70.) The discontinued Crystal Geyser tea pods were packaged in Polypropylene #5. (SSUMF ¶ 65.) And the relevant Colgate products are packaged in plastic containers made of resins PET #1 or HDPE #2.[11] (SSUMF ¶¶ 84, 88, 91, 94, 96, 98, 101, 103.) PET #1, HDPE #2, and Polypropylene #5 are recyclable in California.

CalRecycle released its Material Characterization Study on April 4, 2025. The study found that **85% or more** of California's statewide population have access to a residential curbside recycling program that accepts plastic packaging made of PET #1, **88% or more** have access for plastic packaging made of HDPE #2, and **78%** have access for plastic packaging made of Polypropylene #5. (SSUMF ¶¶ 111–129.) These numbers are even higher for certain sub-categories of packaging, such as 96% or above for beverage containers made from PET #1 (clear and pigmented) and 99% for beverage containers made from HDPE #2. (SSUMF ¶¶ 114, 116, 121–122.)

Plaintiff cannot dispute the State's authoritative findings. Given these findings, Plaintiff admits that "plastics with the code #1 for polyethylene terephthalate (PET), used in water and soda bottles, and #2 high-density polyethylene (HDPE), used in milk jugs and shampoo bottles, are potentially suitable for common recycling." (SAC ¶ 172.) Plaintiff further admits that "PET #1 and HDPE #2 bottles and containers have recyclability potential." (*Id.* ¶¶ 174, 178.) Likewise, Plaintiff has admitted that "bottles made of PET generally are capable of being reused in manufacturing or assembling another item," that

'This product [package] may not be recyclable in your area, or 'Recycling facilities for this product [package] may not exist in your area.'" (16 C.F.R. § 260.12, subd. (b)(2).)

[11] Certain features of some of Defendants' packaging, such as bottle/container caps or labels, may be made of resins other than PET #1 or HDPE #2. Under the Green Guides, these are "minor incidental components" that are excluded in determining whether "[m]arketers can make unqualified recyclable claims for a product or package." (16 C.F.R. § 260.12(c) & Example 1; 16 § C.F.R. 260.3, subd. (b) ["Because the bottle cap is a minor, incidental component of the package, the claim is not deceptive."]; *Duchimaza v. Niagara Bottling, LLC* (S.D.N.Y. 2022) 619 F. Supp. 3d 395, 415 [finding that "the label is a minor, incidental component" under the Green Guides].)

21

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR SUMMARY JUDGEMENT

"some PET products have recyclability potential in California," and that "recycling facilities in California [] accept PET [beverage] containers."  (SSUMF ¶¶ 109–110, 135–136.)

The Material Characterization Study and Plaintiff's own admissions squarely disprove Plaintiff's broad, undifferentiated allegations that "much of the plastic that is labeled 'recyclable' is false and misleading due to the inability of consumers to access facilities that will actually recycle Defendants' products."  (SAC ¶ 16.)  At the pleading stage, Plaintiff was given leave to proceed with these claims to see if it could prove the "difficulty or even impossibility" of recycling Defendants' products.  The State of California has conclusively determined otherwise.  Because at least 60 percent of California's population has access to recycling facilities that accept rigid plastic packaging made of PET #1, HDPE #2, and Polypropylene #5, California law expressly authorizes Defendants' marketing for the relevant products and it cannot constitute a nuisance as a matter of law.  (See Bus. & Prof. Code, § 17580.5, subd. (a).; Civ. Code, § 3482.)  Plaintiff's claims can proceed no further.

> **3.** **The California Beverage Container Recycling and Litter Reduction Act and the Environmental Marketing Claims Act Also Authorize the PepsiCo, Coca-Cola, and Crystal Geyser Product Marketing**

The undisputed material facts establish that every product at issue is labeled and marketed as authorized by California law.  But even if any aspect of Plaintiff's claims could survive, at a minimum, Plaintiff's claims against PepsiCo, Coca-Cola, and Crystal Geyser are further barred by additional controlling California legislation expressly authorizing and encouraging recyclability marketing of plastic beverage containers that are covered by California's bottle deposit recycling law, the Beverage Container Recycling and Litter Reduction Act ("BCRLRA").

In 2021, when the California Legislature passed SB 343 to update standards on recyclability claims, it explicitly confirmed, "displaying a chasing arrows symbol or otherwise ***directing a consumer to recycle a consumer good shall not be considered misleading***" if "[t]he consumer good is a ***beverage container***" subject to the BCRLRA.  (Bus. & Prof. Code, § 17580, subd. (e)(2), emphases added.)   The BCRLRA is a recycling program for beverage containers of various material types, including plastic, that Plaintiff recognizes "provide[s] a strong incentive for container reuse and recycling."  (SAC ¶ 135.)  The statute was enacted in 1986, with the stated purpose of "encourag[ing] and support[ing] … the recycling[] of empty beverage containers." (Pub. Res. Code, § 14576, subd. (a).)  The Legislature sought

22

to "encourage increased, and more convenient, beverage container redemption opportunities for all consumers," based on learned experience that "financial incentives and convenient return systems ensure the efficient and large-scale recycling of beverage containers." (*Id.*, § 14501, subd. (a).) The BCRLRA set out "a beverage container recycling goal of 80 percent," with the intent of "significantly [reducing] the beverage container component of litter in this state." (*Id.*, § 14501, subds. (c), (j).)

The BCRLRA carries out this intent by paying consumers a refund value when they drop off their used beverage containers for recycling through a drop-off or collection center. (See Pub. Res. Code, § 14524.) In particular, the BCRLRA mandates that certified recycling centers must accept empty beverage containers from consumers and pay out the refund value of the container. (*Id.*, § 14572.) For each beverage container sold, the consumer pays a small deposit at the point of sale, which the retailer passes to beverage distributors, and beverage manufacturers also pay a separate processing fee and must mark qualifying beverage containers with "CA Redemption Value" or "CA CRV." (Pub. Res. Code, §§ 14560, 14561.) These funds are then collected by CalRecycle, which provides portions of the funds to plastics processors to facilitate recycling operations and to recycling centers to provide the CRV refunds to consumers at recycling drop-offs. (*Id.*, §§ 14573, 14573.5, 14573.1.) Excess funds collected by CalRecycle, including unredeemed deposits, are allocated to additional recycling programs across California, including payments to cities and counties, public education initiatives, and supplemental funding for curbside recycling initiatives. (*Id.*, §§ 14570-14587.)

The BCRLRA has successfully increased beverage container recycling rates. For example, in 1988, the state-wide recycling rate for PET #1 beverage containers was just 4%. (SSUMF ¶ 137.) In contrast, recycling rates for PET #1 beverage containers in recent years now average above 70%, reaching as high as 80% in some years, with multiple billions of units recycled. During the period relevant to this lawsuit and after, PET #1 beverage containers were recycled at the following rates in California:

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR SUMMARY JUDGEMENT

| PET#1 Beverage Containers Actual Recycling Rates (SSUMF ¶¶ 138–153) | | | |
|---|---|---|---|
| Time Frame | Beverage Containers Recycled | Beverage Containers Sold | Actual Recycling Rate |
| January – June 2017 | 4,143,038,864 | 5,327,715,828 | 78% |
| July – December 2017 | 4,806,641,709 | 6,975,007,752 | 69% |
| January – June 2018 | 4,376,614,454 | 5,570,435,192 | 79% |
| July – December 2018 | 4,899,625,356 | 6,910,261,723 | 71% |
| January – June 2019 | 4,405,117,765 | 5,441,919,663 | 81% |
| July – December 2019 | 4,767,846,360 | 6,927,290,096 | 69% |
| January – June 2020 | 4,000,156,720 | 5,829,181,708 | 69% |
| January – June 2021 | 4,302,449,490 | 6,050,235,452 | 71% |
| July – December 2021 | 4,796,001,060 | 7,647,673,519 | 63% |
| January – June 2022 | 4,827,413,251 | 6,425,978,138 | 75% |
| July – December 2022 | 5,038,687,947 | 7,618,422,349 | 66% |
| January – June 2023 | 4,551,060,517 | 5,954,791,517 | 76% |
| July – December 2023 | 4,837,464,581 | 7,315,296,179 | 66% |
| January – June 2024 | 5,004,284,593 | 6,235,409,222 | 80% |
| July – December 2024 | 5,491,735,202 | 8,029,212,214 | 68% |

The BCRLRA has been such a success that in 2022, the California Legislature exempted plastic beverage containers subject to the BCRLRA from Senate Bill 54, which creates an Extended Producer Responsibility Program that requires producers of other types of plastic packaging to manage the lifecycle and reuse of their packaging.  (Pub. Res. Code, § 42041, subd. (e)(2)(E).)  The California Legislature *excluded* plastic beverage containers from its extended producer responsibility statute, so

24

as not to interfere with the existing bottle deposit program under the BCRLRA that expressly authorizes the recyclability claims at issue here. And, under the BCRLRA, the challenged products here are in fact recycled.

There is no dispute that all of the PepsiCo, Coca-Cola, and Crystal Geyser products at issue (aside from the discontinued Crystal Geyser tea pod product) are (i) plastic beverage containers that are covered by California's bottle deposit recycling law, the Beverage Container Recycling and Litter Reduction Act ("BCRLRA"), (ii) accepted by recycling centers throughout California, and (iii) eligible for a refund value if returned for recycling. (SSUMF ¶¶ 2–4, 7, 11, 14, 18, 22, 25–28, 31, 36, 40, 49, 54, 59, 69–72.)[12] Plaintiff has admitted to all of these facts, and those admissions alone end the case for these products and Defendants. California has a comprehensive legislative and regulatory regime dedicated to recycling the very plastic beverage containers that Plaintiff argues are causing a nuisance because Defendants say "please recycle" or "recyclable" on them. CalRecycle also instructs consumers to place plastic beverage containers into their blue curbside recycling bin (and to "leave caps on"). (SSUMF ¶ 155.) It cannot "be deemed a nuisance" to encourage recycling of products that California expressly authorizes to be marketed as recyclable and itself encourages—and even *pays*—consumers to recycle. (See Civ. Code, § 3482.)

> ## B. Plaintiff's Nuisance Claim Is Independently Barred Because Plaintiff Cannot Prove That Defendants Promoted Their Products for a Hazardous Use

Plaintiff's claim fails for the independent reason that public nuisance doctrine cannot be used to supplant California products liability law regulating the manufacture, distribution, and supply of lawful consumer products. Plaintiff's legal theory sounds in products liability, not nuisance. Judge Swope already dismissed Plaintiff's products liability claims for strict liability—failure to warn, strict liability—design defect, negligence, and negligence—failure to warn. (First Demurrer Ruling, at 3–4.) Plaintiff cannot repackage the same theory as public nuisance.

Indeed, California courts have long held that "the law of nuisance is not intended to serve as a surrogate for ordinary products liability." (*City of Modesto Redevelopment Agency v. Superior Ct.*

---

[12] Plaintiff's Complaint also acknowledges that the recycler for the City of San Francisco "accepts plastics that are within the scope of the CRV, California Buy Back Program (commonly, [PET] #1, and [HDPE #]2," i.e., beverage containers subject to the BCRLRA. (SAC ¶ 164.)

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR SUMMARY JUDGEMENT

(2004) 119 Cal.App.4th 28, 39, citing *City of San Diego v. U.S. Gypsum Co.* (1994) 30 Cal.App.4th 575.)  Therefore, claims that seek to recover for harms caused by the "manufacture, distribution, and supplying" of an allegedly harmful product "do[] not fall within the context of nuisance." (*Id.* at 42.) This rule applies even if a defendant has "knowledge of the hazards" its products may pose.  (*Id.*) Otherwise, nuisance would become "a monster that would devour in one gulp the entire law of tort." (*City of San Diego*, 30 Cal.App.4th at 586, citing *Tioga Public Sch. Dist.*, 984 F.2d at 921.)

California appellate courts have recognized just one narrow circumstance where a product-based nuisance claim may proceed: where a representative plaintiff litigating "***on behalf of the People***" seeks "***abatement*** of a hazard created by affirmative and knowing ***promotion of a product for a hazardous use***." (*Cnty. of Santa Clara v. Atl. Richfield Co.* (2006) 137 Cal.App.4th 292, 309, original emphases; see also *City of Modesto*, 119 Cal.App.4th at 43 [holding that only defendants "who took affirmative steps directed toward the improper discharge of solvent wastes" could be liable for nuisance caused by those wastes].)  As the Sixth District explained in *Santa Clara*—a case involving a public nuisance caused by lead paint inside residential buildings—the rationale for the hazardous use exception is to ensure that "[l]iability is not based merely on production of a product or failure to warn." (137 Cal.App.4th at 309).  Instead, promoting a product for a hazardous use is "distinct from and far more egregious than simply producing a defective product or failing to warn of a defective product." (*Id.*)

This was the theory on which Judge Swope permitted Plaintiff's claims to proceed to discovery. He concluded Plaintiff pleaded the requisite hazardous use by alleging that "Defendants knew of the difficulty or even impossibility of recycling the plastic in their products," yet nonetheless "encourage[d] consumers to send used plastic containers to recycling facilities." (Second Demurrer Ruling, at 9.)  At the pleading stage, Judge Swope accepted as true Plaintiff's broad and unsubstantiated allegations that Defendants' products were in fact ***not*** capable of being recycled.  (*Id.* at 8–9.)  But the undisputed facts now confirm Plaintiff does not satisfy *Santa Clara*.  Marketing the products at issue here as recyclable is not promotion for a hazardous use.  As set forth above (*supra* at 16–25), this conduct is fully consistent with California law and is conduct that the California Legislature authorizes and encourages. And Plaintiff admits that, not only is recycling recyclable packaging one way to mitigate waste and plastic pollution, Plaintiff ***itself*** has placed plastic packaging in recycling bins.  (SSUMF ¶¶ 133–134.)

26

Plaintiff may argue, as it did at the pleading stage, that promotion for a hazardous use is not the only way it can prove its nuisance claim.[13] Judge Swope rejected that argument, and this Court should, too. (See First Demurrer Ruling, at 3; Second Demurrer Ruling, at 8–9.) For one thing, Plaintiff has admitted its theory is that Defendants "should not misleadingly advertise [their] products to consumers" as environmentally friendly or by "making representations that their plastic product[s] can be indefinitely recycled through the use of the chasing arrows symbol." (See, e.g., SSUMF ¶¶ 106–107.) And even if other types of conduct theoretically might support a nuisance claim challenging harm allegedly caused by a lawful product, the undisputed material facts show that no such conduct exists here. Plaintiff has no theory of wrongful conduct other than Defendants' marketing of their products as recyclable.

Moreover, promotion for a hazardous use is the **only** conduct that California's appellate courts have recognized as an exception to an area otherwise fully encompassed by products liability. Plaintiff's arguments to the contrary lack merit. Plaintiff may point to erroneous, non-binding federal court departures from this California doctrine. In *City & County of San Francisco v. Purdue Pharma L.P.* (N.D. Cal. 2020) 491 F.Supp.3d 610, a federal district court stated that "[n]othing in *Santa Clara* suggests that promotion is the only form of 'affirmative conduct' necessary to state a public nuisance claim." (*Id.* at 675, emphasis omitted.) Another federal district court has since made the same error, relying on *Purdue Pharma*. (See *Sierra Club, Inc. v. Exxon Mobil Corp.* (N.D. Cal. Sept. 5, 2025) 2025 WL 2578218, at *4-5.) These courts misread *Santa Clara*. The key distinction that *Santa Clara* drew between public nuisance and products liability was based on the fact that affirmatively promoting a product for a hazardous use is "far more egregious than" a products liability claim. (137 Cal.App.4th at 309.) The Court of Appeal nowhere suggested that any affirmative conduct would do in a products case. This Court is bound by *Santa Clara*. Judge Swope recognized this in his demurrer rulings in this matter, holding that Plaintiff must plead that Defendants promoted their products for a hazardous use. (See First Demurrer Ruling at 3; Second Demurrer Ruling at 8–9.)

---

[13] In fact, in response to discovery requests asking Plaintiff to "describe the hazardous use(s)" Defendants allegedly promote, Plaintiff did not provide a substantive response—it objected to the request "on the basis it does not seek information which is relevant to the subject matter of the litigation or reasonably calculated to lead to the discovery of admissible evidence." (SSUMF ¶ 108.)

27

In any event, this matter is nothing like *Purdue Pharma* or *Exxon*. *Purdue Pharma* was an opioids case alleging ***independently unlawful*** conduct that "fueled an illegal, secondary market" for opioids, including the defendants' "fail[ure] to implement systems designed to identify and stop suspicious orders" of controlled substances, "fail[ure] to provide effective controls against diversion in violation of [their] duties under the [Controlled Substances Act]," and shipment of, and failure to report, suspicious orders of opioids. (491 F.Supp.3d at 674-76, internal citations omitted.) Likewise, the case *Purdue Pharma* relied on involved a firearms distributor that "knew which distribution channels were providing guns to ***illegal purchasers***" and ***actively supplied that market***. (See *id*. at 675, citing *Ileto v. Glock, Inc.* (9th Cir. 2003) 349 F.3d 1191, 1215, emphasis added.) *Purdue* and *Glock* involved business practices that were themselves ***illegal*** or that facilitated illegal conduct. Here, by contrast, Defendants' sales and marketing of their lawful consumer products are legal and authorized. *Exxon* was a pleading-stage decision where the court was required to accept as true allegations that the defendants' products were not recyclable. (See 2025 WL 2578218, at *5.) Here, as Plaintiff has conceded, and undisputed data from CalRecycle confirms, Defendants' product containers are made of plastic that can be recycled. (See, e.g., SSUMF ¶¶ 109–110, 135–136 [admitting "bottles made of PET generally are capable of being reused in manufacturing or assembling another item," that "some PET products have recyclability potential in California," and that "recycling facilities in California accept PET beverage containers"]; see also *supra* at 21 (CalRecycle statistics on PET #1, HDPE #2, and Polypropylene #5).)

Because Plaintiff has not shown that Defendants promoted their products for a "hazardous use," as required to proceed on a public nuisance theory, Defendants are entitled to summary judgment.

### C. Plaintiff Is a Private Entity that Lacks Standing to Sue for Public Nuisance

Defendants are also entitled to summary judgment for the independent reason that Plaintiff lacks standing. Plaintiff is a private organization, not a representative of the public, and it does not satisfy any exception to the general rule that a ***private entity*** cannot bring a ***public nuisance*** claim.

"Public nuisances are generally remedied by designated public prosecutors, with a ***limited exception*** for suits by private individuals in ***exceptional circumstances***." (*Rincon*, 70 Cal.App.5th at 1103, emphases added; see also Code Civ. Proc., § 731.) Generally, to establish standing a private party must show a "special injury" attributable to the alleged public nuisance. (Civ. Code, § 3493; *Venuto*,

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR SUMMARY JUDGEMENT

22 Cal.App.3d at 123.)  A private plaintiff may alternatively maintain an action for public nuisance where the nuisance is both private and public, but only if the plaintiff demonstrates it has suffered a private nuisance through a "***substantial***" and "***unreasonable***" "interference with the use and enjoyment of" its own private property.  (*Id.* at 125, citing Prosser on Torts (3d ed. 1964) p. 611 and fn. 91 at p. 611.)  Plaintiff must establish both the existence of the nuisance and its standing to bring such a claim within the three-year limitations period—which here is February 2017 to February 2020.  (See *Madani v. Rabinowitz* (2020) 45 Cal.App.5th 602, 608; *Mangini v. Aerojet-Gen. Corp.* (1991) 230 Cal.App.3d 1125, 1148).

Plaintiff does not—and cannot—meet either of these exceptions.

### 1.     Plaintiff Has Not Incurred a Special Injury

To sue for public nuisance based on a "special injury," a private plaintiff must satisfy an exacting and narrow standard.  It must demonstrate an injury "of a character ***different in kind*** from that suffered by the general public," (*Venuto*, 22 Cal.App.3d at 124), and "not merely [different] in degree." (*Institoris v. City of Los Angeles* (1989) 210 Cal.App.3d 10, 20, citing *Venuto*, at 124-125.)  Moreover, while a private plaintiff's injury must be "different in kind from that suffered by other members of the public," it must still derive from the exercise of a "right common to the general public that was the subject of interference." (*Rincon*, 70 Cal.App.5th at 1103, quoting Rest.2d Torts, § 821C(1).)

Plaintiff asserts it has standing to bring a public nuisance claim against Defendants challenging marine plastic pollution in California because it allegedly "suffered special injuries" by "divert[ing] resources to counter-act and educate the public concerning Defendants' misleading statements and the truths about recycling." (SAC ¶ 311.)  Plaintiff also claims that it "divert[ed] organizational resources to prevent and mitigate the harms from marine plastic pollution and to clean up plastic pollution in waterways on its own private property." (*Id.* ¶ 311.)[14]  Finally, Plaintiff suggests that it has standing

---

[14] Similarly, in response to an Interrogatory concerning the basis of its alleged special injury, Plaintiff responded that "Plaintiff expends resources…[including] salaries for employees involved in these activities, costs for supplies to continue this work, insurance costs associated with these activities, and costs for contractors and vendors associated with these activities," and identified an IRS form and program budget information.  (SSUMF ¶ 183.)

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR SUMMARY JUDGEMENT

based on alleged "harm to [the] aesthetic interests" of Plaintiff's members.  (*Id.* ¶ 22.)  As a matter of law, none of these theories constitutes a special injury that could confer standing for public nuisance.

### a.   *Plaintiff's Voluntary Expenditures Are Not a Special Injury*

Plaintiff's claimed voluntary expenditure of resources to "organize[] … beach clean-ups" and "educate the public" (SAC ¶¶ 250, 252) in support of its own stated mission do not constitute a special injury.  Courts have long held that, under California law, these types of "voluntarily incurred costs do not suffice to satisfy the special injury requirement for public nuisance." (*San Francisco Herring Ass'n v. Pac. Gas & Elec. Co.* (N.D. Cal. July 26, 2019) No. 14-cv-04393-WHO, 2019 WL 11073502, at *4; *Rose v. Union Oil Co. of Cal.* (N.D. Cal. Feb. 1, 1999) No. C 97-3808 FMS, 1999 WL 51819, at *5-6 [same].)  Instead, to establish special injury, a plaintiff must be *forced* to incur the costs at issue, i.e., through a legal obligation.  (See, e.g., *Tesoro Refining & Mktg. Co. LLC v. City of Long Beach* (C.D. Cal. 2017) 334 F.Supp.3d 1031, 1053-55, citing *Rose* and holding that only government-mandated remediation efforts on a property constitute "special injury," not those that are voluntarily assumed.)

As the undisputed material facts confirm, no legal obligation compels Plaintiff to spend resources as it has; rather, those expenditures are voluntarily incurred costs.  Plaintiff could have used its organizational resources on any number of initiatives of its choosing.  It is simply not the law that any individual or entity can purchase standing to bring a public nuisance claim—ordinarily reserved for government entities—merely by directing funds to an issue of interest.  In fact, the expenditures in question were not a "diversion" or interference at all but rather were undertaken in furtherance of Plaintiff's stated mission to "protect oceans, coasts, and marine life from all manner of harm." (SAC ¶ 1.)  Plaintiff cannot establish standing for this reason.  (See, e.g., *In Def. of Animals v. Sanderson Farms, Inc.* (N.D. Cal. Sept. 17, 2021) No. 20-cv-05293-RS, 2021 WL 4243391, at *5 [finding nonprofit had not "diverted" resources and therefore lacked standing where its expenditures amounted to "voluntary continuation of its previous activities," and "even the less-routine activities, [were] at root typical of [the plaintiff's] advocacy"].)

Even if Plaintiff had "diverted funds" or otherwise was unable to fulfill its organizational mission, that would not be sufficient to establish a special injury for purposes of its nuisance claim.  In *Public Watchdogs v. Southern California Edison Company* (S.D. Cal., Dec. 3, 2019) No. 19-CV-1635

30

JLS (MSB) 2019 WL 6497886, for example, the court refused to find "a special injury for the purposes of California's public nuisance laws" based on an alleged "public nuisance that interferes with a not-for-profit organization's ability to fulfill its corporate mission," finding "no authority" in support of this proposition. (*Id*. at \*16.)  Plaintiff's expenditures here are similarly incapable of conferring standing.

Moreover, Plaintiff's purported voluntary expenditures in furtherance of its organizational mission cannot be a special injury because these asserted injuries are not "the types of harms one would expect those in the community affected by the alleged nuisance to suffer." (*Rincon*, 70 Cal.App.5th at 1103 [rejecting claim from tribes regarding their gambling rights, which were not rights given the general public].)  Plaintiff cannot voluntarily spend its way into standing for a public nuisance claim. A contrary rule would vastly expand public nuisance law and flood the courts with the "multiplicity of actions" that the strict limitations on standing for such claims are intended to prevent. (*Id.*)  ***Any*** private individual or organization that has voluntarily spent money on a cause of interest or encountered litter could bring a public nuisance claim and attempt to displace the State Legislature's policy judgments with its own preferred policy views.  That is not and cannot be the law.

### b. *Plaintiff's Alleged Remediation of Unspecified Plastic Litter from its Private Property Does Not Constitute a Special Injury*

Plaintiff also cannot establish a special injury based on its alleged remediation or expenditure of resources to remove purported plastic litter from its private property.  As discussed below (*infra* at 33–34), Plaintiff has not provided evidence of any harm to its property caused by Defendants' products. But even if it had, Plaintiff's alleged remediation of occasional plastic litter on its property would not constitute a special injury.  Plaintiff's asserted actions to remove plastic from Plaintiff's property are not "***different in kind*** from th[e alleged harm] suffered by the general public." (*Venuto*, 22 Cal.App.3d at 124).  According to Plaintiff's own allegations, other members of the community incur similar alleged disturbances from plastic pollution (e.g., SAC ¶¶ 302–303).

Courts regularly reject public nuisance standing where a plaintiff claims environmental harm shared by the broader populace.  For example, in *Greenfield MHP Associates, L.P. v. Ametek, Inc.* (S.D. Cal. 2015) 145 F.Supp.3d 1000, plaintiffs claimed the groundwater and soil on their property were contaminated by a toxic plume.  The court found this did not qualify as a special injury because the alleged harm was "too similar to that suffered by the general public, since such a claim would be

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR SUMMARY JUDGEMENT

available to anyone whose property was above the 1.3 mile waste plume Plaintiffs are alleging." (*Id.* at 1016.)  Likewise, in *Venuto*, the plaintiff claimed that air pollution from a neighboring industrial plant aggravated his allergies and respiratory disorders.  The court found no special injury, holding that "the complaint alleges nothing more than that the health of the general public and that of plaintiffs, as members of the public, is being injured because of defendant's activity." (*Venuto*, 22 Cal.App.3d at 125.)  And in *Koll-Irvine Center Property Owners Association v. County of Orange* (1994) 24 Cal.App.4th 1036, the court similarly rejected a special injury based on alleged "mental anguish, risk of higher insurance premiums, diminished property values and reduced usefulness of [] premises" due to plaintiff's proximity to an airport fuel farm because "these damages apply to all the homes and businesses in the area of the airport." (*Id.* at 1040-41.)  Even if plaintiff's "proximity arguably exposes it to a higher degree of those damages," it did not expose plaintiff to "a different kind altogether." (*Id.*)

The same is true here.  Plaintiff claims that "[m]arine and aquatic plastic pollution impacts a substantial number of residents and citizens living in Plaintiff's community, and they are reasonably annoyed and disturbed by marine and aquatic plastic pollution." (SAC ¶ 302.)  Plaintiff alleges this pollution creates a "significant and severe" "burden on the public" (*id*. ¶ 303).  Plaintiff also asserts that "discarded plastic products [were] blown onto various parts of [its] property from **neighboring properties and roads**." (SSUMF ¶ 177, emphasis added.)  Plaintiff's statements and allegations regarding its asserted remediation of plastic pollution on its private property shows this is not different in kind from the alleged harm to the broader community.

### c. *Alleged Harm to "Aesthetic Interests" of Plaintiff's Members Cannot Constitute a Special Injury*

To the extent Plaintiff claims standing based on allegations that its members are "deprived of the ability to enjoy and utilize the ocean environment and have experienced harm to their aesthetic interests" (SAC ¶ 22), this too fails as a matter of law.  Plaintiff asserts that "a substantial number of residents and citizens living in Plaintiff's community . . . are reasonably annoyed and disturbed by marine and aquatic plastic pollution" (*id.*, ¶ 302), and does not claim or show that its members incur an injury that is different in kind (or even degree).  Such alleged general community harms do not constitute a special injury. (*Supra*, Section C.1(b).)

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR SUMMARY JUDGEMENT

### 2.    Plaintiff Cannot Base Standing on a Private Nuisance

At the pleading stage, Judge Swope accepted as true Plaintiff's cursory allegation that it has standing to sue for public nuisance based on an alleged private nuisance to its private property (First Demurrer Ruling, at 3)—specifically, that Plaintiff "owns private property in Richmond, California, which has been negatively affected by Defendants' plastic." (SAC ¶ 304–05.)  But discovery has now confirmed that Plaintiff's theory fails as a matter of law on the undisputed factual record.

Private nuisance requires a showing of interference with the "use and enjoyment of the land" that is both "substantial, i.e., that it caused the plaintiff to suffer 'substantial actual damage'" and "unreasonable …, i.e., 'of such a nature, duration or amount as to constitute unreasonable interference with the use and enjoyment of the land.'" (*San Diego Gas & Electric Co.* (1996) 13 Cal.4th 902, 938; see also *Venuto*, 22 Cal.App.3d 124*, citing Prosser on Torts (3d ed.) p. 611 and fn. 91 at p. 611; *Lind v. City of San Luis Obispo* (1895) 109 Cal. 340, 344.)  The standard is an objective one that asks "not whether the particular plaintiff found the invasion unreasonable, but 'whether reasonable persons generally, looking at the whole situation impartially and objectively, would consider it unreasonable.'" (*People ex rel. Gallo v. Acuna* (1997) 14 Cal.4th 1090, 1105.)

Here, this means Plaintiff must prove that Defendants' conduct (marketing their plastic packaging as recyclable) caused an interference with Plaintiff's use of its property that reasonable people would view as substantial and unreasonable.  (See *Madani*, 45 Cal.App.5th at 608.)  Plaintiff cannot do so for at least two reasons: (1) Plaintiff has not provided *any* evidence of any Defendant's products on Plaintiff's private property in any appreciable quantity in the three years prior to filing suit;[15] and (2) even if Plaintiff could produce such evidence, it cannot show Defendants' marketing caused any legally cognizable harm to Plaintiff's property that could constitute a nuisance.

#### a.    *Plaintiff Has Failed to Provide Any Evidence of Defendants' Products on its Property During Relevant Time Period*

Plaintiff's private nuisance theory of standing is dead on arrival because Plaintiff has not even provided evidence of Defendants' products on its private property in the three years before Plaintiff

---

[15] And for Colgate, Plaintiff has zero evidence of the presence of any of Colgate's products *anywhere* in California beaches or waterways at any time, on Plaintiff's private property or otherwise.  (See Colgate Mot. Summ. J.)

33

filed suit in 2020.  Defendants have repeatedly sought such evidence in discovery, but almost six years into this litigation, Plaintiff has failed to provide any evidence that it encountered Defendants' products on its property before filing this lawsuit, let alone tie any such products to the alleged nuisance.[16]

In fact, shortly prior to the filing of this motion, Plaintiff admitted for the first time that it "does not keep a record of trash found on its private property."  (SSUMF ¶ 162.)  Plaintiff also affirmatively conceded its lack of evidence.  As to Colgate, for example, Plaintiff's written discovery responses and productions confirm that Plaintiff has no evidence of any Colgate products on its property at any point in time.  (See, e.g., SSUMF ¶ 161 [speculating at best that it was *possible* that Colgate products could have been found on Plaintiff's property at some point by one of the "numerous individuals" Plaintiff "welcomes … onto its private property daily"]; see also Colgate Mot. Summ. J.)  As to Coca-Cola, Plaintiff could not identify a single specific Coca-Cola product found on its property prior to filing suit.  (SSUMF ¶ 164–169.)  Plaintiff merely pointed to a handful of photos taken at undisclosed locations and dated in 2024 and 2025, long after it filed its Complaint, and in follow-up correspondence Plaintiff could not identify any of the photos as having been taken at its property.  Plaintiff further conceded that it lacked "sufficient personal knowledge upon which to base a response" and that otherwise "photos or logs were not created" to substantiate its allegations.  (SSUMF ¶ 165.)

Plaintiff's concessions and failure to provide this evidence in discovery at this stage in the case shifts the burden to Plaintiff on summary judgment.  (See, e.g., *Andrews*, 138 Cal.App.4th at 104 [entering summary judgment for defendant where burden shifted to plaintiff and plaintiff's "answer [to interrogatory] was insufficient to support a claim."]); *Union Bank v. Superior Ct.* (1995) 31 Cal.App.4th 573, 593.)  Given that Plaintiff has failed to produce any actual evidence that it found *any* of Defendants' products on its property in the three-year period before it filed the Complaint and has conceded it does not keep records of any trash found on its property, Plaintiff cannot bring a public nuisance claim premised on the alleged presence of Defendants' products on its property.

---

[16] (See, e.g., SSUMF ¶¶ 159–175.)

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR SUMMARY JUDGEMENT

### b. *Plaintiff's Professed Harms are Legally Insufficient*

Even if Plaintiff were to come forward with evidence of any Defendant's products on its private property during the relevant time period, Plaintiff still cannot establish any legally cognizable harm that has substantially and unreasonably interfered with Plaintiff's use or enjoyment of its property. All Plaintiff has said is that plastic pollution on its property "limits the aesthetic enjoyment of the property," causes an unspecified "hazard to the animals who live and roam on the property" and "inhibits the movement of wildlife in the streams," and that unspecified microplastics from plastic in the stream allegedly affect the "health of the animals that reside there and the wildlife that frequent the sprawling property."[17] (SSUMF ¶ 177.) None of these purported harms is sufficient as a matter of California law.

First, California courts have long held that purely aesthetic inconveniences, such as obstruction of view or the light that reaches the property, do not constitute an injury to property that can give rise to a nuisance claim. (See, e.g., *Venuto*, 22. Cal.App.3d at 126-127; *People v. Oliver* (1948) 86 Cal.App.2d 885, 887 ["the unsightly condition of the premises" alone will not render the property a nuisance]; *Haehlen v. Wilson* (1936) 11 Cal.App.2d 437, 441 [holding "ugly and untidy" wooden fence was not a nuisance and noting "[ae]sthetic considerations are a matter of luxury and indulgence rather than a necessity"]; *Oliver v. AT&T Wireless Servs*. (1999) 76 Cal.App.4th 521, 534 [the "displeasing appearance" of a structure does not create a nuisance].)

Second, "a private nuisance can support recovery only for harm to a property interest." (*Institoris*, 210 Cal.App.3d at 20.) Plaintiff does not have a property interest in the stream that flows through its property or in wildlife. "All water within the state [of California] is property of the people of the state." (Water Code, § 102[18]; see also *Aerojet-Gen. Corp. v. Super Ct*. (1989) 257 Cal.Rptr. 621,

---

[17] In a supplemental Interrogatory response served two days before this motion was due, Plaintiff asserted for the first time that its property was allegedly "contaminated with microplastics," which "endangers the health both of the children who regularly access the property, as well as the animals that reside there." (SSUMF ¶ 179.) Plaintiff has failed to come forward with any admissible evidence of the existence—let alone source—of these microplastics. Further, Plaintiff does not allege any ***actual harm***, just that others are prospectively "endanger[ed.]" This assertion is legally insufficient. "[A] private nuisance action cannot be maintained for an interference in the use and enjoyment of land caused solely by the fear of a future injury."].) (*Koll-Irvine*, 24 Cal.App.4th at 1041–42.)

[18] Riparian rights are limited to the reasonable and beneficial use of streams and watercourses, and do not amount to an ownership interest. (See Water Code, § 101.)

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR SUMMARY JUDGEMENT

629 ["Pollution of the ground and river waters is damage to public property."].)  Similarly, California's wild animals are held in the public trust and cannot be considered either chattels or constituent parts of private property.  (See Code Fish & Game, § 711.7.)

Finally, a nuisance must prevent Plaintiff from using or enjoying its property in a "real and appreciable" way.  (See *People ex rel. Gallo v. Acuna* (1997) 14 Cal.4th 1090, 1105, quoting Rest.2d Torts, § 821F, coms. c & d, pp. 105–110 ["The Restatement Second formulates the requirement of substantiality as proof of 'significant harm,' defined as a 'real and appreciable invasion of the plaintiff's interests,' one that is 'definitely offensive, seriously annoying or intolerable.'"].)  This is an objective standard: "[i]f normal persons in that locality would not be substantially annoyed or disturbed by the situation, then the invasion is not a significant one, even though the idiosyncrasies of the particular plaintiff may make it unendurable to him." (*Venuto*, 22 Cal.App.3d at 125.)  At most, Plaintiff claims to experience the ordinary inconveniences of living in a society with some amount of litter, including plastic.  And indeed, Plaintiff has stated that, in addition to welcoming numerous visitors who very well may be a source of litter, plastic reaches its property because it was "blown onto various parts of [the] property from ***neighboring properties and roads***."  (SSUMF ¶ 177, emphasis added.)  However, "[i]t is an obvious truth that each individual in a community must put up with a certain amount of annoyance, inconvenience and interference." (*Acuna*, Cal.4th at 1105.)  If encountering occasional litter was sufficient to bring a public nuisance claim, the limitations on standing would be dead letter.

* * *

In sum, as a matter of law and undisputed facts, Plaintiff cannot establish standing for its nuisance claim based on either an alleged "special injury" or purported injury to private property.  Plaintiff cannot evade the strict limits California law places on a ***private*** plaintiff's ability to bring such a claim.  Recognizing standing for public nuisance predicated on voluntary organizational outlays and minor alleged annoyances to private property from run-of-the-mill litter would contravene decades of California law and open the floodgates to public nuisance litigation by any number of private entities.  (See, e.g., *S. Cal. Gas Leak Cases* (2019) 7 Cal.5th 391, 407 ["For centuries, in fact, similar concerns have justified strict limits on private recovery for a public nuisance … because 'it would be unreasonable to multiply suits by giving every man a separate right of action.'"].)

36

## V.    CONCLUSION

Plaintiff's lawsuit seeks to upend the limits of public nuisance law and decades of carefully calibrated California legislation and regulation that comprehensively addresses the manufacture, labeling, and recycling of products packaged in plastic.  Plaintiff managed to plead around this problem, but the undisputed facts give it no further path forward.  California statutes authorize the marketing that Plaintiff asserts caused or contributed to a public nuisance.  Defendants' products are capable of being recycled and are frequently recycled as part of California's efforts to "lead the world on a path to end trash pollution" through its plastics recycling programs.  (SSUMF ¶ 154.)  The Court should put an end to the notion that encouraging the recycling of such products constitutes a public nuisance.

California courts have cautioned against "imposing novel tort theories," warning that these are, in effect, "a form of regulation administered through the courts rather than the state's regulatory agencies."  (*In re Firearm Cases* (2005) 126 Cal.App.4th 959, 991, quoting *Ileto*, 370 F.3d at 868 (dis. opn. of Kozinski, J., from denial of rehg. en banc).)  "Courts should … be chary of adopting broad new theories of liability, lest they undermine the democratic process through which the people normally decide whether, and to what degree, activities should be fostered or discouraged within the state."  (*Id*.)  Here, where the Legislature has spoken clearly about whether and how Defendants may market their products, the Court should grant summary judgment to Defendants and dismiss this action with prejudice.

37

Dated: November 21, 2025                    Respectfully submitted,


By:  **/s/ René P. Tatro                    By:  /s/ Andrew S. Tulumello

René P. Tatro (SBN 078383)                  Andrew S. Tulumello (SBN 196484)
Juliet A. Markowitz (SBN 164038)            Arianna M. Scavetti (*pro hac vice*)
TATRO TEKOSKY SADWICK LLP                   Claire L. Chapla (SBN 314255)
1800 North Vine Street, Suite 234           WEIL, GOTSHAL & MANGES LLP
Los Angeles, California  90028              2001 M Street NW, Suite 600
Telephone:  (213) 225-7171                  Washington, DC  20036
Facsimile:  (213) 225-7151                  Telephone:  (202) 682-7000
E-mail:  renetatro@ttsmlaw.com              Facsimile:  (202) 857-0940
E-mail:  jmarkowitz@ttsmlaw.com             E-mail:  drew.tulumello@weil.com
                                            E-mail:  arianna.scavetti@weil.com
*Attorneys for Defendant Crystal*           E-mail:  claire.chapla@weil.com
*Geyser Water Company*
                                            *Attorneys for Defendant PepsiCo, Inc*


By:  **/s/ Dawn Sestito                     By:  **/s/ Steven A. Zalesin
Dawn Sestito (SBN 214011)
Richard Goetz (SBN 115666)                  Steven A. Zalesin (*pro hac vice*)
Lauren Kaplan (SBN 294703)                  Jason Vitullo (*pro hac vice pending*)
O'MELVENY & MYERS LLP                       Anna Blum (*pro hac vice pending*)
400 South Hope Street                       PATTERSON BELKNAP
Los Angeles, California  90071-2899           WEBB & TYLER LLP
Telephone:  (213) 430-6000                  1133 Avenue of the Americas
Facsimile:  (213) 430-6407                  New York, New York  10036
E-mail:  dsestito@omm.com                   Telephone:  (212) 336-2000
E-mail:  rgoetz@omm.com                     E-mail:  sazalesin@pbwt.com
E-mail:  lkaplan@omm.com                    E-mail:  jvitullo@pbwt.com
                                            E-mail:  ablum@pbwt.com
*Attorneys for Defendant*
*Colgate-Palmolive Company*                 Gary T. Lafayette (SBN 888666)
                                            LAFAYETTE & KUMAGAI LLP
                                            1300 Clay Street, Suite 810
                                            Oakland, California  94612
                                            Telephone:  (415) 357-4600
                                            E-mail:  glafayette@lkclaw.com

                                            *Attorneys for Defendant*
                                            *The Coca-Cola Company*


** *The electronic signatory has obtained approval from this signatory.*

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR SUMMARY JUDGEMENT